# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRYAN CLINGER, MONICA BARBA, and HEATHER RUDY, on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-01040 (MPS) |
| Plaintiffs, | |
| v. | |
| EDGEWELL PERSONAL CARE BRANDS, LLC, | December 3, 2021 |
| Defendant. | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................4

I. PLAINTIFFS' LACK OF ARTICLE III STANDING REQUIRES
DISMISSAL. ...........................................................................................................6

   A. Plaintiffs lack Article III standing because they fail to allege any injury in
fact. ...............................................................................................................7

      1. Plaintiffs fail to allege a "concrete and particularized" injury. ....................... 7

      2. Plaintiffs' basis for standing is further undermined by the FDA's Report on
its Inspection of Valisure and Valisure's Response to that Report. .............. 11

   B. Plaintiffs lack Article III standing to pursue an injunction. ...................................11

II. PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW. .........................12

   A. Plaintiffs' claims are expressly preempted because recognition of
Valisure's testing would subject Defendant to Standards "different from"
and "not identical" to FDA testing standards ...............................................13

   B. Plaintiffs' claims are further expressly preempted by FDCA regulations
regarding the labeling of OTC sunscreen products................................................17

   C. The Products are subject to and in compliance with the Applicable
Sunscreen Order. .........................................................................................20

      1. The Products' labeling does not misbrand the Products because benzene is
not an ingredient in the Products. ................................................................. 21

      2. The Products are in compliance with the FDA standard that allows up to 2
ppm of benzene in the Products.....................................................................22

      3. Plaintiffs' claims are impliedly preempted.....................................................23

      4. Plaintiffs' claims are barred as private enforcement actions.........................23

      5. Plaintiffs' claims are subject to the FDA's primary jurisdiction...................24

III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER CONNECTICUT
COMMON LAW, THE FDUTPA, THE ILCFA, AND ANY WARRANTY
LAW .....................................................................................................................26

   A. Plaintiffs fail to meet the Rule 9(b) heightened pleading standard........................27

   B. Plaintiffs' statutory consumer protection claims fail to meet the reasonable
consumer standard. .......................................................................................29

   C. Plaintiffs' FDUTPA claims fail because the FDUTPA does not apply to
acts or practices specifically permitted by federal law. ........................................32

   D. Plaintiffs' breach of express warranty claim fails because Plaintiffs fail to
plead the existence of an affirmative representation. ............................................33

   E. Plaintiffs' breach of implied warranty claim fails because Plaintiffs fail to
allege privity. ...............................................................................................35

F.   Plaintiffs' Magnuson-Moss Warranty Act claim fails because there is no underlying breach of warranty claim. ...................................................36

G.   Plaintiffs' unjust enrichment claim fails because there was nothing unjust about the transaction in question and they fail to allege a direct conferral of benefits on Defendant. ........................................................................37

V.   PLAINTIFFS' REQUEST FOR RESTITUTION FAILS BECAUSE THEY DO NOT LACK AN ADEQUATE REMEDY AT LAW. ..........................................39

Conclusion...............................................................................................................40

Certificate of Service...............................................................................................42

CORE/3006951.0087/171235695.6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Volkswagen of America, Inc.*,
  795 F.2d 238 (2d Cir.1986) .................................................................................................37

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008) .............................................................................................................13

*Albrecht v. Rubinstein*,
  135 Conn. 243 (1948) .........................................................................................................34

*Anglin v. Edgewell Personal Care Co.*,
  No. 4:18-cv-639, 2018 WL 6434424 (E.D. Mo. Dec. 7, 2018) ...........................................14

*Arizona v. United States*,
  567 U.S. 387 (2012) ...........................................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................................27

*Atik v. Welch Foods, Inc.*,
  No. 15-CV-5405, 2016 WL 5678474 (E.D.N.Y.) ...............................................................12

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.
  Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ...............................................................30

*Barbara's Sales, Inc. v. Intel Corp.*,
  879 N.E.2d 910 (Ill. 2007) ..................................................................................................29

*Bartone v. Robert L. Day Co., Inc.*,
  232 Conn. 527 (1995) .........................................................................................................29

*Basko v. Sterling Drug, Inc.*,
  416 F.2d 417 (2d Cir. 1969) ................................................................................................35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................................................27

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ..............................................................................................30

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ...........................................................................................................24

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ..............................................................27

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*,
  117 F.3d 655 (2d Cir. 1997).................................................................39

*Capital Cities Cable, Inc. v. Crisp*,
  467 U.S. 691 (1984).............................................................................23

*Carter v. HealthPort Technologies, LLC*,
  822 F.3d 47 (2d Cir. 2016).....................................................................5

*Chang v. Fage U.S. Dairy Indus.*,
  No. 14-CV-3826, 2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) ...........12

*Critcher v. L'Oreal USA, Inc.*,
  959 F.3d 31 (2d Cir. 2020)...................................................................17

*Fahey ex rel. D.C. v. Deoleo USA, Inc.*,
  No. 18-CV-2047, 2018 WL 5840664 (D.D.C. Nov. 8, 2018) ...........7, 8, 9

*Davenport Assoc., Inc. v. L. Suzio Concrete Co.*,
  No. CV176072131S, 2020 WL 8265399 (Conn. Supr. Ct. Dec. 23, 2020)............36

*Desabio v. Howmedica Osteonics Corp.*,
  817 F. Supp. 2d 197 (W.D.N.Y. 2011) ...................................................18

*Dimuro v. Estee Lauder Companies, Inc.*,
  No. 3:12-CV-01789, 2013 WL 12080901 (D. Conn. Nov. 22, 2013) ...........7, 8, 28

*Doe v. Bausch & Lomb, Inc.*,
  443 F. Supp. 3d 259 (D. Conn. 2020).....................................................18

*Doss v. Gen. Mills, Inc.*,
  No. 18-61924-CIV, 2019 WL 7946028 (S.D. Fla. June 14, 2019), *aff'd*, 816 F.
  App'x. 312 (11th Cir. 2020) ..................................................................8

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ................................................................30

*Eckler v. Neutrogena Corp.*,
  238 Cal. App. 4th 433 (2015) ...............................................................18

*In re Edgewell Personal Care Co. Litig.*,
  No. 16-CV-3371, 2018 WL 7858623 (E.D.N.Y. Sept. 4, 2018) ...........12

*Ellis v. Tribune Television Co.*,
  443 F.3d 71 (2d Cir. 2006)....................................................................25

iv

*Ezcurra v. Monsanto Corp.*,
No. 20-cv-80524, 2020 WL 5491428 (S.D. Fla. Aug. 7, 2020) ............................................33

*Far East Conference v. United States*,
342 U.S. 570 (1952)..........................................................................................................24

*Fawemimo v. American Airlines, Inc.*,
751 F. App'x. 16 (2d Cir. 2018) ......................................................................................13

*Fisher v. APP Pharmaceuticals, LLC*,
783 F. Supp. 2d 424 (S.D.N.Y. 2011)..............................................................................34

*Forouzesh v. CVS Pharmacy, Inc.*,
No. 2:18-CV-04090, 2019 WL 652887 (C.D. Cal. Feb. 15, 2019) ........................................13

*Fraser v. Wyeth*,
857 F. Supp. 2d 244 (D. Conn. 2012)................................................................................35

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995)..........................................................................................................23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
528 U.S. 167 (2000)............................................................................................................7

*Gaminde v. Lang Pharma Nutrition, Inc.*,
No. 1:18-CV-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ....................................7, 8

*Gibson v. Capano*,
241 Conn. 725 (1997) .......................................................................................................40

*Glover v. Bausch & Lomb Inc.*,
6 F.4th 229 (2d Cir. 2021) ...............................................................................................23

*Granito v. IBM*,
34 Conn. L. Rptr. 485 (Conn. Supr. Ct. 2003).................................................................39

*U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*,
604 F. App'x. 40 (2d Cir. 2015) ......................................................................................28

*Hamon v. Digliani*,
148 Conn. 710 (1961) .......................................................................................................36

*Ignacuinos v. Boehringer Ingelheim Pharmaceuticals Inc.*,
490 F. Supp. 3d 533 (D. Conn. 2020)...............................................................................18

*Kahn v. Volkswagen of America, Inc.*,
No. FST-CV-075004090S, 2008 WL 590469 (Conn. Supr. Ct. Feb. 13, 2008) ..............36, 37

v

*Kilduff v. Adams, Inc.*,
 219 Conn. 314 (1991) ................................................................................................40

*King v. Rell*,
 No. 3:06-CV-1703, 2008 WL 792818 (D. Conn. Mar. 20, 2008) ...........................12

*Kommer v. Bayer Consumer Health*,
 252 F. Supp. 3d 304 (S.D.N.Y. 2017) *aff'd sub. nom. Kommer II*, 710 F.
 App'x. 43 (2d Cir. 2018)...........................................................................................12

*Kuenzig v. Hormel Foods Corp.*,
 505 F. App'x 937 (11th Cir. 2013) ..........................................................................33

*Lake v. Kardjian*,
 874 N.Y.S.2d 751 (N.Y.Sup.Ct. 2008) ...................................................................34

*Layton v. Lester*,
 No. CV-085023289S, 2011 WL 522887 (Conn Supr. Ct. 2011)..............................39

*Llado-Carreno v. Guidant Corp.*,
 No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) ...........................27

*Lucas v. Subaru of America, Inc.*,
 No. CV-030476082S, 2005 WL 1155009 (Conn. Supr. Ct. Apr. 20, 2005) ...........34

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)........................................................................................6, 7, 11

*Makarova v. United States*,
 201 F.3d 110 (2d Cir. 2000)................................................................................5, 21

*Marrache v. Bacardi U.S.A., Inc.*,
 17 F.4th 1084 (11th Cir. 2021) ................................................................................32

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*,
 623 F.3d 1319 (8th Cir. 2010) .................................................................................24

*Mee v. I A Nutrition, Inc.*,
 No. 14-cv-05006-MMC, 2015 WL 2251303 (N.D. Cal. May 13, 2015)................16

*Melendez v. ONE Brands, LLC*,
 No. 18-cv-06650-CBA, 2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ..................16

*Millenium Commc'ns Inc. v. Office of the Att'y Gen.*,
 761 So.2d 1256 (Fla. Dist. Ct. App. 2000) .............................................................16

*Mills v. Polar Molecular Corp.*,
 12 F.3d 1170 (2d Cir. 1993)......................................................................................28

*Mink v. Smith & Nephew, Inc.*,
   860 F.3d 1319 (11th Cir. 2017) .................................................................24

*Monsanto Co. v. Geertson Seed Farms*,
   130 S. Ct. 2743 (2010) ...............................................................................6

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008) ........................................................................7

*Napoli-Bosse v. General Motors LLC*,
   543 F. Supp. 3d 536 (D. Conn. 2020) .......................................................37

*New York SMSA Ltd. Partnership v. Town of Clarkston*,
   612 F.3d 97 (2d Cir. 2010) ........................................................................13

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................11, 12

*Norman v. Bayer Corp.*,
   No. 3:16-CV-00253, 2016 WL 4007547 (D. Conn. July 26, 2016) ...........24

*Omega Engineering, Inc. v. Eastman Kodak Co.*,
   30 F. Supp. 2d 226 (D. Conn. 1998) .........................................................33

*Parker v. Colgate-Palmolive Co.*,
   No. X08-CV-030193798S, 2003 WL 22205061 (Conn. Supr. Ct. 2003) .............39

