## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRYAN CLINGER, MONICA BARBA, and HEATHER RUDY, on behalf of themselves and all other similarly situated, | Case No. 3:21-cv-01040 (JAM) |
| Plaintiffs, | Hon. Judge Jeffrey A. Meyer |
| v. | |
| EDGEWELL PERSONAL CARE BRANDS, LLC, a Delaware Limited Liability Company, | |
| Defendant. | |
| LUIS CHABLA and JESSICA BARTON, individually on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-01579 (JAM) |
| Plaintiffs, | Hon. Jeffrey A. Meyer |
| v. | |
| EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, and SUN PHARMACEUTICALS, LLC, | |
| Defendants. | |
| LISA ZAYAS, CATALINA OCAMPO, DEBORAH JEAN, and SEBE ALGOFI, Individually and on Behalf of All Others Similarly Situated | Case No. 3:21-cv-01596 (JAM) |
| Plaintiffs, | Hon. Jeffrey A. Meyer |
| v. | |
| EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, and EDGEWELL PERSONAL CARE, LLC, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION AND APPOINTMENT OF INTERIM CO-LEAD AND LIAISON COUNSEL

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 3

    A.   The Related Actions Should Be Consolidated ........................................ 3

    B.   The Co-Lead Team Is Best Positioned to Represent the Interests of the Class ...... 4

        1.   Rule 23(g)(3) Authorizes the Court to Appoint Interim Co-Lead Counsel to Act on Behalf of the Class Before Class Certification ............ 4

        2.   Appointing the Co-Lead Team as Interim Co-Lead Counsel Is in the Best Interest of the Class ............................................................. 5

            a.   The Co-Lead Team Is Uniquely Qualified to Fairly and Adequately Represent the Interests of the Class as Interim Co-Lead Counsel Pursuant to Fed. R. Civ. P. 23(g) ..................... 5

            b.   Rule 23(g)(1)(A)(i): The Co-Lead Team Performed Extensive Work in Developing the Class's Claims and the Allegations Supporting the Claims in the Related Actions .............................. 5

            c.   Rule 23(g)(1)(A)(ii) and (iii): The Co-Lead Team Possesses Unparalleled Experience Litigating Consumer Protection Cases and Extensive Knowledge of the Applicable Laws ...................... 6

            d.   Rule 23(g)(1)(A)(iv): The Co-Lead Team Will Commit More Than Ample Resources to Representing the Class ...................... 18

        3.   The Rule 23(g)(1)(B) Discretionary Factors Also Favor the Co-Lead Team ................................................................................................. 18

   III.   CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Breakwater Trading LLC v. JPMorgan Chase & Co.*,
   No. 20 CIV. 3515, 2020 WL 5992344 (S.D.N.Y. Oct. 9, 2020) ...............................................4

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...................................................................................................3

*Naula v. Rite Aid of New York*,
   No. 08 CIV. 11364, 2010 WL 2399364 (S.D.N.Y. Mar. 23, 2010) ..........................................3

**Statutes, Rules, and Regulations**

Federal Food, Drug, and Cosmetics Act,
   21 U.S.C. §301....................................................................................................................6

Federal Rules of Civil Procedure
   Rule 23(g) ............................................................................................... *passim*
   Rule 42(a).......................................................................................................1, 3

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004)
   §10.123...............................................................................................................1
   §10.22.................................................................................................................1
   §11.631...............................................................................................................1
   §21.11.................................................................................................................4

9A WRIGHT & MILLER, FED. PRAC. & PROC. CIV. (3d ed.)
   §2382.................................................................................................................3

Plaintiffs Bryan Clinger, Monica Barba, Heather Rudy, Luis Chabla, Jessica Barton, Lisa Zayas, Catalina Ocampo, Deborah Jean, and Sebe Algofi ("Plaintiffs") respectfully submit this memorandum of law in support of their motion  to consolidate each of the three above captioned cases ("Related Actions")[1] pursuant to Federal Rule of Civil Procedure ("Rule") 42(a) and to appoint Milstein Jackson Fairchild & Wade, LLP ("Milstein"), Levin Sedran & Berman, LLC ("LSB"), and the Shub Law Firm LLC ("Shub Law," and collectively with Milstein and LSB, the "Co-Lead Team") as interim co-lead counsel and Scott+Scott Attorneys at Law LLP ("Scott+Scott") as liaison counsel pursuant to Rule 23(g) and consistent with the MANUAL FOR COMPLEX LITIGATION §§10.123, 10.22, and 11.631 (4th ed. 2004) ("MCL").

## I.    INTRODUCTION

Scott+Scott, with Milstein, filed the first of the three Related Actions on July 28, 2021. Subsequently, Scott+Scott, with Milstein, filed an amended complaint on November 12, 2021. Two additional actions were filed on November 29, 2021, and December 1, 2021.  All three Related Actions are pending before this Court.  Each of the Related Actions alleges that Edgewell's[2] Banana Boat line of sunscreen (the "Product") is contaminated with benzene, a known carcinogen, and thus, is adulterated, misbranded, and/or constitutes an unapproved new drug in violation of federal and state law.  *See, e.g.*, *Clinger*, ECF No. 40.  With overlapping facts and classes and common questions of law, consolidation pursuant to Rule 42(a) is appropriate.

---

[1]    The "Related Actions" refer to: (1) *Bryan Clinger v. Edgewell Personal Care Brands, LLC*, No. 21 Civ. 01040 (D. Conn.) ("*Clinger*"); (2) *Luis Chabla v. Edgewell Personal Care Brands, LLC*, No. 21 Civ. 01579 (D. Conn.) ("*Chabla*"); and (3) *Lisa Zayas v. Edgewell Personal Care Co.*, No. 21 Civ. 01596 (D. Conn.) ("*Zayas*"). .

[2]    "Edgewell" includes Defendants Edgewell Personal Care Company, Edgewell Personal Brands, LLC, Edgewell Personal Care, LLC, and Sun Pharmaceuticals, LLC.