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019) .......................................................30

*PDK Labs, Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997) ....................................................................23

*Philadelphia Indemnity Ins. Co. v. Lennox Industries, Inc.*,
   No. 18-cv-00217-CSH, 2019 WL 1258918 (D. Conn. Mar. 18, 2019) .................34

*PLIVA, Inc v. Mensing*,
   564 U.S. 604 (2011) ..................................................................................17

*Prohias v. AstraZeneca Pharms., L.P.*,
   958 So.2d 1054 (Fla. Dist. Ct. App. 2007) ...............................................32

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   No. 3:10-CV-1827, 2011 WL 2446404 (D. Conn. June 15, 2011) ...........28

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ......................................................................28

CORE/3006951.0087/171235695.6

*Sancho v. Davidson*,
No. 3:05-CV-883, 2006 WL 8448126 ..................................................................28

*Savalli v. Gerber Products Co.*,
No. 15-cv-61554, 2016 WL 5390223 (S.D. Fla. Sept. 20, 2016) ...........................33

*Scallop Corp. v. Tully*,
705 F.2d 645 (2d Cir. 1983)....................................................................................5

*Sierra Club v. Con-Strux, LLC*,
911 F.3d 85 (2d Cir. 2018)......................................................................................2

*Smith v. Depuy Orthopaedics, Inc.*,
No. 11-4139, 2013 WL 1108555 (D. N.J. Mar. 18, 2013) ....................................18

*Source One Fin. Corp. v. Rd. Ready Used Cars, Inc.*,
No. CV136034341S, 2014 WL 1013121 (Conn. Supr. Ct. Feb. 14, 2014) ...........36

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ......................................................................................7, 11

*Pension Ben. Guar Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan
v. Morgan Stanley Inv's Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)....................................................................................6

*Town of New Hartford v. Connecticut Resources Recovery Authority*,
291 Conn. 433 (2009) ...........................................................................................39

*United States. v. W. Pac. R. R. Co.*,
352 U.S. 59 (1956)..........................................................................................24, 25

*United Technologies Corp. v. Saren Eng'g, Inc.*,
No. X06CV020173135S, 2002 WL 31319598 (Conn. Supr. Ct. Sept. 25,
2002) .....................................................................................................................36

*Vertex, Inc. v. City of Waterbury*,
278 Conn. 557 (2006) ...........................................................................................38

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ...........................................................................8, 10

*Young v. Johnson & Johnson*,
No. 11-4580, 2012 WL 1372286 (D.N.J. Apr. 19, 2012).....................................30

*Zlotnick v. Premier Sales Grp., Inc.*,
480 F.3d 1281 (11th Cir. 2007) ............................................................................29

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, 505/10a ...................................................................................................4, 27, 30, 40

15 U.S.C. § 2310(d)(1) ..............................................................................................37

21 U.S.C. 355(h) ..................................................................................................18, 21

21 U.S.C. § 337(a) ....................................................................................................23

21 U.S.C. §§ 351, 352.21 ..................................................................................2, 20, 24

21 U.S.C. § 352(e) ....................................................................................................21

21 U.S.C. § 379r(a) ..............................................................................................13, 17

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, Div. A, Title III, § 3854(c) ............................................................................................20, 26

Conn. Gen. Stat. § 42a-2-313 .....................................................................................33

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§  501.201, 501.212, *et seq.* .......................................................................................................4, 32, 39

Florida Food, Drug, and Cosmetic Act, Fla. Stat. §§ 499.001, 499.*005, et seq.* .......................4, 32

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*................................3, 36, 37

**Regulations**

21 C.F.R. parts 201, 250 and 330, and (b) ...................................................................21

21 C.F.R. § 201, et seq..........................................................................2, 19, 20, 21, 22

21 C.F.R. § 330.1 ..............................................................................................14, 19, 21

21 C.F.R. § 210.3(b) ................................................................................................14, 21

21 C.F.R. § 211.68(a) ................................................................................................15

21 C.F.R. § 211.160 ................................................................................................14, 15

21 C.F.R. § 211.194 ................................................................................................14, 15

21 C.F.R. § 352 ................................................................................................21, 24, 25

21 C.F.R. part 210 ......................................................................................5, 11, 14, 16

CORE/3006951.0087/171235695.6

21 C.F.R. part 211 ................................................................................................5, 11, 14, 16

21 C.F.R. § 10.30(e) .........................................................................................................25

ICH Q3C ...................................................................................................................2, 21, 22

USP General Chapter 467 ............................................................................................15, 22

USP 621 available at
    http://www.pharmacopeia.cn/v29240/usp29nf24s0_c621_viewall.html (last
    view November 16, 2021).......................................................................................15

**Other Authorities**

Drug Monograph Process, FDA, Sept. 3, 2020, available at
    https://www.fda.gov/drugs/over-counter-otc-drug-monograph-process (last
    visited on September 29, 2021) ............................................................................20

FDA Guidance for the Industry, "Analytical Procedures and Methods Validation
    for Drugs and Biologics" (2015)..........................................................................15

FDA Reviewer Guidance, "Reviewer Guidance, Validation of Chromatographic
    Methods" (1994), available at https://www.fda.gov/media/75643/download ........................15

Fed. R. Civ. P. 8 ..............................................................................................................27

Fed. R. Civ. P. 9(b) .............................................................................................2, 3, 27, 28, 29

Fed. R. Civ. P. 12(b) .......................................................................................1, 5, 6, 21, 27

Sen. Rep. 105-43 ..............................................................................................................18

Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products,
    VALISURE, LLC, May 24, 2021, https://www.valisure.com/wp-
    content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-
    After-sun-Care-Products-v9.7.pdf .........................................................................2

x

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Edgewell Personal Care Brands, LLC, ("Defendant") respectfully submits this Memorandum in support of its Motion to Dismiss the First Amended Complaint ("Complaint") (Dkt. #40) pursuant to Federal Rules of Civil Procedure 8, 9, 12(b)(1), and 12(b)(6). Plaintiffs Bryan Clinger, Monica Barba, and Heather Rudy ("Plaintiffs") seek to represent a class consisting of all consumers who bought Banana Boat® Products nationwide. They also seek to represent two subclasses: (1) consumers who purchased the product for personal use in Florida, and (2) consumers who purchased the Products for personal use in Illinois.

For all the reasons set forth below, this Court should dismiss Plaintiffs' Complaint with prejudice because the defects in Plaintiffs' Complaint—including that Plaintiffs lack standing, Plaintiffs' claims are preempted by federal law, Plaintiffs' claims are subject to the Food and Drug Administration's ("FDA") primary jurisdiction, Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard and Plaintiffs fail to state any claims upon which relief can be granted—are fatal to Plaintiffs' claims and cannot be cured by amendment.

## INTRODUCTION

Plaintiffs allege Defendant deceptively marketed its Banana Boat® Products[1] by failing to disclose on the label that trace amounts of benzene within FDA guidelines may be present in the Products. *See* Complaint ¶¶ 1, 34, 112, 135. Plaintiffs' entire case is based solely on the Citizen

---

[1] While Plaintiffs define every sunscreen in the Banana Boat® line of products as "the Product", *see* Complaint ¶ 1; Plaintiffs only identify the following Banana Boat® products as having been tested by Valisure to contain benzene in any of the tested batches: Kids Max Protect & Play™ Sunscreen Spray, Kids Sport Sunscreen, Protective Dry Oil Clear Sunscreen Spray, Simply Protect Kids Sunscreen Spray, Ultra Defense® Ultra Mist® Clear Sunscreen Spray, Ultra Sport Clear Sunscreen Spray, and UltraMist® Deep Tanning Dry Oil Continuous Clear Spray, Complaint ¶ 29. Plaintiffs also fail to note that the foregoing products were tested by Valisure to contain either no benzene (in certain batches), benzene below the detectible limit (0.1 ppm), or benzene below the Food and Drug Administration's ("FDA") 2 ppm limit.

Petition Valisure filed with the FDA on May 24, 2021, wherein Valisure stated that it found trace amounts of benzene in specific lots of certain Banana Boat® Products. *See* Complaint ¶¶ 27-29.[2]

The Court should dismiss the Complaint for the following reasons:

*First*, Plaintiffs lack Article III standing because they have not alleged an injury-in-fact. Plaintiffs have no "concrete and particularized injury" because they fail to allege that the Products they purchased contained benzene. Plaintiffs merely allege that a third-party laboratory—which now admits that it did not test in accordance with FDA regulations or comply with current good manufacturing practices ("cGMP")—tested 19 bottles of Banana Boat® Products and found 7 of them purportedly contained benzene at levels of 0.43 ppm or less, which is well below the FDA's 2 ppm benzene standard. *See* ICH Q3C.[3] Plaintiffs further lack Article III standing to pursue the remedy of an injunction because they have not sufficiently alleged the real and immediate prospect of future harm.

*Second*, Plaintiffs' claims are preempted by the Food Drug and Cosmetic Act ("FDCA"), which authorizes the FDA to regulate, *inter alia*, the ingredients and labeling of nonprescription over-the-counter ("OTC") drugs, including the "safety" and "efficacy" of the sunscreen Products at issue here.  *See* 21 U.S.C. §§ 351, 352.21; 21 C.F.R. § 201, et seq. The FDA has found—and Valisure admits—that Valisure did not comply with FDA regulations when testing for benzene. Permitting Plaintiffs to rely on non-FDA compliant testing would subject Defendant to testing

---

[2] Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products, VALISURE, LLC, May 24, 2021, https://www.valisure.com/wp-content/uploads/Valisure-Citizen-Petition-on-Benzene-in-Sunscreen-and-After-sun-Care-Products-v9.7.pdf and Attachment A to Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products, VALISURE, LLC, May 24, 2021, https://www.valisure.com/wp-content/uploads/Attachment-A-Table-5-of-Valisure-FDA-Citizen-Petition-on-Sunscreen-v2.pdf (hereinafter collectively "Valisure Citizen Petition") are attached as Exhibit A and Exhibit B, respectively, to the Declaration of Megan McCurdy. The Court is permitted to take into account matters of public record that are integral to the claim and whose authenticity is unquestioned. *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018).
[3] See *infra*, § II.C.2 for a discussion of the source of this 2 ppm standard.

requirements "different from" and "not identical" to that of the FDA, representing an impermissible preemption of that agency's authority under the FDCA.

*Third,* Plaintiffs' claims are barred because they are subject to the primary jurisdiction of the FDA to promote uniformity and avoid conflict with the FDA's forthcoming decision on the Valisure Citizen Petition.

*Fourth*, Plaintiffs fail to state a claim for relief upon which relief can be granted because (1) they have not met the heightened pleading standard required under Fed. R. Civ. P. 9(b) for any of their fraud-based claims because they have not alleged sufficient factual details establishing the circumstances of their purchase or how they relied on Defendant's alleged misrepresentations; (2) they fail to satisfy the reasonable consumer standard for their  FDUTPA and ILCFA claims because a reasonable consumer would not believe that FDA-compliant labels are misleading; (3) their FDUTPA claims are precluded by that law's safe harbor provision; (4) their breach of express warranty claim fails because they have not pointed to any affirmative statements by Defendant that create an express warranty; (5) they have not alleged contractual privity between themselves and Defendant so as to support an implied warranty claim; (6) they do not state a claim under any state warranty law capable of supporting a Magnuson-Moss Warranty Act claim; and (7) their unjust enrichment claim fails because they do not plausibly allege facts establishing that the transactions in question were unjust and additionally fail to allege that they directly conferred a benefit to Defendant.