The Co-Lead Team, which has extensively researched and investigated Edgewell's misconduct, seeks to continue their early leadership of this litigation and respectfully moves for appointment as interim co-lead counsel for the putative class.  The Co-Lead Team satisfies the factors set forth in Rule 23(g)(1)(A), demonstrating that the Co-Lead Team is qualified to serve as interim co-lead counsel.

All the other law firms that are participating in the Related Actions support the Co-Lead Team's appointment as interim co-lead counsel and Scott+Scott as liaison counsel.  They include Carney Bates & Pulliam, PLLC ("Carney Bates"), Casey Law Firm, LLC ("Casey Law"), The Sultzer Law Group P.C. ("Sultzer"), Peiffer Wolf Carr Kane & Conway, LLP ("Peiffer Wolf"), Mason Leitz & Klinger LLP ("Mason Lietz"), Consumer Protection Legal, LLC ("Consumer Protection Legal"), Freed Kanner London & Millen LLC ("Freed Kanner"), Kohn, Swift & Graf, P.C. ("Kohn Swift"), and Lynch Carpenter LLP ("Lynch Carpenter").  Each of these law firms independently has the litigation track record and necessary resources that would enable them to submit compelling leadership applications of their own.  Instead, however, these firms have elected to support the Co-Lead Team's application in deference to Milstein, LSB, and Shub Law's early leadership in this litigation and their unique experience prosecuting similar consumer protection actions involving claims of mislabeled and contaminated products.  If appointed interim co-lead counsel, the Co-Lead Team would be able to draw upon the skills and resources of these pre-designated firms as necessary, while retaining full control and oversight of the litigation.  *See* [Proposed] Order, attached as Exhibit A to the Declaration of Erin Green Comite ("Comite Decl."), filed contemporaneously herewith.

For the reasons discussed more fully herein, Plaintiffs respectfully request that the Court consolidate the Related Actions and appoint Milstein, LSB and Shub Law as interim co-lead counsel and appoint Scott+Scott as liaison counsel.

## II.     ARGUMENT

### A.        The Related Actions Should Be Consolidated

Rule 42(a) provides that the Court may consolidate actions that "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  Consolidation is a "desirable administrative technique," 9A Wright & Miller, FED. PRAC. & PROC. CIV. §2382 (3d ed.), and trial courts traditionally "have taken the view that considerations of judicial economy favor consolidation." *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).  Whether to grant a request for consolidation is committed to the Court's discretion.  *Id.*  In exercising that discretion, the Court weighs "considerations of convenience, judicial economy, and cost reduction while ensuring that the 'paramount concern for a fair and impartial trial' is honored.  *Naula v. Rite Aid of N.Y.*, No. 08 CIV. 11364, 2010 WL 2399364, at *4 (S.D.N.Y. Mar. 23, 2010) (quoting *Johnson*, 899 F.2d at 1285).

Consolidation is appropriate here because the Related Actions present identical questions of fact and law.  Plaintiffs' complaints are virtually identical to each other, and all were filed in the wake of test results released by Valisure,[3] which revealed widespread benzene contamination of Edgewell's Products.  All Plaintiffs in the Related Actions bring claims arising out of the same factual claims.  *See generally Clinger*, ECF No. 40; *Chabla*, ECF No. 1; and *Zayas*, ECF No. 1. In addition, all Plaintiffs in the Related Actions seek to represent the same proposed class of

---

[3]      Valisure is an analytical pharmacy, patient advocacy and consumer protection organization.

consumers residing in the United States, who purchased the Products anywhere in the United States. *See Clinger*, ECF No. 40 at ¶119; *Chabla*, ECF No. 1 at ¶60; and *Zayas*, ECF No. 1 at ¶38.

Therefore, consolidation of the Related Actions will promote judicial economy and result in a substantial saving of time and effort by the parties and this Court. Consolidating the Related Actions will allow for unified discovery, motion practice, and trial, promoting judicial convenience and economy while reducing costs for both parties. The Related Actions are especially well-suited for consolidation because they remain in their earliest phases. Accordingly, Plaintiffs respectfully request that the Court enter the [Proposed] Order filed herewith, which would consolidate the Related Actions (and any subsequently filed actions) for all purposes.

**B.      The Co-Lead Team Is Best Positioned to Represent the Interests of the Class**

**1.      Rule 23(g)(3) Authorizes the Court to Appoint Interim Co-Lead Counsel to Act on Behalf of the Class Before Class Certification**

The Court may designate interim counsel to act on behalf of a putative class before a class certification decision. Fed. R. Civ. P. 23(g)(3). Designation of interim counsel "'clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'" *Breakwater Trading LLC v. JPMorgan Chase & Co.*, No. 20 CIV. 3515, 2020 WL 5992344, at *2 (S.D.N.Y. Oct. 9, 2020) (quoting MCL §21.11). In doing so, the Court considers: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). None of these considerations are individually determinative; rather, they provide a framework under which the Court can analyze and determine whether counsel can fairly and

adequately represent the class.  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  Here, the examination of each factor demonstrates that Milstein, LSB, and Shub Law are the applicants best able to represent the interests of the class.

### 2. Appointing the Co-Lead Team as Interim Co-Lead Counsel and Scott+Scott as Liaison Counsel Is in the Best Interest of the Class

#### a. The Co-Lead Team Is Uniquely Qualified to Fairly and Adequately Represent the Interests of the Class as Interim Co-Lead Counsel Pursuant to Rule 23(g)

The Co-Lead Team has an extensive history of successfully certifying classes of consumers and recovering substantial recoveries on their behalf.  Not only are Milstein, LSB, and Shub Law attorneys highly experienced in consumer protection laws and litigation generally, they have been appointed to leadership roles in cases specifically related to mislabeled products where the core issues are whether the products contained only the listed or represented ingredients and not a toxin, contaminant, or unintended byproducts.  Milstein and LSB are sizeable firms with significant human and financial resources to invest for the benefit of the class, and all three firms have substantial experience in working collaboratively and efficiently with co-counsel.  For these reasons, as described below, each prong of Rule 23(g) weighs overwhelmingly in favor of appointing the Co-Lead Team as interim co-lead counsel and Scott+Scott as liaison counsel.