*Finally*, Plaintiffs are not entitled to the equitable remedy of restitution because they failed to allege that they lack an adequate remedy at law in the form of damages.

For these reasons, the Court should dismiss each of Plaintiffs' claims with prejudice.

3

**ARGUMENT**

Plaintiffs assert ten claims against Defendant: (1) fraud by omission on behalf of the nationwide class; (2) breach of express warranty; (3) breach of implied warranty; (4) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (5) unjust enrichment; (6) violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201, *et seq.* ("FDUTPA") on behalf of a Florida subclass premised on violations of the FDCA and FLDCA; (7) violations of the FDUTPA on behalf of a Florida subclass premised on unfair business practices; (8) violations of the FDUTPA on behalf of a Florida subclass premised on deceptive conduct; (9) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ILCFA") on behalf of an Illinois subclass premised on unfair business practices; and (10) violations of the ILCFA on behalf of an Illinois subclass premised on deceptive conduct.

On May 25, 2021, Valisure filed a Citizen Petition with the FDA alleging that it tested certain sunscreen products from various manufacturers and found benzene in some of those Products—ranging from less than 0.1 ppm in some Products to more than 6.77 ppm in others. *See* Ex. A of the McCurdy Decl. (Valisure Citizen Petition). Every Banana Boat® product tested well below the FDA's 2 ppm standard for benzene, with amounts ranging from undetectable or less than 0.1 ppm to a maximum of 0.43 ppm. *Id*.[4]  Despite the fact that every Banana Boat® sunscreen tested well below the FDA's 2 ppm benzene standard, Plaintiffs allege that the entire Banana Boat

---

[4] Valisure purportedly tested 19 bottles of Banana Boat® sunscreen products. *See* Valisure Citizen Petition. "[B]enzene was not detected" in 10 of the bottles. *Id*. at Attachment A. Benzene was detected in four Banana Boat® products at less than 0.1 ppm, which is the lower limit of quantitation ("LLOQ"). *Id*. That is, 4 bottles tested allegedly contained benzene, but at a level below the lowest amount a sample could be quantitatively determined to contain benzene. *Id*. at pp. 9, 14-15. Valisure claimed that five of the nineteen bottles contained benzene above the LLOQ: Kids Max Protect & Play™ Sunscreen C – Spray SPF 100 at 0.11 ppm; Ultra Sport™ Clear Sunscreen Spray SPF 100 at 0.15 ppm; Kids Max Protect & Play™ Sunscreen C – Spray SPF 100 at 0.19 ppm; Ultra Mist® Deep Tanning Dry Oil Continuous Clear Spray SPF 4 at 0.36 ppm; and Kids Max Protect & Play™ Sunscreen C –SPF 100 at 0.41 and/or 0.43 ppm.

4

line of sunscreen products (defined as "the Product", Complaint ¶ 1) are adulterated, misbranded, and are unapproved new drugs because they either contained or had a significant risk of containing benzene. *See* Complaint ¶ 2. Plaintiffs state that had they known the Products contained or may have contained benzene they would not have purchased them. Complaint ¶¶ 113, 115.

On May 26, 2021—just one day after Valisure filed its Citizen Petition with the FDA—the FDA began an eleven (11) day inspection of Valisure. The FDA's inspection culminated in a July 6, 2021 report documenting conditions ("Report of Inspection")[5][6] that could lead to a formal notice of violation of the Food Drug and Cosmetic Act ("FDCA"). The FDA found that Valisure failed to comply with cGMP and the regulatory requirements detailed in 21 C.F.R. parts 210 and 211. More specifically, the FDA found that Valisure failed, *inter alia*, to establish that the equipment it used to test for benzene in the Products was properly calibrated and additionally failed to adequately validate or verify the analytical methods it used to evaluate the composition of the Products. Calibration is required to ensure that a laboratory's equipment is accurate, precise, and produces repeatable results.

Remarkably, Valisure, in its July 27, 2021 Response to the FDA's Report of Inspection, admits it does not comply with cGMP and 21 C.F.R. parts 210 and 211.[7] Valisure then goes to great lengths to explain that its testing activities are not meant to be used for regulatory purposes and that it seeks to deactivate its FDA registration as an analytical laboratory to avoid future FDA scrutiny. Valisure affirmatively states in writing that it does not intend for its testing to be used for

---

[5] The FDA's Report of Inspection is attached as Exhibit C to the McCurdy Declaration.

[6] Both Article III standing and preemption arguments implicate the subject-matter jurisdiction of the Court and can thus be addressed via a 12(b)(1) motion. *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 51 (2d Cir. 2016) (addressing Article III standing in response to a 12(b)(1) motion); *Scallop Corp. v. Tully*, 705 F.2d 645, 646 (2d Cir. 1983) (addressing preemption in response to a 12(b)(1) motion). In the context of a 12(b)(1) motion, the Court can look outside the pleadings without converting the motion into a motion for summary judgment. *See, e.g., Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[7] Valisure's Response is attached as Exhibit D to the McCurdy Declaration.

"efficacy" purposes and **admits that test results of one sample cannot be imputed to non-tested batches or samples**. Plaintiff's entire lawsuit is premised on the notion that Valisure's test results of certain samples can be imputed to non-tested batches or samples, something Valisure itself now admits cannot and should not be done.

Even if Valisure's testing did comply with FDA's regulations—which Valisure admits it did not—Plaintiffs do not allege that the Products they purchased were from the same lots as the Products tested by Valisure, nor do they allege they purchased the Products during the same time period Valisure was collecting sample bottles for testing.[8]

## I. PLAINTIFFS' LACK OF ARTICLE III STANDING REQUIRES DISMISSAL.

The Court should dismiss Plaintiffs' claims because it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Article III of the United States Constitution dictates that jurisdiction of the federal courts extends only to actual cases or controversies. U.S. Const. Art. III; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590, (1992). To satisfy standing under Article III, a plaintiff has the burden to show: (1) an injury-in-fact; (2) that the injury is traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling. *Lujan*, 504 U.S. at 560–61. *See also Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010). A complaint should be dismissed if the Court appears to lack jurisdiction after assessing the factual allegations of the complaint as a whole. *Pension Ben. Guar Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv's Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

---

[8] Plaintiffs fail to acknowledge that 14 of the 19 tested Banana Boat® Products had zero benzene or tested at or less than the 0.1 ppm LLOQ and the remaining Products tested well below the FDA's 2 ppm limit. Valisure Citizen Petition at pp. 13-15 and Attachment A. Four bottles of Kids Max Protect & Play™ Sunscreen C-Spray SPF 100—the Product allegedly purchased by Plaintiffs Clinger and Rudy—were found to contain both zero benzene and trace amounts of benzene at well below the FDA's 2 ppm limit. *Id.* (0.43 ppm (Lot 200910346); 0.19 ppm (Lot 200273634); 0.11 ppm (Lot 200243635); and non-detectable (Lot 21062736)). Two bottles of the Protective Dry Oil Clear Sunscreen Spray with Coconut Oil SPF 15—the Product allegedly purchased by Plaintiff Barba—were found to contain either zero benzene, (Lot 210343399), or the 0.1 ppm LLOQ level of benzene. (Lot 202023826).

A.     **Plaintiffs lack Article III standing because they fail to allege any injury in fact.**

Plaintiffs fail to allege an injury-in-fact required for standing under Article III. The Supreme Court has held that a plaintiff must suffer an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180 (2000). Although the Court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of Plaintiffs, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

1.     **Plaintiffs fail to allege a "concrete and particularized" injury.**

Courts have repeatedly found that a plaintiff does not plausibly allege an injury when they allege that some of the products in a product line contained an offending substance but fail to allege that the product they purchased contained that substance. *See, e.g., Dimuro v. Estee Lauder Companies, Inc.*, 2013 WL 12080901, at *3 (D. Conn. Nov. 22, 2013) (finding plaintiffs lacked standing to pursue a product liability claim against manufacturer of eye wrinkle creams that they did not purchase or use because "named plaintiffs cannot allege injuries that resulted from the four products that were not purchased nor used by them."); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) (finding plaintiff lacked Article III standing in action premised on mislabeled krill oil when plaintiff failed to allege that the bottle of krill oil he purchased did not contain the nutrient advertised on the label); *Fahey ex rel. D.C. v. Deoleo USA, Inc.*, 2018 WL 5840664, at *2 (D.D.C. Nov. 8, 2018) (finding plaintiff lacked Article III standing in action premised on adulterated bottles of olive oil when plaintiff failed to allege that the bottle he purchased was adulterated and because the "adulterated" claim hinged on results from

7

a third-party laboratory that only tested three bottles of olive oil that were temporally and geographically distant from the bottle purchased by plaintiff); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (quotations omitted) (plaintiffs lacked standing because they "fail[ed] to show that any of the particular packages of [hotdogs] they personally purchased contained non-kosher beef").

Further, courts regularly dismiss claims like Plaintiffs' that rely on third-party testing of an allegedly defective product. *See, e.g., Gaminde*, 2019 WL 1338724, *3-4, *Doss v. Gen. Mills, Inc.*, 2019 WL 7946028, *2-3 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x. 312 (11th Cir. 2020) (plaintiff lacked standing because she did not "allege that the Cheerios she herself bought actually contain any glyphosate—just that some Cheerios that have been tested do" according to "various testing entities[.]"); *Fahey*, 2018 WL 5840664, *2 (claim was based on study conducted by a third-party university).

Plaintiffs' Complaint relies entirely on the Valisure Citizen Petition, with no allegation that Plaintiffs attempted to verify or replicate Valisure's results. Valisure itself tested only small sample batches of specific lots of certain Products, testing which Plaintiffs then use to draw broad and unsupported conclusions about every Product in a product line. Plaintiffs do not even allege that the specific Product they purchased was from one of the batches tested by Valisure, pushing their claims even further into the realm of conjecture. Assuming the facts stated in the Valisure Citizen Petition are true, it only supports the proposition that trace amounts of benzene were present in certain specific lots of the product. Plaintiffs do not allege that the Products they purchased were from those lots. In *Dimuro*, the Court dismissed a claim for lack of standing when plaintiffs failed to allege that they purchased or used the specific types of creams that they alleged were inefficacious. 2013 WL 12080901, at *3. Similarly, Plaintiffs have failed to allege that the

sunscreen they purchased was from the same lots that allegedly contained trace amounts of benzene.

The facts set out in the Complaint are also highly analogous to the facts alleged in *Fahey*, where plaintiff relied on third-party laboratory results to support a claim that his specific product was adulterated. *Id.* at *1. The Court dismissed that case because plaintiff did not allege that that laboratory, which tested a small batch of the product in question taken from a specific location at a specific moment in time, had product data capable of supporting "general conclusions about the quality of Bertolli Olive Oil[.]" *Id.* at *2. Similarly here, Plaintiffs have drawn general conclusions about the composition of the Products they purchased from a small batch of Products tested by a third-party laboratory. They do not allege the Products they purchased were temporally or geographically proximate to the Products tested by Valisure. Moreover, Valisure expressly states that its test results of a specific lot cannot be imputed to other batches or lots. *See infra*, at § II.A.