#### b. Rule 23(g)(1)(A)(i): The Co-Lead Team Performed Extensive Work in Developing the Class's Claims and the Allegations Supporting the Claims in the Related Actions

The Co-Lead Team investigated their cases in these Related Actions alleging Edgewell's Product is contaminated with benzene, a known carcinogen, rendering it worthless as an adulterated, misbranded, and/or unapproved new drug in violation of Federal Food, Drug, and Cosmetics Act, 21 U.S.C. §301, *et seq.* ("FFDCA") and its implementing regulations.  Before

filing, the Co-Lead Team performed a substantial independent investigation of Edgewell's misconduct and the relevant federal and state consumer protection statutes as well as the FFDCA. As part of their investigation, the Co-Lead Team: (a) conducted detailed factual research, including an analysis of news reports, the testing results of sunscreens by Valisure, and other publicly available facts and data concerning the benzene contamination of Edgewell's Products; (b) consulted with health experts that specialize in the negative health consequences of benzene exposure; (c) consulted with consumers who purchased the Products; and (d) consulted decades' worth of legal research developed in the numerous other successful consumer protection class actions Milstein, LSB, and Shub Law have prosecuted, including cases involving unfair or deceptive practices by manufacturers of consumer products.

The Co-Lead Team continues to build upon its extensive pre-suit investigation and has already begun to consider a consolidated amended class action complaint in the event the Co-Lead Team is appointed interim co-lead counsel. This will avoid any unnecessary delay and ensure that the class benefits from this detailed, ongoing investigation.

### c. Rule 23(g)(1)(A)(ii) and (iii): The Co-Lead Team Possesses Unparalleled Experience Litigating Consumer Protection Cases and Extensive Knowledge of the Applicable Laws

The Co-Lead Team's unrivaled experience in this area of law optimally positions them to achieve the best possible results for class members in the Related Actions. Collectively, Milstein, LSB, and Shub Law have successfully prosecuted large and complex consumer protection class actions involving contamination of products with a toxin or unintended byproduct. Milstein, LSB, and Shub Law have decades of experience litigating cases on behalf of consumers injured as a result of the unfair and deceptive practices of product manufacturers. All aspects of the Related Actions, including the substantive laws and conduct alleged, have already been encountered by the

6

Co-Lead Team, and at each stage of litigation the Co-Lead Team has proven its skill at advocating for their clients and the class members they represent.

**Milstein:** Milstein has extensive experience in class action and complex litigation, focusing on representing plaintiffs in complex mass actions and class actions against the manufacturers of consumer products and providers of consumer services in a vast array of matters throughout the country.[4]   Milstein and the firm's lead attorney on the case, Gillian Wade, have extensive experience representing parties in cases involving consumer deception and unfair, unlawful, and fraudulent business practices, often in connection with the labeling of potentially dangerous products.  Some of the matters in which Ms. Wade has been appointed as lead or co-lead class counsel include: *Imani Whitfield v. Yes To, Inc.*, No. 2:20-cv-00763 (C.D. Cal.); *Elkies v. Johnson & Johnson Servs., Inc.*, No. 2:17-CV-7320 (C.D. Cal.); *In re Dollar General Motor Corp. Motor Oil Mktg. & Sales Practices Litig.*, MDL No. 2709 (W.D. Mo.); *Perez v. Pub. Storage*,  No. BC611584 (Cal. Super. Ct. – Cty. of Los Angeles); *In re Wells Fargo Bank Wage & Hour Cases*, No. JCCP4702 (Cal. Super. Ct. – Cty. of Los Angeles); *Barba v. Shire U.S. Inc.*, No. 1:13-cv-21158 (S.D. Fla.); *Eggnatz v. The Kashi Co.*, No. 1:12-CV-21678 (S.D. Fla.); *Toney v. Just Fabulous*, No. BC533943 (Cal. Super. Ct. – Cty. of Los Angeles); *Paul v. Wine.com*, No. CGC-13-534734 (Cal. Super. Ct. – Cty. of San Francisco); *Arreguin v. Telebrands Corp.* Case No. CIVRS1307798 (Cal. Super Ct. – Cty. of San Bernardino); *McCrary v. The Elations Co., LLC*, No. 5:13-cv-00242 (C.D. Cal.); *Saenz v. SEIU United Healthcare Workers-West*, No. RG09478973 (Cal. Super. Ct. – Cty. of Alameda); *Smith  v. Intuit, Inc.*, 5:12-cv-00222 (N.D. Cal.); *In re Budeprion XL and Mktg. & Sales Practices Litig.*, MDL No. 2107 (E.D. Pa.); *Keller v. Gaspari Nutrition, Inc.*, No. 2:11-cv-06158 (C.D. Cal.);

---

[4]     *See* firm résumés of Milstein, LSB, and Shub Law attached as Exhibits B, C, and D, respectively, to the Comite Decl.

*Shaffer v. Cont'l Cas. Co.*, No. 2:06-cv-2235 (C.D. Cal.); *Weeks v. Kellogg Co.*, No. 2:09-cv-08102 (C.D. Cal.); *Thompson v. Biotab Nutraceuticals, Inc.*, No. BC414808 (Cal. Super. Ct. – Cty. of Los Angeles); *Pabst v. Genesco, Inc.*, 3:11-cv-01592 (N.D. Cal.); *Heath v. Cty. of San Bernardino*, 5:06-CV-00411 (C.D. Cal.); *Solomon v. Ramona's Food Prods.*, No. BC463914 (Cal. Super. Ct. – Cty. of Los Angeles); *Wike v. HCG Platinum, LLC*, No. BC451080 (Cal. Super. Ct. – Cty. of Los Angeles); *Litwin v. iRenew*, No. BC447114 (Cal. Super. Ct. – Cty. of Los Angeles); and *Fallon v. ET Browne Drug Corp.*, BC411117 (Cal. Super. Ct. – Cty. of Los Angeles).  Ms. Wade has also been appointed to the plaintiffs' Executive Committees in several federal class actions centralized by the Judicial Panel on Multidistrict Litigation, including *In re Nutramax Cosamin Mktg. & Sales Practices Litig.*, MDL No. 2489 (D. Md.); *In re Pom Wonderful Mktg. & Sales Practices Litig.*, MDL No. 2199 (C.D. Cal.); *In re Budeprion XL Mktg. & Sales Practices Litig.*, MDL No. 2107 (E.D. Pa.); *In re Liberty Refund Anticipation Loan Litig.*, MDL No. 2334 (N.D. Ill.), and *In re H&R Block Refund Anticipation Litig.*, MDL No. 2373 (N.D. Ill.).