Here, Plaintiffs' allegations are limited to the proposition that "Defendant was aware, or at least should have known, that the Product contained benzene (or, alternatively, a significant risk of benzene existing due to impurities or contamination) when it marketed and sold the Product to Plaintiffs and the other members of the Class." Complaint ¶ 136. Critically, Plaintiffs do not allege that the specific Products they purchased contained benzene or even that their Products were in one of the lots tested by Valisure that contained benzene. Compare Complaint ¶¶ 7-9 with Valisure Citizen Petition at 13 and Attachment A.

Put another way, Plaintiffs have alleged that according to a third-party laboratory, three bottles of Kids Max Protect & Play™ Sunscreen C-Spray SPF 100 and one bottle of Protective Dry Oil Sunscreen Spray contained trace amounts of benzene, and because they purchased those Products, their Products might have contained trace amounts of benzene, too. This type of

allegation is plainly insufficient to establish Article III standing. *Wallace*, 747 F.3d at 1030 ("In the context of defective products, it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited the alleged defect.") (internal quotations omitted). As such, Plaintiffs' claims should be dismissed for failure to adequately allege injury-in-fact. Plaintiffs have not alleged the Products they purchased actually contained benzene, leaving them with only a conjectural allegation that the Products they purchased "may" contain benzene.

Furthermore, economic injury cannot be premised on a hypothetical, speculative, or uncertain risk of harm. Plaintiffs do not allege that they suffered any physical harm from any alleged benzene in the Products. Nor do Plaintiffs allege that the Products failed to protect them from the sun. Instead, Plaintiffs allege they were economically injured because they would not have purchased the product "had they known the truth of the representations and omissions described herein." Complaint ¶ 115. This alleged economic injury is premised on the hypothetical and conjectural risk that the Products might have contained benzene. Even if the Products Plaintiffs purchased contained 0.43, 0.19, or 0.11 ppm of benzene, Plaintiffs fail to establish that these amounts would render the product unsafe or useless and thus fail to establish that they were subjected to a concrete economic injury. *See* Valisure Citizen Petition at 13. Indeed, the maximum amount of benzene detected by Valisure in any of the Products purchased by Plaintiffs—0.43 ppm—is well below the FDA's 2 ppm standard.

Accordingly, Plaintiffs' alleged injuries are premised entirely on the conjectural risk that (1) the Products they purchased might have contained trace amounts of benzene and (2) such trace amounts of benzene caused economic injury by lowering the value of the Products. Plaintiffs fail

to allege an economic injury sufficient to establish injury-in-fact, as required for standing under Article III. Accordingly, the Court should dismiss their claims with prejudice.

### 2.   Plaintiffs' basis for standing is undermined by the FDA's Report on its Inspection of Valisure and Valisure's Response to that Report.

Plaintiff's already speculative "may contain benzene" claims become even more speculative given Valisure's admission, *see infra* at § II.A., that its test methods do not comply with FDA regulations. To establish Article III standing, Plaintiffs must suffer an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *Spokeo*, 136 S. Ct. 1540, 1545 (2016); *Friends of the Earth*, 528 U.S. at 180 (2000).  Plaintiffs' theory is that the Products they purchased "contained benzene", "may have contained benzene", or "had the risk of containing benzene." Complaint ¶¶ 103, 107, 111.

Plaintiffs' sole basis for the foregoing claims is the testing performed by Valisure. Complaint ¶¶ 27-29. However, Valisure by its own admission "make[s] no claim or indication of the relative…suitability of…the samples as compared with other subsets, batches, lots, brands, formulations, or treatments." Response to the Report, at p. 3. In other words, Valisure expressly disclaims that its testing provided information about any other product other than the specific bottles that were tested under non-cGMP conditions. Further, Valisure's test results are discredited by its failure to comply with cGMP and 21 C.F.R. parts 210 and 211, *see infra*, at § II.A.; transforming Plaintiffs' claims regarding the composition and quality of the Products they purchased into pure speculation.

### B.   Plaintiffs lack Article III standing to pursue an injunction.

Plaintiffs lack standing to pursue their request for injunctive relief. Complaint, Prayer for Relief ¶ B. When seeking injunctive relief, plaintiffs must establish there is a "real and immediate threat of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Courts in the

Second Circuit have repeatedly held that plaintiffs lack standing for injunctive relief when they fail to allege that they will buy the allegedly deceptive product in the future. *King v. Rell*, 2008 WL 792818, at *2 (D. Conn. Mar. 20, 2008) (finding plaintiff lacked standing for injunctive relief when the threat of future injury was neither real nor immediate); *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310 (S.D.N.Y. 2017) (plaintiff must show she is likely to repurchase the same product to establish standing for injunctive relief in product liability claim) *aff'd sub. nom. Kommer II*, 710 F. App'x. 43 (2d Cir. 2018); *Chang v. Fage U.S. Dairy Indus.*, 2016 WL 5415678, at *5 (E.D.N.Y. Sept. 28, 2016) (plaintiffs failed to plead future injury because they did not allege that they will purchase the product in the future); *Atik v. Welch Foods, Inc.*, 2016 WL 5678474, at *6 (E.D.N.Y.) (plaintiff failed to plead future injury when she alleged she would only purchase product when she could be assured it was no longer deceptive); *In re Edgewell Personal Care Co. Litig.*, 2018 WL 7858623, at *16 (E.D.N.Y. Sept. 4, 2018) (plaintiffs failed to establish standing for injunctive relief because they alleged only "that [they] will purchase the product in the future on the condition that [they] can be assured it is no longer deceptive.").

Here, Plaintiffs alleged only that they "want" to buy the product in the future but cannot "know or trust that Defendant will truthfully and legally label the product" absent an injunction. Complaint ¶ 118. This allegation posits a hypothetical—that they *will* buy a product *if* another event (an injunction) occurs. This type of conjecture is plainly insufficient to establish standing for an injunction under well-established Second Circuit precedent in that Plaintiffs do not squarely claim they will purchase the product in the future. *Nicosia*, 834 F.3d at 239. Because Plaintiffs have pled a hypothetical, as opposed to a real or immediate, threat of future injury, they lack Article III standing for the remedy of injunctive relief.

## II.   PLAINTIFFS' CLAIMS ARE PREEMPTED BY FEDERAL LAW.

"The Supremacy Clause provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting U.S. const. art. VI, cl. 2). The key to the preemption inquiry is the intent of Congress. *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). "In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *New York SMSA Ltd. Partnership v. Town of Clarkston*, 612 F.3d 97, 104 (2d Cir. 2010) (internal quotations omitted). Preempted state and local laws are "without effect." *Id*. at 103. Here, Congress has both expressly and impliedly preempted state law claims seeking to impose labeling requirements different from, or in addition to, those required by federal regulations. *See Fawemimo v. American Airlines, Inc*., 751 F. App'x. 16, 18-19 (2d Cir. 2018) (holding state law negligence claim was expressly preempted by the Federal Aviation Act and impliedly preempted in that it would interfere with federal regulations pertaining to airline safety).

A.    **Plaintiffs' claims are expressly preempted because recognition of Valisure's testing would subject Defendant to standards "different from" and "not identical" to FDA testing standards.**

States may not establish "any requirement . . . (1) that relates to the regulation of a [nonprescription drug]; and (2) that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA.]" 21 U.S.C. § 379r(a); *see also Forouzesh v. CVS Pharmacy, Inc*., 2019 WL 652887, at * 5 (C.D. Cal. Feb. 15, 2019) (granting motion to dismiss based on preemption because the court could not conclude that plaintiff's testing was conducted

13

in compliance with FDA regulations and "a claim seeking to use methodology other than required by the FDA would be preempted"); *Anglin v. Edgewell Personal Care Co*., 2018 WL 6434424 at *1 (E.D. Mo. Dec. 7, 2018) (plaintiff failed to plead that the testing of sunscreen Products "complie[d] with the FDA-mandated methodologies" and dismissed as preempted any reliance on testing performed by Consumer Reports).

The FDA requires all "[m]anufacture, processing, packing, or holding of a drug product includes packaging and labeling operations, testing, and quality control of drug products" to comply with current good manufacturing practices ("cGMP"). 21 C.F.R. § 210.3(b)(12). The FDA will not recognize an over-the-counter drug "as safe and effective" and "not misbranded" unless "[t]he product is manufactured in compliance with current good manufacturing practices, as established by" 21 C.F.R. parts 210 and 211. 21 C.F.R. § 330.1. The FDA's cGMP regulations require compliance with extensive laboratory controls, *see* 21 C.F.R. § 211.160; and documentation "assuring compliance with established specifications and standards[.]," *see* 21 C.F.R. § 211.194. In fact, Plaintiffs recognize the necessity of complying with cGMP as established by 21 C.F.R. Parts 210 and 211. *See* Complaint ¶¶ 58, 82, 83.

The FDA's Report of Inspection itemizes Valisure's failure to comply, *inter alia*, with cGMP requirements. *See* Ex. 1-A. The FDA specifically calls out Valisure's testing *for the presence of benzene*. *See e.g*., Ex. 1-A, Observation 1(D)(a) (emphasis added). The FDA observed that: (1) Valisure failed to qualify the equipment it used to test for benzene to ensure that the equipment was properly installed and configured, operated according to specifications, and consistently performed as expected under actual conditions of use, *i.e.*, it failed to perform, document or even establish a protocol for installation qualification ("IQ"), operational qualification ("OQ"), or performance qualification ("PQ") (Ex. A, Observation 2(a)); (2)

14

Valisure's protocol for testing benzene did not include system suitability tests,[9] which are tests to confirm that the entire testing system functions correctly as an integrated system, at the time of use,[10] and is required as part of cGMP per 21 C.F.R. § 211.194(a)(2) and by the applicable testing standard[11] (*see* Observation 1(D)(b)); and (3) the analysis method protocol for testing benzene did not include calibration at a sufficient frequency, as required by 21 C.F.R. § 211.68(a); 21 C.F.R. § 211.194(d); and 21 C.F.R. § 211.160(b)(4) (*see* Observation 1(D)(c)).

Rather than defend its testing procedures, Valisure readily admits—at least a half a dozen times—that it does not comply with or is not subject to cGMP. Ex. 1-B at p. 1-3.[12] In its own words, Valisure states that its "testing is not part of any manufacturer's cGMP quality system," "activities are not subject to cGMP requirements," "testing is not integral to the manufacturer's quality assurance activities regarding cGMP compliance and product release," and "testing [is done] outside the traditional drug cGMP manufacturing and quality control processes." *Id*. at p. 1-2. Valisure declares "it is not subject to cGMP requirements" and then acknowledges that FDA is citing Valisure "for not validating its test methods in accordance with cGMP standards . . .". *Id*. at p. 2, 5. Plaintiffs, for their part, do not even attempt to allege that Valisure's testing methodology complied with FDA testing standards.

---

[9] USP 621 as referenced by the FDA provides that "[s]ystem suitability tests are an integral part of the gas and liquid chromatographic methods.  They are used to verify the detection sensitivity, resolution, and reproducibility of the chromatographic system are adequate for the analysis to be done.  The tests are based on the concept that the equipment, electronics, analytical operations, and samples to be analyzed constitute an integral system that can be evaluated as such." USP 621 available at   http://www.pharmacopeia.cn/v29240/usp29nf24s0_c621_viewall.html (last view November 16, 2021).  "No sample analysis is acceptable unless the requirements of system suitability have been met." *Id*. *See also* FDA Reviewer Guidance, "Reviewer Guidance, Validation of Chromatographic Methods" (1994) "System suitability testing is essential for the assurance of the quality performance of the chromatographic system." available at https://www.fda.gov/media/75643/download.