Ms. Wade also is a frequent lecturer on class action practice, including serving as the plaintiff-side panelist along with judges and neutrals in a nationwide JAMS Webinar entitled, "Cutting Edge Issues In Mediating and Arbitrating Consumer Class/Mass Action Claims," in 2021, co-chairing the 2019 and 2020 Bridgeport Consumer Class Action Litigation and Management conferences, serving as plaintiff-side panelist for "Does Compliance Matter? Class Actions Over Regulated Labels," at the 2014 ABA Section of Antitrust Law Spring Meeting in Washington, D.C., presenting at the 2015, 2016, 2017 2018, 2019 (co-chair), and 2020 (co-chair) Bridgeport Consumer Class Action Litigation & Management Conferences in Los Angeles, Orange County and virtually, the 2019 and 2020 Mass Torts Made Perfect (Class Action Track) conference, and the 2017 and 2020 CLE International Food Law Conference, where she presented plaintiff

perspectives on class action procedural issues affecting food litigation.  In 2019, Ms. Wade accepted an invitation to join the Outside Advisory Board of the UCLA Resnick Center for Food & Law Policy and is an executive member of the Cambridge Food Fraud Forum.  She has guest lectured at UCLA Law School and Pepperdine Caruso School of Law about class action litigation and was selected to be on the 2018-19 executive committee for The Class Action Trial Lawyers Association – Top 25.  In 2020, Ms. Wade participated as a plaintiff-side moderator in the Complex Courts Virtual Symposium, among a panel of California complex court judges on the topic, "The Lifecycle, Pitfalls and Best Practices of Class Actions."

**LSB:** LSB is one of the nation's preeminent and most experienced plaintiff class-action firms with extensive experience in consumer protection, products liability, antitrust, securities, and other complex class-action litigation.  LSB's stock-and-trade is the litigation of technically complex litigation such as this one.  LSB has been appointed lead counsel or to other leadership positions in hundreds of cases, including more than 40 MDLs, and is presently serving or has served in such positions in several of the largest and technically complex class actions nationwide. *See, e.g.*, *In re Chinese-Manufactured Drywall Product Liab. Litig.*, MDL No. 2047 (E.D. La.) ("*Drywall*") (Lead Counsel); *In re Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323 (E.D. Pa.) (Plaintiffs Steering Committee and Subclass Counsel for Settlement); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179 (E.D. La.) (Special Counsel to the Plaintiffs' Fee and Cost Committee); *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D. N.Y.) (Co-Lead Counsel); *In re Wells Fargo Ins. Mktg. Sales Practices Litig.*, MDL No. 2797 (C.D. Cal.) (Plaintiffs' Executive Committee); and *In re Apple Inc. Device Performance Litig.*, MDL No. 2827 (N.D. Cal.) (Plaintiffs' Executive Committee); *see also* LSB's firm résumé attached as Exhibit C to the Comite Decl.  LSB's firm philosophy from

leading and prosecuting complex class actions for over three decades is to efficiently, vigorously and zealously prosecute the action on behalf of their clients and the class.  They assemble a team and become well-versed in the facts of the case, law, and science.  LSB is prepared to do the same in this case.

As a result of its success representing consumers in complex litigation throughout the country, LSB has been distinguished as a Tier I class-action firm in the Best Law Firms rankings published in the U.S. News and World Report Best Law Firms.  LSB was also ranked Tier I for personal injury and mass tort firms.  LSB was named to *The National Law Journal's* insurance list of America's Elite Trial Lawyers in 2014.  Members of LSB are listed in the LEGAL 500, LAW DRAGON 500, Martindale Hubbell's Directory of Preeminent Attorneys, and have been named the Best Lawyers in America.  *See generally*, Comite Decl., Ex. C.    LSB pioneered the use of class actions and mass actions in the United States and its work has resulted in numerous record-breaking recoveries over the past four decades. Just for example:

- *In re: Asbestos School Litig.*, No. 83-0263 (E.D. Pa.) (LSB as member of Executive Committee and Lead Trial Counsel obtained a certification of a nationwide class and settlement on behalf of school districts);

- *In re: Diet Drug Product Liab. Litig.*, MDL No. 1203 (E.D. Pa.) (LSB as Co-Lead Counsel obtained a $6.75 billion-dollar settlement on behalf of consumers who ingested Fen Phen); [5]

- *In re: The Exxon Valdez*, No. 89-00095 (D. Alaska) (LSB as a member of the Trial and Discovery Committee represented fishermen, native corporations, native villages, native claims and business claims in this mass tort. After a jury trial, plaintiffs obtained a judgment of $5 billion in punitive damages – at the time the largest punitive damage verdict in U.S. history.  Later reduced to $507.5 million by the U.S. Supreme Court);

- *In re: Chinese-Manufactured Drywall Product Liab. Litig.*, MDL No. 2047 (E.D. La.) (LSB as Lead Counsel obtained inter-related settlements involving various

---

[5]    That prolix settlement has received favorable comments by academia. *See* Nagareda, R., "Autonomy, Peace, and 'Put' Options in the Mass Tort Class Action," 115 Harv. L. Rev. 747, 756 (2002).

suppliers, builders, installers, insurers and manufacturers of Chinese drywall valued in excess of $1 billion);

- ***In re: The Vioxx Product Liab. Litig.***, MDL No. 1657 (E.D. La.) (As a member of the PSC and Plaintiffs' Negotiating Committee, LSB was instrumental in achieving a $4.85 billion-dollar settlement on behalf of consumers who ingested Vioxx);

- ***In re Air Cargo Shipping Servs. Antitrust Litig.***, MDL No. 1775 (E.D.N.Y.) (As Co-Lead Counsel in the decade long air cargo antitrust litigation, LSB obtained 28 inter-related settlements against air cargo service providers totaling $1.2 billion dollars);

- ***Galanti v. The Goodyear Tire & Rubber Co. ("Entran II")***, No. 03-cv-209 (D.N.J.) (As a member of the Executive Committee, LSB was instrumental in negotiating and achieving the creation of a common fund in the amount of $344,000,000); and

- ***In re: Nat'l Football League Players' Concussion Injury Litig.***, MDL No. 2323 (E.D. Pa.) (As Subclass Counsel working along with Lead Counsel, LSB obtained an uncapped settlement valued in excess of $1 billion dollars on behalf of NFL football players).