[10] FDA Guidance for Industry, "Analytical Procedures and Methods Validation for Drugs and Biologics" (2015) at 5.

[11] *See* USP General Chapter 467 Residual Solvents.

[12] Nevertheless, Plaintiffs use Valisure's non-compliant FDA testing to allege that the products are adulterated and misbranded under the FDA. *See e.g*., FAC ¶¶ 27-28.

Valisure repeatedly states that it does not perform testing activities for "regulatory purposes" and that "Valisure's customers do not use Valisure's testing and certification to determine whether drug products meet FDA specifications." *Id*. at p. 1. Valisure represents that "[t]here is no expectation among" Valisure's customers that its testing activities be "based on FDA approved specifications." *Id*. at 3. And that "none of the laboratory controls required by the cGMP regulations in 21 C.F.R. parts 210 and 211 is relevant to Valisure's activities . . ." *Id*. at 2. Valisure then responds that it desires to "deactivate its FDA registration" believing its "voluntary registration as an Analytical Laboratory unintentionally implicated FDA jurisdiction." *Id*.

While Defendant must abide by the FDA's cGMP standards as set out in 21 C.F.R. parts 210 and 211, Valisure readily admits it did not comply with those same standards when it tested certain lots of Defendant's Products. Valisure acknowledged that the "FDA cites Valisure for not validating its test methods in accordance with cGMP standards . . ." *Id*. at 2. The Valisure Citizen Petition is the only support for Plaintiffs' claim that they purchased Products that may have contained benzene. And the testing standards employed by Valisure to support its Petition are markedly "different from" and emphatically "not identical" to the FDA's cGMP standards set out in 21 C.F.R. parts 210 and 211. As such, Plaintiffs' claims are expressly preempted. If Plaintiffs are allowed to base their already speculative "may contain benzene" claims on non-FDA compliant testing, Defendant would be subject requirements "different from" and "not identical to" the FDA's standards. *See Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *5 (E.D.N.Y. Mar. 16, 2020) (finding state law consumer protection claims to be preempted at motion to dismiss stage when plaintiff failed to allege compliance with the FDA's "specific methodology for determining whether a particular nutrient-content statement made on a label is false[.]"); *Mee v. I A Nutrition, Inc.*, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) (finding consumer protection claims

16

preempted at motion to dismiss stage when plaintiff failed to allege that the testing of products on which she based her claims was conducted in accordance with FDA testing standards). Effectively, Plaintiffs are demanding that Defendant be required to comply not only with the FDA's cGMP standards but also with the less-stringent standards utilized by Valisure. This type of requirement, which essentially would create a less-exacting regulatory scheme parallel to the FDA's, is expressly preempted. 21 U.S.C. § 379r(a).

Valisure's swift retreat from any claim to cGMP compliance is especially noteworthy given the prominence of the cGMP standards in Plaintiffs' Complaint, which contains multiple references to the necessity of complying with those standards. *See* Complaint ¶¶ 58, 82, 83. Of note, Plaintiffs imply that Defendant did not comply with FDCA regulations because the Products were not "manufactured in compliance with current [cGMP.]" Complaint ¶¶ 82, 83. Plaintiffs' allegations—resting entirely on Valisure's testing—are wholly discredited by the fact that it is Valisure, not Defendant, that is out of compliance with the FDA's cGMP standards. At its core, the use of non-cGMP testing to create liability is not compatible with, and thus expressly preempted by, FDA's own testing standards.

### B. Plaintiffs' claims are further expressly preempted by FDCA regulations regarding the labeling of OTC sunscreen products.

Plaintiffs' state law claims, if successful, would impose state law requirements that are expressly preempted under § 379r of the FDCA. Plaintiffs' claims that would impose liability on Defendant for labeling its product in the fashion required under FDCA are expressly preempted, as intended by Congress. *PLIVA, Inc v. Mensing*, 564 U.S. 604, 617-18 (2011) (preempting state law claims where "It was not lawful under federal law for the Manufacturers to do what state law required of them."); *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 38 (2d Cir. 2020) (holding that states may not impose additional labeling requirements on products regulated under the FDCA

that have not been imposed by Congress or the FDA); *Doe v. Bausch & Lomb, Inc.*, 443 F. Supp. 3d 259, 275 (D. Conn. 2020) (warning statements on a device's labeling could not be deficient for purposes of state tort claims because plaintiffs did not allege the warning "deviated from those that were approved by the FDA[.]"); *Smith v. Depuy Orthopaedics, Inc.*, 2013 WL 1108555, at *10 (D. N.J. Mar. 18, 2013) (fraudulent omission claim premised on statement concerning the safety of a medical device that allegedly excluded relevant product safety information was preempted because the FDA had determined the statement in question to be true); *Desabio v. Howmedica Osteonics Corp.*, 817 F. Supp. 2d 197, 204 (W.D.N.Y. 2011) (state manufacturing defect claim premised on violation of unspecified federal standards was preempted because plaintiff failed to allege with specificity what federal law had been violated); *Ignacuinos v. Boehringer Ingelheim Pharmaceuticals Inc.*, 490 F. Supp. 3d 533, 545-46 (D. Conn. 2020) (fraud claim premised on a false representation made on the label of an inhaler was preempted because plaintiff was effectively requesting a change in labeling that would require FDA approval to implement); *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433 (2015).[13]

The FDCA requires the Products' labels comply with the general labeling requirements for OTC drugs found in 21 C.F.R. part 201, Subpart C and 21 C.F.R. § 201.237 in the Deemed Order. *See* 21 U.S.C. 355(h). These labeling requirements direct the content of the Products' labels with respect to directions and use, intended purpose, ingredients, disclosures, safety warnings, allergic reactions, and when to discontinue use. *See* 21 C.F.R. § 201.66(c); 21 C.F.R. § 201.237. *See also supra* § II.A. "The content and format requirements must be followed unless otherwise specifically

---

[13] "The Senate Report explained the reason for federal preemption in this area: 'Under our Federal system, it is important that State and local officials enforce the same regulatory requirements for products as do our Federal officials. Different or additional requirements [at] the State or local level can work against our national marketplace, confuse consumers, raise prices, undermine public confidence in our regulatory system and in products important to the public health, and result in divergent public health protection throughout the country.' (Sen. Rep. 105-43, supra, at p. 64.)"

provided in the applicable monograph or regulation." 21 C.F.R. § 201.66(a). "An OTC drug product that is not in compliance with the format and content requirements in this section is subject to regulatory action." 21 C.F.R. § 201.66(g).

21 C.F.R. § 201.66(c) and 21 C.F.R. § 201.237 prescribe the content of OTC monograph drug labels, including the entire universe of warning statements that can be included on, and the precise language to be used in, a product's label. 21 C.F.R. § 201.66(c) further requires that the label list both active and inactive ingredients. 21 C.F.R. §§ 201.66(c)(2), (c)(8). The only deviation permitted is with respect to the "Uses" section of the label, which allows for the use of other non-misleading statements than those prescribed for the indications for use. 21 C.F.R. § 201.237(c). A manufacturer cannot unilaterally change the warnings on its sunscreen products, and such deviations would be subject to FDA sanction. See 21 C.F.R. § 330.1.

Here, Plaintiffs allege that the Products are misleading because the "benzene contamination of the Product was not divulged to the consumer on the product label, in the ingredients list or otherwise." Complaint ¶ 34. Benzene is not an active or inactive ingredient in the Products as those terms are defined by the FDA. *See supra*, § II.C.1. Therefore, the Products cannot be considered misbranded for failure to include either benzene on the ingredient list or a warning as to the possible presence of trace amounts of benzene. Defendant is not permitted to include any warnings on the Products that are not outlined in the Deemed Order, 21 C.F.R. § 201.66(c), or 21 C.F.R. § 201.237(d). *See* 21 C.F.R. § 330.1. This includes any warnings relating to the possible presence of trace amounts of residual solvents (like benzene) below the limits established in FDA guidance. The contents of an ingredient list that comports with FDA regulations cannot be considered misleading. *Doe*, 443 F. Supp. 3d at 275. By the same token, the failure to include a warning that the FDA forbids cannot be considered misleading, either. The Court should not impose liability

for a warning label and ingredients list that complies with FDA regulations. Because Plaintiffs' claims—whether stated under state statute or common law—seek to impose liability on Defendant for omitting information on the Product label that it is prohibited from including under the relevant FDA labeling regulations, they are expressly preempted.

### C.      The Products are subject to and in compliance with the Applicable Sunscreen Order.

The FDCA authorizes the FDA to regulate, *inter alia*, the ingredients and labeling of nonprescription, over-the-counter ("OTC") drugs, including the sunscreen Products at issue here. *See* 21 U.S.C. §§ 351, 352.21; 21 C.F.R. § 201, *et seq*. Plaintiffs admit that the Products "are regulated by the U.S. Food and Drug Administration[.]" Complaint ¶ 38. Historically, the regulation of OTC monograph drugs, including the labeling of sunscreen products, involved a complicated three-phase public rulemaking process that could take decades to complete. [14] This changed on March 27, 2020, with the enactment of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which changed the process for amending the sunscreen monograph from a rulemaking process to an order process by enacting § 505G to the FDCA. The CARES Act also established that OTC sunscreen products are deemed to be generally recognized as safe and effective if they are in conformity with (a) the general requirements for nonprescription drugs,

---

[14] The FDA's overview of the "Over-the-Counter (OTC) Drug Monograph Process" provides:

> "In 1972, FDA established the OTC Drug Review to evaluate the safety and effectiveness of hundreds of thousands of OTC drug products that were on the market at that time. Under the OTC Drug Review, FDA regulates certain nonprescription drugs using a system that groups products by therapeutic category. For each category, FDA issues an OTC drug monograph (OTC monograph).
>
> An OTC monograph is a "rule book" for each therapeutic category establishing conditions, such as active ingredients, uses (indications), doses, labeling, and testing, under which an OTC drug is generally recognized as safe and effective (GRASE) and can be marketed without a New Drug Application and FDA pre-market approval."

Over-the-Counter (OTC) Drug Monograph Process, FDA, Sept. 3, 2020, available at https://www.fda.gov/drugs/over-counter-otc-drug-monograph-process (last visited on September 29, 2021).

including the regulations found in 21 C.F.R. parts 201, 250 and 330, and (b) the requirements specified in 21 C.F.R. part 352 as published in the 1999 Sunscreen Drug Products for Over-The-Counter Human Use; Final Monograph, the 1999 Sunscreen Monograph,[15] *See* 21 U.S.C. § 355h(a)(1) and (2) (the "Deemed Order"). If the Products fail to meet such requirements, the Products are misbranded and subject to regulatory action. *See* 21 U.S.C. § 352(e); 21 C.F.R. § 330.1; 21 C.F.R. § 201.66. Additionally, the FDA adopted a 2 ppm standard for benzene that represents the "acceptable amounts of residual solvents in pharmaceuticals for the safety of the patient." *See* ICH Q3C at 3.