Charles E. Schaffer will be leading the LSB team in this litigation. He is a partner with the firm and has achieved an AV peer-review rating in Martindale Hubbell. With over 25 years of experience, he is a nationally recognized leader in complex litigation, having been appointed as lead or co-lead counsel or as a PSC member on a regular basis by federal courts across the country, including in consumer class actions involving unfair and deceptive practices such as this one.[6] Mr.

---

[6]     His appointments in MDL litigation include, *inter alia*: *Apple Inc. Device Performance Litig.* (Executive Committee); *In re Intel Corp. CPU Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2838 (D. Or.) (Plaintiffs' Executive Committee); *In Re Aqueous Film-Foaming Foams (AFFF) Prods. Liab. Litig.*, MDL No. 2873 (D.S.C.) (Plaintiff's Steering Committee); *In re Wells Fargo Ins. Mktg. Sales Practices Litig.*, MDL No. 2797 (C.D. Cal.) (Plaintiffs' Executive Committee); *In re: JP Morgan Modification Litig.*, MDL No. 2290 (D. Mass.) (Plaintiffs' Co-lead Counsel*); In re: IKO Roofing Prods. Liab. Litig.*, MDL No. 2104 (C.D. Ill.) (Plaintiffs' Co-lead Counsel); *In re: HardiePlank Fiber Cement Siding Litig.*, MDL No. 2359 (D. Minn.) (Plaintiffs' Executive Committee); *In re Navistar Diesel Engine Prods. Liab. Litig.*, MDL No. 2223 (N.D. Ill.) (Plaintiffs' Executive Committee); *In re: Azek Decking Sales Practice Litig.*, No. 12-cv-6627 (D.N.J.) (Plaintiffs' Executive Committee); *In re: Pella Corp. Architect & Designer Series Windows Mktg. Sales Practices & Prod. Liab. Litig.*, MDL No. 2514 (D.S.C.) (Plaintiffs' Executive Committee); *In re: CitiMortgage, Inc. Home Affordable Modification Program*, MDL

Shaffer and LSB regularly prosecute multi-state consumer class actions and have one of the best track records in the country when it comes to successfully litigating consumer classes and complex cases, developing practical damages methodologies, obtaining prompt relief for consumers victimized by unfair or deceptive practices, and working cooperatively with others. *See* cases discussed *supra*; *see also* Comite Decl., Ex. C. Through smart and efficient, strategy-driven and tailored creative problem-solving, Mr. Schaffer and LSB have recovered billions of dollars for victims of defective products and unfair or deceptive practices. *Id.* They have accomplished these outstanding global and class settlements while zealously prosecuting the action and minimizing costs and maximizing value.[7]

Of particular relevance to this litigation, Mr. Schaffer and LSB have prosecuted and are currently prosecuting extremely technical cases involving unfair or deceptive practices by

---

No. 2274 (C.D. Cal.) (Plaintiffs' Executive Committee); *In re: Carrier IQ Consumer Privacy Litig.*, MDL No. 2330 (N.D. Cal.) (Plaintiffs' Executive Committee); *In re: Dial Complete Mktg. & Sales Practices Litig.*, MDL No. 2263 (D.N.H.) (Plaintiffs' Executive Committee); *In re: Emerson Electric Co. Wet/Dry Vac Mktg. & Sales Litig.*, MDL No. 2382 (E.D. Miss.) (Plaintiffs' Executive Committee); *In re: Colgate-Palmolive Soft Soap Antibacterial Hand Soap Mktg. & Sales Practice Litig.*, No. 12-md-2320 (D.N.H.) (Plaintiffs' Executive Committee); and *Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05373-TEH (N.D. Cal.) (Plaintiffs' Executive Committee). In addition, Mr. Shaffer has served as member of litigation teams where LSB was appointed to leadership positions, in, *inter alia*: *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL No. 2047 (E.D. La.); *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La.); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014 (E.D. Pa.); and *In re Diet Drug Litig.*, MDL No. 1203 (E.D. Pa.).

[7] For example, Mr. Schaffer was instrumental in bringing about settlements in, *inter alia*: *In re Wells Fargo Ins. Mktg. Sales Practices Litig.*, MDL No. 2797 (C.D. Cal.), which was approved by the court in 2019 and was a claims-made settlement valued at $300 million dollars; *Herrera v. Wells Fargo Bank, N.A.*, No. 8:18-cv-00332 (C.D. Cal.), which was a common fund settlement in excess of $500 million dollars approved in 2021; *In Re CertainTeed Corp. Roofing Shingles Prod. Liab. Litig.*, MDL No. 1817 (E.D. Pa.), which was approved by the court in 2010 and valued at $815,000,000; *In re CertainTeed Fiber Cement Siding Litig.*, MDL No. 2270 (E.D. Pa.), which was a common fund settlement of $103.9 million; and *Pollard v. Remington Arms Co.*, No. 4:13-CV-00086 (W.D. Mo.), which was approved by the court in 2016 and valued at $97,000,000. *See* Comite Decl., Ex. C.

manufacturers of consumer products, including sunscreen and deodorants laden with benzene, dog food contaminated with toxins, building products, soap, appliances, computers, phones, dietary and nutritional supplements, energy drinks, and many other products. All these cases share the same core issues, such as whether the products conform to the manufacturer's representations regarding the product's ingredients or attributes and the damages to consumer as a result of purchasing and paying for the products based on these false and misleading representations. In relation to the food (human and pet food) products, nutritional supplements, sunscreens, and deodorant, the core issues are whether the products contained only the listed or represented ingredients and not a toxin, contaminant, or unintended byproduct.