### 1. The Products' labeling does not misbrand the Products because benzene is not an ingredient in the Products.

Benzene is neither an active nor inactive ingredient in Plaintiffs' Products. *See* Tobias Decl. at ¶¶ 7.a. and j., and 8, **Attached as Exhibit B**.[16] The FDCA requires active ingredients and inactive ingredients to be included on the label. *See* 21 U.S.C. § 352(e); 21 C.F.R. § 201.66(c). The FDA regulations define "active ingredient" as "any component that is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body of man or other animals." 21 C.F.R. § 210.3(b)(7). "Inactive ingredient" is defined to include any component that is not an active ingredient. 21 C.F.R. § 210.3(b)(8). "Component" is defined as any ingredient intended for use in the manufacture of a drug product, including those that may not appear in such drug product. 21 C.F.R. § 210.3(b)(3). Benzene is not an active or inactive ingredient in the Products. It was never intended for use in the manufacture of the Products and therefore was not

---

[15] 21 C.F.R. 352, as published in the 1999 Sunscreen Drug Products for Over-The-Counter Human Use; Final Monograph (64 FR 27666 at 27687) ("1999 Sunscreen Monograph").

[16] In the context of a 12(b)(1) motion, the Court can look outside the pleadings without converting the motion into a motion for summary judgment. See, e.g., *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

CORE/3006951.0087/171235695.6

listed on the label. Accordingly, the Products are not misbranded or adulterated under the FDCA, as Plaintiffs contend. Rather, even assuming as true Plaintiffs' allegation that certain bottles of the Products may contain trace amounts of a residual manufacturing solvent below the FDA's 2 ppm threshold (an allegation dependent on non-cGMP testing), the FDA does not require, and indeed prohibits, the listing of that solvent as an ingredient on the Product label.

<blockquote>

2. **The Products are in compliance with the FDA standard that allows up to 2 ppm of benzene in the Products.**

</blockquote>

The FDA allows for trace amounts of benzene up to a concentration of 2 ppm as a residual solvent in the production of medical products. Per the FDCA, drugs recognized in the United States Pharmacopoeia ("USP") must follow USP standards, including USP General Chapter 467, Residual Solvents, where applicable. In addition, FDA has adopted through guidance the International Council for Harmonization ("ICH") Guidelines for Residual Solvents ICH Q3C for drug products. "The objective of [Q3C] guidance is to recommend acceptable amounts for residual solvents in pharmaceuticals for the safety of the patient. The guidance recommends use of less toxic solvents and describes levels considered to be **toxicologically acceptable** for some residual solvents." (emphasis added) *See* ICH Q3C at 3. Both General Chapter 467 and ICH Q3C allow up to 2 ppm of benzene as residual solvents in the Products.[17] The Products' active ingredients are required by the FDCA to meet USP standards and, as such, are subject to the 2 ppm standard in General Chapter 467. *Id.* ICH Q3C also includes a 2 ppm standard for benzene as a residual solvent.

---

[17] FDA has recognized the applicability of USP General Chapter 467 and ICH Q3C to OTC monograph products. *See* FDA, Guidance for Industry Residual Solvents in Drug Products Marketed in the United States (2009) at footnote 3. All of the active ingredients in question are subject to USP General Chapter 467.

All of the Banana Boat® Products tested by Valisure had concentration limits of benzene well below 2 ppm, which is the level accepted by the FDA. Accordingly, the Products are not per se adulterated and the Products do not require benzene to be listed on the label.

### 3. Plaintiffs' claims are impliedly preempted.

Even if Plaintiffs' claims were not expressly preempted by the FDCA's labeling and testing provisions, the claims would be impliedly preempted. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-89 (1995). "[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law." *Id.* at 287 (internal citation omitted). Implied or conflict preemption arises when a state-law claim "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or a federal agency acting within the scope of its congressionally delegated authority. *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99, (1984) (citation omitted). The FDA's extensive and exclusive regulation of the Products further demonstrates that Congress left no room for states to supplement the field of FDCA regulations. *See supra*, §§ II.B, II.C. As such, Plaintiffs' claims are impliedly preempted.

### 4. Plaintiffs' claims are barred as private enforcement actions.

Plaintiffs' claims are also preempted to the extent they challenge the Products' safety and efficacy and to the extent they claim the Products are adulterated and misbranded because Plaintiffs do not have a private right to address violations of the FDCA. *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997); 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). The absence of a private right of action to enforce the FDCA when combined with the doctrines of express and implied preemption leave Plaintiffs with only a "narrow gap" through which to escape preemption by the FDCA. *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 237-38 (2d Cir. 2021)

23

(adopting the view of its sister circuits that "express and implied preemption under the FDCA, operating in tandem, have created . . . a narrow gap for pleadings.") (internal quotations omitted) (citing *In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010); *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1327 (11th Cir. 2017). To fit within that narrow gap, "[t]he plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Id.* (internal citations omitted); *see also Norman v. Bayer Corp.*, 2016 WL 4007547, at *2 (D. Conn. July 26, 2016) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001)).

Plaintiffs' claims do not fit within this narrow gap because they depend on the proposition that the Products in question violate Section 351 and 352 of the FDCA. *See* Complaint ¶¶ 39, 72. Plaintiffs also claim the Products are unsafe, a determination subject to the exclusive jurisdiction of the FDA.[18] *See, e.g.*, Complaint ¶¶ 116, 184, 187, 198. Plaintiffs should not be allowed to repackage what are fundamentally private actions to enforce the provisions of the FDCA related to adulteration and misbranding of regulated drugs under the thin guise of state statutory and common law claims.

### 5.     Plaintiffs' claims are subject to the FDA's primary jurisdiction.

Federal law bars Plaintiffs' claims, as they are subject to the primary jurisdiction of the FDA. The primary jurisdiction doctrine ensures the proper working relationship between federal agencies and courts. *See United States. v. W. Pac. R. R. Co.,* 352 U.S. 59, 62 (1956); *Far East Conference v. United States*, 342 U.S. 570, 575 (1952). The doctrine "applies where a claim is

---

[18] Ironically, insofar as Plaintiffs' requested relief would force Defendant to list benzene as an ingredient or include a benzene warning, the outcome Plaintiffs' seek in this litigation is to push Defendant out of compliance with the FDCA, which forbids such labeling. *See, supra*, § II.B.

originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *W. Pac. R. R. Co.*, 352 U.S. at 64. The Second Circuit considers the following factors when deciding whether to apply the doctrine of primary jurisdiction: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006). Each of these factors is present in this case.

First, on May 24, 2021, Valisure LLC filed the Valisure Citizen Petition, to which the FDA is required to respond within 180 days. 21 C.F.R. § 10.30(e). The Valisure Citizen Petition requests that the FDA consider promulgating rules or administrative orders related to the proposed sunscreen rule and the 1999 Sunscreen Monograph; develop industry guidance documents for the analysis of benzene in sunscreen products; review and update the current QC3 guidance that allows for 2 ppm of benzene in the Products; and develop guidance defining the mass of a standard daily total application of sunscreen for daily exposure. *See* Valisure Citizen Petition. On November 19, 2021, the FDA sent an "interim" response to the Valisure Citizen Petition stating that the petition "raises complex issues requiring extensive review and analysis . . . and [the FDA] will respond . . . as soon as [it has] reached a decision . . ." Response to Citizen Petition at 2-3.[19] This Court will ultimately have to rule on the same issues if Plaintiffs' claims proceed past the Motion to Dismiss. If this Court does not dismiss Plaintiffs' Complaint with prejudice for one or more of the reasons

---

[19] The FDA's Response to the Citizen Petition is attached as Exhibit E to the McCurdy Declaration.

set forth in Defendant's Motion to Dismiss and Memorandum in Support, this Court should defer to the FDA's expertise and stay or dismiss Plaintiffs' Complaint until the FDA issues an order addressing the Valisure Citizen Petition.

Second, notwithstanding a response to the Valisure Citizen Petition on benzene, the FDA clearly intends to update its regulation of OTC sunscreen products and any safety and efficacy ruling here might easily conflict with that final sunscreen order. *See* Pub.L. 116-136, Div. A, Title III, § 3854(c), Mar. 27, 2020, 134 Stat. 456. Section 3854 of the CARES Act also required that the Secretary of Health and Human Services revise the Final Administrative Order concerning OTC monograph sunscreen no later than September 27, 2021. *Id*. On September 24, 2021, the FDA issued that Proposed Order permitting a 45-day comment period expiring on November 8, 2021. After reviewing the comments, the FDA then intends to issue a Revised Final Administrative Order. FDA's past, ongoing, and pendant rulemaking in the field of OTC sunscreen labeling supports the proposition that its primary jurisdiction in the area bars Plaintiffs' claims.

Third, as outlined *supra*, §§ II.B and C, the FDA extensively regulates the Products and solely possesses the expertise and power to facilitate uniform resolutions to the Plaintiffs' claims in this case and similar claims filed in numerous other jurisdictions against various manufacturers.

Plaintiffs seek to enforce labeling requirements, warning requirements, standards for residual solvents, and claims based on the safety and efficacy of the Products, all of which fall under the primary jurisdiction of the FDA. *See, supra* §§ II.B and C. Accordingly, this Court should stay or dismiss Plaintiffs' claims if this Court does not dismiss Plaintiffs' Complaint with prejudice for one or more of the reasons set forth herein.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER CONNECTICUT COMMON LAW, THE FDUTPA, THE ILCFA, AND ANY WARRANTY LAW

Plaintiffs' fraud by omission claim (Count 1), breach of warranty claims (Counts 2-4), unjust enrichment claim (Count 5), and FDUTPA and ILCFA claims (Counts 6-10) should be dismissed because they fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, Plaintiffs must plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 555 (Under Rule 8, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level.") (citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 129 (citing *Twombly*, 550 U.S. at 556).

### A.    Plaintiffs fail to meet the Rule 9(b) heightened pleading standard.

Rule 9(b) applies to claims involving fraudulent conduct, which here include not only Plaintiffs' fraud by omissions claim but also their FDUTPA and ILCFA claims (Counts 1, 6-10). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737-39 (7th Cir. 2014) (dismissing fraud claim under ILCFA because plaintiffs' allegations did not meet Rule 9(b) standard in that they did not explain how sales practices at issue were fraudulent, only that they were similar to practices found to be fraudulent in other states); *Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (dismissing fraud claim under FDUTPA because plaintiffs' allegations did not meet Rule 9(b) standard in that they were "not supported by any specific facts.").

Where, as here, the claims are grounded in fraud, Rule 9(b) "[requires] that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Dimuro*, 2013 WL 12080901, at *4 (dismissing common law fraud claim when plaintiffs failed to allege why defendant's statements were fraudulent); *Sancho v. Davidson*, 2006 WL 8448126, at *1 (D. Conn. Mar. 3, 2006; *Romag Fasteners , Inc. v. Fossil, Inc.,* 2011 WL 2446404, at *3 (D. Conn. June 15, 2011). This pleading constraint is meant to provide a defendant with fair notice of the claim and safeguard its reputation from improvident charges of wrongdoing. *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Where the Court can infer no more than a possibility of misconduct from a complaint's factual allegations, it must be dismissed. *U.S. ex rel. Grupp v. DHL Worldwide Exp., Inc.*, 604 F. App'x. 40, 42 (2d Cir. 2015) (dismissing fraud claim when pleadings established only the possibility of misconduct, without adducing any reason to believe fraud actually occurred) (internal citations omitted).

Further, in the context of a fraudulent omission claim, Rule 9(b) obligates Plaintiffs to (1) detail the omissions they consider fraudulent; (2) identify the person obligated to speak; (3) state where and when the omissions were made; and (4) explain why the omissions are fraudulent. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 158, 187 (2d Cir. 2004). Plaintiffs must do more than offer conclusory allegations that Defendant intentionally concealed knowledge—they must articulate the facts that Defendant knew of and yet concealed from Plaintiffs. *Dennany v. Knights of Columbus*, 2011 WL 3490039, at *7-8 (D. Conn. Aug. 10, 2011).