Mr. Schaffer's particularized experience involving pet food cases and baby food cases involving heavy metals, toxins, and other unintended byproducts will translate directly to the benefit of the putative class members who used sunscreen laden with benzene. Recently, Mr. Schaffer served as a member of the Executive Committee in the recently settled *In Re: Hill's Pet Nutrition, Inc., Dog Food Prods. Liab. Litig.*, 2:19-md-02887 (D. Kan.). During this litigation, he gained valuable experience prosecuting claims on behalf of pet owners nationwide who purchased recalled dog food that sickened and poisoned thousands of dogs nationwide due to the presence of toxic levels of Vitamin D. Mr. Schaffer was also involved in a line of cases against Champion, another dog food manufacturer, for misleading consumers regarding the quality of its dog food and ingredients which contained heavy metals. In addition to the Hills and Champion line of cases, he handled several other deceptive pet food labeling cases, such as *Shaw v. Schell & Kampter, Inc.*, *d/b/a Diamond Pet Foods*, No. 2:20-cv-01620 (W.D. Wash.) and *Hill v. Canidae Corp.*, No. 20-cv-01374 (C.D. Cal.), which recently settled on a nationwide class basis offering meaningful cash payments to the class. These cases were filed after a full investigation, including retaining

experts to test the dog food product's ingredients and developing a methodology to calculate the damages sustained by the class.  The results of testing and the plaintiffs' proposed damages methodology were provided to defendant manufacturers, which led to settlements in both cases. Mr. Schaffer is also currently prosecuting a class action against Midwestern Pet Foods on behalf of consumers who purchased dog food believing the products were safe when in reality they contained a toxin (Aflatoxin) that sickened or killed their dogs.  *In re: Midwestern Pet Foods Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:21-cv-00007 (S.D. Ind.).  He is also currently serving as a member of the Executive Committee in *In re Plum Baby Food*, No. 1:21-cv-02417 (D.N.J.), which involves baby food tainted with heavy metals, and in *Aqueous Film-Foaming Foams (AFFF) Prod. Liab. Litig.*, MDL 2873 (D.S.C.), which involves the contamination of the nation's water supply with PFAS chemicals.  As a result of Mr. Schaffer's experience in litigating these deceptive labeling claims, he is well versed in what will be needed to satisfy Plaintiffs' burdens of proof in this litigation, including the necessary expert opinions as well as damages modeling experts.  These experiences and knowledge will certainly benefit the class in the litigation.

**Shub Law:**[8] The team from Shub Law will be led by Kevin Laukaitis, who focuses his practice almost exclusively on complex class action litigation.  He has vast experience in consumer rights litigation and has been successful representing classes of individuals and businesses in a vast array of matters involving unlawful business conduct.  Mr. Laukaitis has litigated consumer cases throughout the United States and has participated in all stages of litigation in many prominent MDLs and non-MDL consumer class actions.  Specifically, over the

---

[8]     *See* Shub Law's firm résumé, attached as Exhibit D to the Comite Decl.

course of his six-year career as an attorney, he has participated in dozens of class action lawsuits, many involving defective and/or mislabeled consumer goods products.

Mr. Laukaitis has served as class counsel in numerous successful class actions, including: *Hamlen v. Gateway Energy Servs. Corp.*, No. 16-cv-3526, 2017 WL 892399 (S.D.N.Y. Mar. 6, 2017) (appointed class counsel in case against energy company who overcharged consumers on their energy bills); *Austin v. Kiwi Energy N.Y., LLC*, No. 515350/2017 (N.Y. Sup. Ct. - Kings Cty.) (same); *Bell v. Gateway*, No. 031168/2018 (N.Y. Sup. Ct. - Rockland Cty.) (same); *Mercado v. Verde Energy USA, Inc.*, No. 18-cv-2068 (N.D. Ill.) (same); *Williams v. Greenlight Energy, Inc.*, No. 708394/2019 (N.Y. Sup. Ct. - Queens Cty.) (same); *Neversink General Store v. Mowi USA, LLC*, 1:20-cv-09293 (S.D.N.Y.) (appointed class counsel in case against company that deceptively marketed fish products); *Quezada v. Aribtersports, LLC*, 2:20-cv-05193 (E.D. Pa.) (appointed class counsel in case against company that suffered data breach that negatively impacted over 500,000 class members).

Mr. Laukaitis was also part of the plaintiffs' attorney team that served as Co-Lead Trial Counsel representing 68,000 individuals whose statutory rights were violated by the public dissemination of their criminal record history information.  Mr. Laukaitis and his team prevailed in a jury trial and achieved an unprecedented settlement for Pennsylvania inmates who were booked or otherwise detained at the Bucks County Correctional Facility between 1938 and June 18, 2013.  The case, *Taha v. Bucks County*, No. 12-cv-6867 (E.D. Pa.), is considered the first class action lawsuit in the United States to proceed to trial on the impact of digital criminal stigma and a government's statutory obligation to protect its citizenry against such stigma.

Mr. Laukaitis and Shub Law have recovered hundreds of millions of dollars for consumers in class action cases against companies that have unlimited resources.  With a focused litigation strategy, Mr. Laukaitis has a proven track record of achieving great success for consumers in class

action cases involving violations of the various consumer protection statutes across the nation. Mr. Laukaitis and his firm are well-positioned to lead this litigation with co-lead counsel, Milstein and LSB.

**Scott+Scott:**[9] Scott+Scott and its team led by firm partner Erin Green Comite, will be serving as liaison counsel. Scott+Scott is an international plaintiffs' law firm with over 100 attorneys in offices spanning from Amsterdam to London to San Diego, with its largest office in New York City. The firm specializes in complex litigation, including an emphasis on antitrust and consumer class actions. The firm's victories include successful litigation of an antitrust action that alleged a price fixing conspiracy against the world's largest banks, where Scott+Scott achieved a settlement, totaling over $2.3 billion. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y) ("*FX*"). Renowned mediator, Kenneth R. Feinberg, concluded that the *FX* settlements "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and that Scott+Scott were "superlative, sophisticated, and determined plaintiff's lawyers." *See FX*, ECF No. 925 at 2; *id.*, ECF No. 926, ¶29.