Plaintiffs allegations here fall well short of what is required to satisfy the particularity requirements of Rule 9(b). Most fundamentally, Plaintiffs fail to allege the facts supporting their claim with the necessary level of detail in that they do not allege that they purchased a product containing benzene. Complaint ¶¶ 101, 105, 109. They do not allege that they read the labeling

28

before purchasing the Products, were aware of any other representations made by Defendant pertaining to the Products, or that their purchasing decisions hinged on their understanding of the substances in the Products.

Critically, Plaintiffs do not allege facts to support the claim that Defendant was aware its Products might contain trace amounts of benzene. Rather, they assert only the bare legal conclusion that Defendant knew or "should have known" that benzene was present or was at risk of being present in its Products in trace amounts. Complaint ¶ 136. Allegations that Defendant "should have known" information that it chose to conceal cannot support a fraud by omission claim, which requires omission of a known fact. *Bartone v. Robert L. Day Co., Inc.*, 232 Conn. 527, 533 (1995) (requiring actual awareness, rather than imputed knowledge, of the omitted fact). Plaintiffs fail to allege any particular facts in support of the allegation that Defendant knew its Products might contain trace amounts of benzene. In sum, Plaintiffs have failed to satisfy what Rule 9(b) requires in order to state a fraud by omission claim (Count 1), an FDUTPA claim (Count 6-8), or an ILCFA claim (Counts 9-10).

### B.   Plaintiffs' statutory consumer protection claims fail to meet the reasonable consumer standard.

Plaintiffs' claims under the FDUTPA and ILCFA employ a reasonable consumer standard, where the Court asks whether there is a representation, omission, or practice that is likely to mislead a consumer acting reasonably under the circumstances. *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (FDUTPA); *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 927 (Ill. 2007) (ILCFA). The reasonable consumer standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonably relying consumer. *Zlotnick*, 480 F.3d at 1284 (citing *Millennium Commc'ns, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) (affirming dismissal of FDUTPA claim because

omissions by a credit card promotional company were unlikely to mislead a reasonable consumer); *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 938 (7th Cir. 2001) (must be a "reasonably likelihood of deception" to support ILCFA claim); *see Ebner v. Fresh, Inc.,* 838 F.3d 958, 965 (9th Cir. 2016) (reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.").

Courts routinely reject fraud actions premised on products that contain trace amounts of residual solvents (like benzene) and pesticides within the FDA's tolerance levels under the reasonable consumer standard. *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ("[T]he court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount' deemed tolerable by the FDA," particularly given that (like benzene) "[g]lyphosate [] is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process."); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) ("But a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products."); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *3 (D.N.J. Apr. 19, 2012) (dismissing consumer fraud action for failure to satisfy the reasonable consumer standard when plaintiff's claims were premised on failure to list trans fats in nutrient labeling and the FDA had expressly authorized seller not to list that ingredient in quantities less than 0.5g per serving).

Plaintiffs allege that the Products are deceptive because the Product labels do not list benzene as an ingredient and do not warn that the Products may contain trace amounts of benzene.

Complaint ¶¶ 49, 112. Plaintiffs interpret the listed ingredients to mean that the Products are free from any trace of any other substances or residual solvents such as benzene. *Id*. In other words, Plaintiffs believe that the Products' are possessed of absolute molecular purity and that it is misleading to not list trace amounts of benzene—well below the FDA's 2 ppm standard—as an ingredient that may be in the Products.

As discussed above, benzene is not an active or inactive ingredient in the Products. *See, infra*, § II.C.1. A significant portion of the general consuming public would not believe the Products could never contain trace amounts of a residual substance outside of the listed ingredients, especially when the FDA permits up to 2 ppm of residual solvents such as benzene to be present. Nor would a reasonable consumer believe that the Products would list benzene as an ingredient when the FDA dictates exactly what active and inactive ingredients may be included on the label. It is also implausible that a reasonable consumer would understand the Products to be free of any trace amounts of benzene when the Products are not labeled "benzene free." *See* Tobias Decl. at ¶¶ 9-10, Exhibit B.

Here, 14 of the 19 Banana Boat® bottles tested by Valisure had zero or less than 0.1 ppm of benzene. *See* Valisure Citizen Petition at pp. 13-15 and Att. A. The remaining Banana Boat® bottles tested by Valisure contained less than 2 ppm of benzene. It is implausible that a consumer acting reasonably under the circumstances would likely understand or be misled to believe that the Products are unsafe when they contain levels of benzene *well under* 2 ppm, which is deemed an "acceptable amount" for "safety" by the FDA, ICH 3, or would expect the label to include a warning that the Products may contain less than 2 ppm of benzene when the FDA specifically allows for up to 2 ppm of benzene in the Products. *See supra,* § II.C.2. Further, a reasonable consumer would not understand or be misled to believe that their product is ineffective because 5

31

bottles of the same type of sunscreen contained trace amounts of benzene. Indeed, Plaintiffs have failed to even allege that the .43 ppm of benzene detected in a single bottle of Kids Max Protect & Play™ Sunscreen Spray would render it ineffective, much less the "less than .01 ppm" detected in one bottle of the Protective Dry Oil Sunscreen Spray. Because Plaintiffs claims do not satisfy the reasonable consumer standard, Plaintiffs have failed to state FDUTPA or ILCFA claims upon which relief can be granted.

### C.    Plaintiffs' FDUTPA claims fail because the FDUTPA does not apply to acts or practices specifically permitted by federal law.

Plaintiffs seek to state claims under the FDUTPA for violations of the FDCA and FLDCA (Count 6), unfair acts and trade practices (Count 7), and deceptive conduct (Count 8). However, the FDUTPA states that it does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(a). This safe harbor provision prevents an act or practice from serving as the basis for an FDUTPA claim when that act or practice is specifically permitted under federal law. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021). Plaintiffs argue that Defendant violated the FDUTPA by merchandising allegedly adulterated and misbranded sunscreen products in a deceptive and unfair manner and in violation of the FDCA. Complaint ¶ 181, 184, 196, 198, 208, 209. However, for the reasons explained *supra*, § II.B, Defendant could not have placed a benzene warning on its Products or included benzene in its ingredient list. Furthermore, the FDA permits up to 2 ppm of residual solvents like benzene to be present in finished Products. *See supra*, § II.C.2. As such, the entirety of Defendant's conduct was permitted (and in some instances required) under federal law and consequently falls within the FDUTPA's safe harbor. Because each of the allegedly violative acts or practices alleged by Plaintiffs fall within the FDUTPA's safe harbor, their FDUTPA claims should be dismissed for failure to state a claim upon which relief can be granted. *See Prohias v. AstraZeneca Pharms.,*

*L.P.*, 958 So.2d 1054, 1056 (Fla. Dist. Ct. App. 2007) (finding FDUTPA's safe harbor applied where a drug's labeling was approved by the FDA and thus "specifically permitted" by federal law); *Ezcurra v. Monsanto Corp.*, 2020 WL 5491428, at *3-5 (S.D. Fla. Aug. 7, 2020) (finding FDUTPA's safe harbor applied to misleading labeling claim when the labeling was permitted under federal law); *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 938 (11th Cir. 2013) (finding FDUTPA's safe harbor applied because labels complied with federal regulations); *Savalli v. Gerber Products Co.*, 2016 WL 5390223, at *2-3 (S.D. Fla. Sept. 20, 2016) (finding FDUTPA's safe harbor foreclosed a deceptive labeling claim when labeling complied with the FDCA).

> **D.** **Plaintiffs' breach of express warranty claim fails because Plaintiffs fail to plead the existence of an affirmative representation.**

Plaintiffs' seek to state a claim for breach of express warranty (Count 2) premised on Defendant's alleged failure to comply with written warranties it extended to Plaintiffs concerning the composition and quality of its Products. A plaintiff asserting a claim for breach of express warranty must plead the existence of an express warranty. *Omega Engineering, Inc. v. Eastman Kodak Co.,* 30 F. Supp. 2d 226, 246 (D. Conn. 1998). Under Conn. Gen. Stat. § 42a-2-313, an express warranty is created upon "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" Plaintiffs claim Defendant created two express warranties (1) "by representing that the Product was sunscreen that contained only those active and inactive ingredients listed on the Product's label" and (2) by representing "that the Product is sunscreen used for sun protection, rather than adulterated sunscreen containing—or potentially containing—a dangerous carcinogen." *Id.* Complaint ¶ 144. Plaintiffs do not allege the precise terms of these alleged representations, where they were made, in what manner they were made, or how they became a basis of the bargain.

"An express warranty has been defined as a positive representation of fact which induces a bargain." *Lucas v. Subaru of America, Inc.*, 2005 WL 1155009, at *4 (Conn. Supr. Ct. Apr. 20, 2005) (citing *Albrecht v. Rubinstein*, 135 Conn. 243, 246 (1948)). Plaintiffs' claim fails for the simple reason that they fail to identify where Defendant expressed either of these warranties, the precise terms of these warranties, or how they became the basis of any bargain.[20] Plaintiffs do not allege that Defendant ever affirmatively represented that its Products were possessed of absolute molecular purity (such that only ingredients on the ingredient list were in the product) or could not contain trace amounts of residual solvents produced in the manufacturing process. Plaintiffs do not allege where these affirmative representations were made because those representations were not made, either on the product labeling or in any advertisement. Because Plaintiffs cannot allege where or in what manner Defendant affirmatively represented that its Products *only* contained the ingredients listed on the label and *could not* contain trace amounts of residual solvents like benzene, there is no express warranty to breach. *Philadelphia Indemnity Ins. Co. v. Lennox Industries, Inc.*, 2019 WL 1258918, at *9 (D. Conn. Mar. 18, 2019) (dismissing express warranty claim where plaintiff failed to identify any specific warranty made, the manner in which it was conveyed, nor "any factual allegations from which the court could reasonably infer these prerequisites of a breach of express warranty theory."); *Lake v. Kardjian*, 874 N.Y.S.2d 751, 755 (N.Y. Sup. Ct. 2008) (dismissing express warranty claim because plaintiff did not identify "any specific statements by [the defendant] which would constitute an express warranty[.]"); *Fisher v. APP Pharmaceuticals, LLC*, 783 F. Supp. 2d 424, 431 (S.D.N.Y. 2011) (dismissing express warranty claim based on generic allegation that defendants warranted to plaintiffs that an unsafe

---

[20] To the extent Plaintiffs imply that the ingredient label represents itself to be exclusive of any other substance, Defendant notes that nowhere on the label (attached as Exhibit A to the Tobias Declaration) does Defendant affirmatively indicate that *only* substances on that list are in the product. An express warranty claim must rest on a *positive* representation, not on a mere implication or assumption.

34

product was "safe for use as intended" because plaintiff failed to allege "where, when or how the alleged promise or statement" constituting the warranty was made).