Scott+Scott also has diverse and extensive experience in class action consumer protection cases, including:

- ***In re Equifax, Inc. Customer Data Sec. Breach Litig.***, No. 1:17-md-02800 (N.D. Ga.). Scott+Scott serves as court-appointed co-lead counsel on behalf of financial institutions injured as a result of the 2017 Equifax data breach that exposed the personal and financial information of approximately 150 million U.S. consumers;

- ***Forth v. Walgreen Co., Inc***., No. 1:17-cv-02246 (N.D. Ill.). Scott+Scott is co-lead counsel and represents both third-party payers and consumers alleging Walgreens overcharges them for medically necessary, generic prescription drugs;

- ***In re Kava Kava Litig.***, Lead Case No. BC269717 (Cal. Super. Ct. – Cty. of Los Angeles) (obtaining settlements requiring specific warnings on kava kava products

---

[9] *See* Scott+Scott firm résumé, attached Exhibit E to the Comite Decl.

sold in California plus confidential restitutionary and other equitable remedies with certain settling defendants);

- *In re Providian Fin. Corp. Credit Card Terms Litig.*, No. 2:10-md-01301 (E.D. Pa.) ($105 million settlement achieved on behalf of a class of credit card holders who were charged excessive interest and late charges on their credit cards);

- *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, No. 3:11-md-02208 (D. Mass.) ($40 million settlement achieved on behalf of a class of military service members and their families who purchased insurance contracts); and

- *Gunther v. Capital One, N.A.*, No. 2:09-cv-02966 (E.D.N.Y.) (obtained net settlement resulting in class members receiving 100% of their damages).

Ms. Comite has been litigating high-profile consumer, data privacy, and securities class actions and will be leading this case on behalf of Scott+Scott. Ms. Comite's proven ability to manage multi-state litigations with complex issues will be particularly beneficial to class members here. Most recently, Ms. Comite was appointed as co-lead counsel in cases pending against sellers of toxic baby food: *Plum Baby Food Litig.*(ECF No. 74) and *Wilson v. Walmart, Inc*., No. 3:21-cv-00082 (E.D. Ark.) (ECF No. 29). Furthermore, Ms. Comite's vast experience with complex consumer litigation would also be advantageous for the class and relevant to the work needed to be done here to effectively litigate the claims alleged. For example, Ms. Comite was the court-appointed co-lead counsel in *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 16-cv-00506 (W.D. Pa.) ("*Wendy's*"), where a settlement common fund of $50 million received final approval in 2019. At the final approval hearing, Magistrate Judge Maureen Kelly complimented Ms. Comite and her co-counsel for their professionalism and competence, stating in relevant part, "it's apparent to the Court that there was substantial and significant high-level work performed by counsel for the plaintiffs" and "as involved as this case was, if every case I had was as well-organized and professionally presented as this case has been, my life would be much easier." *Wendy's*, Nov. 6, 2019 Tr. at 27-28, 32 (ECF No. 194). Ms. Comite's background is particularly

well-suited for the task of litigating this case, which involves both novel theories of recovery and, in the initial stages, the need to effectively coordinate across multiple actions.

> ### d.   Rule 23(g)(1)(A)(iv): The Co-Lead Team Will Commit More Than Ample Resources to Representing the Class

The Co-Lead Team will draw on a deep well of resources – human, financial and more – to prosecute this action to the fullest.  With over two dozen attorneys between Milstein, LSB, and Shub Law, and over 100 attorneys at Scott+Scott, there will be no shortage of talented attorneys to assist.  Each of these firms is well-capitalized and is prepared to use the necessary funds on behalf of the class, as they have done many times in the past.

Milstein, LSB, and Shub Law have demonstrated financial, professional, investigative, and technological resources required to prosecute the claims in this matter.  In connection with each firm's prior litigation successes, Milstein, LSB, and Shub Law have expended millions of dollars for experts and consultants, the undertaking of international discovery, the use of advanced software systems for analyzing electronic documents, and the commitment of numerous investigative and attorney professionals needed for advance complex claims and adequately represent plaintiffs against highly qualified defense counsel.

> ### 3.   The Rule 23(g)(1)(B) Discretionary Factors Also Favor the Co-Lead Team

In addition to distinguishing themselves under the mandatory criteria of Rule 23(G)(1)(A), the discretionary criteria the Court may consider under rule 23(g)(1)(B) favors appointment of the Co-Lead Team as interim co-lead counsel as well.  Relevant considerations include: the support of sophisticated clients; the support of other plaintiffs' counsel; and a strong commitment to diversity, inclusion, and opportunity.

**Clients.**  Milstein represents Plaintiffs Bryan Clinger, Monica Barba, and Heather Rudy. Each of these plaintiffs purchased numerous Banana Boat sunscreens.  Further, LSB represents

Plaintiffs Luis Chabla and Jessica Barton, each of whom purchased several versions of the Products.  Shub Law represents Plaintiffs Lisa Zayas, Catalina Ocampo, Deborah Jean, and Sebe Algofi, each of whom purchased Banana Boat brand sunscreens believing the labeling to be accurate.  In addition, the firms supporting the Co-Lead Team represent a diverse array of clients from different areas of the country.

**Support of Other Plaintiffs' Counsel.**  As discussed above, the Co-Lead Team's application is endorsed by all the other plaintiffs' counsel involved in this litigation.  The Co-Lead Team has a track record of working collegially with other highly respected counsel, which will enable the team to draw on the resources of the other excellent firms that support this application.

**Diversity, Inclusion, and Opportunity.**  In reviewing leadership applications in complex class action litigation, courts increasingly consider whether a proposed leadership team demonstrates a commitment to diversity and the potential to provide substantive work for junior attorneys.  *See, e.g.*, Order re Consolidation and Interim Class Counsel, *In re Robinhood Outage Litig.*, No. 20 Civ. 01626 (N.D. Cal. July 14, 2020) (denying leadership application where "all four of the proposed lead counsel [were] men" and "leadership roles [were not] made available to newer and less experienced lawyers"); Tr. of Proceedings at 13-15, *In re Chi. Board Options Exch. Volatility Index Manipulation Antitrust Litig.*, No. 18 Civ. 4171 (N.D. Ill. July 11, 2018), ECF No. 48 (setting forth criteria for interim leadership applications).