The facts of this case favorably compare to *Fraser v. Wyeth*, 857 F. Supp. 2d 244, 257-58 (D. Conn. 2012). In *Fraser*, plaintiff claimed that a drug manufacturer's statement that most scientific studies showed its drug did not increase the risk of breast cancer created an express warranty that the drug was free of harmful side effects. The district court rejected the claim because "a drug manufacturer's representation in advertising or a warning label that a product is safe or effective, or an advertisement or warning label that does not adequately highlight a particular known or knowable risk does not create an express warranty in the absence of a guarantee that the particular product is free from all harmful side effects." *Id.* Here, to the extent that Plaintiffs' claim boils down to the supposition that Defendant generically affirmed that its sunscreen was safe and effective, such a claim *still* would not create an express warranty "in the absence of a guarantee that the particular product is free from all harmful side effects." *See also Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 428 (2d Cir. 1969) ("On the question of breach of express warranty, we need say only that defendant did not represent either (1) that its drugs were free from all harmful side effects or (2) that its drugs were absolutely harmless. Since there were no such express representations, Judge McLean was correct in refusing to charge the jury on breach of express warranty."). Because Plaintiffs cannot point to an any affirmative representation made by Defendant that its Products "contained only those active ingredients listed on the Product's label" or that the Products could not potentially contain trace residual solvents like benzene, there is no express warranty, and the breach of express warranty claim should be dismissed for failure to state a claim upon which relief can be granted.

   **E.   Plaintiffs' breach of implied warranty claim fails because Plaintiffs fail to allege privity.**

Plaintiffs seek to state a breach of implied warranty claim (Count 3) premised on the allegation that Defendant "impliedly warranted that the Product (i) would not contain elevated levels of benzene and (ii) is generally recognized as safe for human use" and breached that warranty because the Product potentially contained trace amounts of benzene. Complaint ¶ 148-149. "Connecticut law requires privity between the plaintiff and defendant when an implied warranties action does not allege personal injury." *Davenport Assoc., Inc. v. L. Suzio Concrete Co.*, 2020 WL 8265399, at *4 (Conn. Supr. Ct. Dec. 23, 2020) (citing *Hamon v. Digliani*, 148 Conn. 710, 712 (1961)). Plaintiffs do not allege personal injury in this action, and thus a breach of implied warranty claim requires privity between themselves and Defendant.

Plaintiffs' own Complaint destroys any possibility of privity between themselves and Defendant. Plaintiffs allege they purchased their Products from an unnamed retailer, Amazon, and Walgreens. Complaint ¶ 101, 105, 109. None of the Plaintiffs purchased their Products directly from Defendant so as to create contractual privity between the two. In the absence of privity or any allegation of personal injury, Plaintiffs cannot maintain an implied warranty action against Defendant. *Source One Fin. Corp. v. Rd. Ready Used Cars, Inc.,* 2014 WL 1013121, at *7 (Conn. Supr. Ct. Feb. 14, 2014) (dismissing implied warranty claim because plaintiff did not allege privity between itself and defendant); *United Technologies Corp. v. Saren Eng'g, Inc.*, 2002 WL 31319598, at *4 (Conn. Supr. Ct. Sept. 25, 2002) (same); *Kahn v. Volkswagen of America, Inc.*, 2008 WL 590469, at *9 (Conn. Supr. Ct. Feb. 13, 2008) (same). Consequently, Plaintiff has failed to state a breach of implied warranty claim upon which relief can be granted.

### F. Plaintiffs' Magnuson-Moss Warranty Act claim fails because there is no underlying breach of warranty claim.

Plaintiffs seek to state a claim for violations of the Magnuson-Moss Warranty Act (Count 4) premised on Defendant's alleged failure to comply with its alleged express written warranty

36

that "the product consisted of the active and inactive ingredients on the Product labels." Complaint ¶ 161. Plaintiffs allege Defendant breached that warranty "by selling consumers Product that contains—or risks containing—benzene." Complaint ¶ 162.

It is well-established that "the Magnuson-Moss Warranty Act does not itself create implied warranties." *Kahn v. Volkswagen of America, Inc.*, 2008 WL 590469, at *7 (Conn. Supr. Ct. Feb. 13, 2008). Rather, it provides a federal cause of action for breach of a pre-existing and enforceable warranty. 15 U.S.C. § 2310(d)(1). The existence of such a warranty is governed by state law. *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 249 (2d Cir.1986); *Napoli-Bosse v. General Motors LLC*, 543 F. Supp. 3d 536, 547 (D. Conn. 2020) ("Finally, claims under the Magnuson-Moss Act stand or fall with the express and implied warranty claims under state law.") (internal citations and quotations omitted).

The viability of Plaintiffs' Magnuson-Moss Warranty Act claim, then, rests on their state-law breach of express warranty claim, wherein it is alleged that Defendant represented that its Products (1) did not contain in any amount any substance not listed on the ingredient list; and (2) did not potentially the residual solvent benzene in any amount. Complaint ¶ 144. For the reasons explained *supra*, § III.D, the breach of express warranty claim does not state a claim upon which relief can be granted. As such, there is no underlying breach of any state warranty law to support Plaintiffs' Magnuson-Moss Warranty Act claim. As a result, this claim should be dismissed.

### G. Plaintiffs' unjust enrichment claim fails because there was nothing unjust about the transaction, and Plaintiffs fail to allege a direct conferral of benefits on Defendant.

Plaintiffs seek to state a claim for unjust enrichment premised on the allegation that Defendant received a benefit (money in the amount of the purchase price of the Products) that was conferred upon it by Plaintiffs in exchange for the purchased Products, and that it would be unjust to allow Defendant to retain that benefit because the purchased Products were unsafe and illegal

to place on the market, or at least deceptively marketed in that they did not disclose the potential presence of trace amounts of benzene. Complaint ¶¶ 166-168. "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006).

Plaintiffs essentially allege they did not receive the benefit of their bargain because the Products they purchased might have contained trace amounts of benzene and as such were adulterated or at least misbranded. For the reasons explained *supra*, Plaintiffs have simply not pled plausible facts establishing that they did not receive the benefit of their bargain or that Defendant was unjustly enriched at their expense. First, the FDA permits up to 2 ppm of residual solvents like benzene to be present in OTC sunscreen products like the ones Plaintiffs purchased, a fact that is fatal to any implication that the Products were unsafe or unfit for use. *See* § II.C.2. Second, Defendant's labeling of the Products complied with FDA regulations, a fact that is similarly fatal to any claim that Defendant engaged in a deception to obtain money from Plaintiffs. *Id.* Third, Plaintiffs have pled no facts establishing that the Products they purchased, used as intended, were not effective at protecting their skin from the sun's harmful rays. At bottom, Plaintiffs paid the market price for an effective and safe OTC drug product that was manufactured and marketed in compliance with applicable FDA regulations. Because there was nothing unjust about this transaction, Plaintiffs' unjust enrichment claim fails.

Aside from the fact that Plaintiffs have suffered no injustice, this claim also fails because Plaintiffs fail to allege that they conferred a benefit directly to Defendant. Plaintiffs' Complaint makes clear that the benefits in question (the money used to purchase the Products) were conferred to Walgreens, Amazon, and an unnamed retailer. Complaint ¶¶ 101, 105, 109. Connecticut courts

have been clear that an unjust enrichment claim requires a benefit to be conferred *directly* to the Defendant. *Parker v. Colgate-Palmolive Co.*, 2003 WL 22205061, at *2 (Conn. Supr. Ct. 2003) (dismissing unjust enrichment claim in product liability case because there was no allegation that plaintiff paid money directly to defendant); *Granito v. IBM*, 34 Conn. L. Rptr. 485 (Conn. Supr. Ct. 2003) (dismissing unjust enrichment claim in product liability case because "Absent the conferring of a benefit by the plaintiff directly, no action for unjust enrichment by him is valid."); *Layton v. Lester*, 2011 WL 522887, at *2 (Conn Supr. Ct. 2011) ("To satisfy the first element of an unjust enrichment claim, the benefit to the defendant must be conferred by the plaintiff directly."). Although the direct-conferral rule has been disregarded by Connecticut courts in the context of a constructive trust, *see Town of New Hartford v. Connecticut Resources Recovery Authority*, 291 Conn. 433, 467-68 (2009), it remains good law in the consumer protection context. Because Plaintiffs fail to allege that they directly conferred any benefit to Defendant, they have not stated an unjust enrichment claim upon which relief can be granted.

## IV.   PLAINTIFFS' REQUEST FOR RESTITUTION FAILS BECAUSE THEY DO NOT LACK AN ADEQUATE REMEDY AT LAW.

The Court should dismiss Plaintiffs' request for restitution because there is an adequate remedy at law in the form of damages. Complaint Prayer for Relief ¶ D. Equitable remedies are not available where there is an adequate legal remedy. *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 661 (2d Cir. 1997). In this case, Plaintiffs have requested restitution, presumably in the form of a refund of the purchase price of their Products, since this is how they measure damages. Complaint ¶¶ 188, 202, 211, 229, 245. The remedies of restitution and damages are different in form but would be identical in result, and thus one is an adequate substitute for the other. Because the legal remedy of damages is available under each of Plaintiffs' other claims, restitution is unavailable. Fla. St. § 501.211(2) (authorizing actual damages for violations of the

CORE/3006951.0087/171235695.6

FDUTPA); 815 ILCS 505/10a (authorizing actual damages for violations of the ILCFA); *Kilduff v. Adams, Inc.*, 219 Conn. 314, 323 (1991) (authorizing award of consequential damages for fraud); *Gibson v. Capano*, 241 Conn. 725, 730 (1997) (authorizing award of consequential damages for breach of warranty);

## **<u>CONCLUSION</u>**

The Court should dismiss this action with prejudice. First, Plaintiffs lack Article III standing because they have not alleged an injury-in-fact and also lack Article III standing for injunctive relief. Second, all of Plaintiffs' claims are preempted by the FDCA and subject to the FDA's primary jurisdiction. Third, Plaintiffs have not stated any claims upon which relief can be granted because (1) they have failed to meet the Rule 9(b) heightened pleading requirement; (2) they have not pled facts that meet the reasonable consumer standard necessary to support their FDUTPA and ILCFA claims; (3) their FDUTPA claims are precluded under that law's safe harbor provision; (4) they have not pled the existence of an affirmative representation to support their breach of express warranty claim; (5) they have not pled privity between themselves and Defendant to support their implied warranty claim; (6) they have not pled facts that support their Magnuson-Moss Warranty Act claim; and (7) they have not pled facts that support their unjust enrichment claim because they received the benefit of their bargain and did not directly confer a benefit to Defendant. Finally, Plaintiffs are not entitled to the remedy of restitution because they have failed to allege that they lack an adequate remedy at law. All of Plaintiffs' claims should be dismissed with prejudice.

Dated:  December 3, 2021

Respectfully submitted,

By: */s/ Megan McCurdy*

STINSON LLP

John W. Moticka (admitted *pro hac vice*)
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105-1821
Telephone: (314) 863-0800
Facsimile: (314) 863-9388
john.moticka@stinson.com

Megan McCurdy (*admitted pro hac vice)*
Ashley M. Crisafulli (*admitted pro hac vice*)
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
megan.mccurdy@stinson.com
ashley.crisafulli@stinson.com

DISERIO MARTIN O'CONNOR &
CASTIGLIONI, LLP

Jonathan P. Whitcomb (ct15014)
jwhitcomb@dmoc.com
Jonathan J. Kelson (ct26755)
jkelson@dmoc.com
Christina Volpe (ct30647)
cvolpe@dmoc.com
1010 Washington Blvd., Suite 800
Stamford, Connecticut 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321

**ATTORNEYS FOR DEFENDANT**

CORE/3006951.0087/171235695.6

## CERTIFICATE OF SERVICE

I hereby certify that on this December 3, 2021, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

By:   */s/ Megan McCurdy*

ATTORNEY FOR DEFENDANT

42