Here, appointing the Co-Lead Team as interim lead counsel will permit the firms with the deepest subject-matter expertise in consumer protection class action litigation to use that knowledge for the benefit of the class, without sacrificing the important values of diversity and inclusion.  The Co-Lead Team will provide substantial opportunities for lawyers from different backgrounds and experiences to assume leadership roles, supported by their firms at every stage.

Scott+Scott, who will be serving as liaison counsel, was recently recognized by Law360 as a "Ceiling Smasher" for its representation of women in their equity partnership. Female attorneys make up more than a third of Scott+Scott's equity partnership and Scott+Scott's Executive Committee. Scott+Scott's commitment to diversity does not end with the identity of those attorneys set to staff this action or with simply "look[ing] good on paper."[10] Far from merely promoting diversity quotas or "box-ticking."[11] Scott+Scott has had a long-standing commitment to equity and diversity in the workplace, which is one of the reasons it was recognized by U.S. News & World Report for 2021 as a "Best Law Firm."

LSB is also an inclusive and diverse working environment, which can devote junior and women attorneys to specifically working on this case. For example, under the supervision of Mr. Schaffer, LSB's associates, David C. Magagna, Jr. and Marissa Pembroke, will be committed to the case and will gain invaluable experience. Moreover, LSB is a workplace that wholly supports and fosters those in the LGBTQIA community, with some community members in its partnership ranks.

Milstein is committed to promoting diversity and inclusion and values the contributions brought to the firm by a team diverse in background, life experience, and cultural perspective. The firm has always committed to fostering inclusion with an equal opportunity to succeed, including by regularly providing opportunities to women and young attorneys. For example, Mr. Castaneda, who has seven years of experience and will be working on this matter, regularly argues motions in state and federal court and has co-chaired two trials during his tenure at Milstein.

---

[10]    *See* Bolch Judicial Institute, *Duke Law Guidelines and Best Practices Addressing Chronic Failure to Diversify Leadership Positions in The Practice of Law* (Part 1) (May 10, 2018).

[11]    *Id.*

Kevin Laukaitis of Shub Law is a young attorney with six years of experience, which adds age diversity to the already-diverse Milstein and LSB team.

Accordingly, Milstein, LSB, Shub Law, and Scott+Scott embody a commitment to diversity, inclusion, and opportunity in all aspects of their practices.

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court consolidate the Related Actions and appoint Milstein, LSB, and Shub Law as interim co-lead counsel and Scott+Scott as liaison counsel.

Dated: December 23, 2021                    Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Erin Green Comite*
Erin Green Comite (ct24886)
156 S. Main St.
P.O. Box 192
Colchester, CT 06415
Telephone: 860-537-5537
Facsimile:  860-537-4432
ecomite@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (ct27481)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com

*Proposed Liaison Counsel*

**MILSTEIN JACKSON FAIRCHILD
& WADE, LLP**
Gillian L. Wade (*pro hac vice*)
Marc A. Castaneda (*pro hac vice*)
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Telephone: 310-396-9600

Facsimile:  310-396-9635
gwade@mjfwlaw.com
mcastaneda@mjfwlaw.com

**LEVIN SEDRAN & BERMAN**
David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

**SHUB LAW FIRM LLC**
Jonathan Shub (*pro hac vice* application forthcoming)
Kevin Laukaitis (*pro hac vice* application forthcoming)
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Proposed Interim Co-Lead Counsel*

**CARNEY BATES & PULLIAM, PLLC**
David Slade (*pro hac vice*)
Hank Bates (*pro hac vice*)
Sam Jackson (*pro hac vice*)
519 West 7th St.
Little Rock, AR 72201
Telephone: 501-312-8500
Facsimile:  501-312-8505
dslade@cbplaw.com
hbates@cbplaw.com
sjackson@cbplaw.com

**CASEY LAW FIRM, LLC**
Ryan Casey (to apply *pro hac vice*)
ryan@rcaseylaw.com
PO Box 4577
Frisco, CO 80443
Telephone: 970-372-6509
Facsimile:  970-372-6482

**THE SULTZER LAW GROUP P.C.**
Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Telephone: (845) 483-7100
Facsimile: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

**PEIFFER WOLF CARR KANE
& CONWAY, LLP**
Brandon M. Wise (*pro hac vice* application
forthcoming)
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Telephone: (314) 833-4825
bwise@peifferwolf.com

**MASON LIETZ & KLINGER LLP**
Gary M. Klinger (*pro hac vice* application
forthcoming)
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Telephone: (202) 640-1160
Facsimile: (202) 429-2294
gklinger@masonllp.com

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (*pro hac vice* application
forthcoming)
David K. Lietz (*pro hac vice* application
forthcoming)
5101 Wisconsin Ave. NW Ste. 305
Washington DC 20016
Telephone: (202) 640-1160
Facsimile: (202) 429-2294
gmason@masonllp.com
dlietz@masonllp.com

**CONSUMER PROTECTION LEGAL, LLC**
Tiffany M. Yiatras (*pro hac vice* application
forthcoming)
308 Hutchinson Road
Ellisville, MO 63011-2029

23

Telephone: (314) 541-0317
tiffany@consumerprotectionlegal.com

**FREED KANNER LONDON & MILLEN LLC**
Jonathan M. Jagher (*pro hac vice* application
forthcoming)
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
Facsimile: (224) 632-4521
jjagher@fklmlaw.com

**KOHN, SWIFT & GRAF, P.C.**
William E. Hoese (*pro hac vice* application
forthcoming)
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
whoese@kohnswift.com

**LYNCH CARPENTER LLP**
Katrina Carroll (*pro hac vice* application
forthcoming)
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@lcllp.com

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

 s/ <i><b>Erin Green Comite</b></i>
Erin Green Comite