# EXHIBIT D

LAW OFFICES OF LAWRENCE G. PAPALE
Lawrence G. Papale (SBN 67068)
lgpapale@papalelaw.com
1308 Main Street, Suite 117
Saint Helena, CA 94574
Tel: (707) 963-1704

METHVIN, TERRELL,
YANCEY, STEPHENS & MILLER, P.C.
James M. Terrell (*to be admitted pro hac vice*)
Courtney C. Gipson (*to be admitted pro hac vice*)
jterrell@mtattorneys.com
cgipson@mtattorneys.com
2201 Arlington Avenue South
Birmingham, Alabama 35205
Tel: (205) 939-0199
Fax: (205) 939-0399

*Attorneys for Plaintiff Elizabeth Bodle*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIZABETH BODLE,<br><br>    Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON CONSUMER, INC.<br><br>    Defendant. | CASE NO.: 3:21-CV-07742-EMC<br><br>**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. NEGLIGENCE<br>2. NEGLIGENT FAILURE TO WARN<br>3. STRICT LIABILITY -- DESIGN DEFECT<br>4. STRICT LIABILITY -- FAILURE TO WARN<br>5. MEDICAL MONITORING<br>6. BREACH OF WARRANTY<br>7. FRAUD – INTENTIONAL MISREPRESENTATION<br>8. FRAUD – CONCEALMENT<br>9. NEGLIGENT MISREPRESENTATION<br>10. VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200<br>12. VIOLATIONS OF CAL. CIVIL |

1

CODE § 1750
13. VIOLATIONS OF CAL. BUS. &
PROF. CODE § 17500
14. UNJUST ENRICHMENT

Plaintiff brings this action against Defendant Johnson & Johnson Consumer Inc. ("Johnson & Johnson"). In support thereof, Plaintiff states as follows:

**INTRODUCTION**

1.   Plaintiff is a mother of two who was recently diagnosed with acute myeloid leukemia ("AML"). As she is in her early fifties and healthy, Plaintiff and her spouse became suspicious as to why she was the unfortunate victim of such a deadly disease. Through online research, they learned that a human carcinogen was recently found present in a large number of popular sunscreens. Plaintiff is an avid user of sunscreen and her preferred brand, Neutrogena, is sold by Defendant Johnson & Johnson.

2.   Recent independent scientific testing, confirmed by Johnson & Johnson through a massive nationwide recall, has revealed that several of Johnson & Johnson's Neutrogena sunscreen products contain dangerous and unacceptable levels of benzene, a known human carcinogen (hereinafter the "Sunscreens").

3.   The presence of a classified human carcinogen known as benzene rendered the Sunscreens adulterated, misbranded, dangerous, and unlawful for sale. Each and every one of the Sunscreens have been marketed and sold by Johnson & Johnson under the label "sunscreen" through packaging and other advertising materials, as required by 21 C.F.R. § 201.327(b). Each and every one of the Sunscreens also fails to include labeling indicating that the Sunscreen may contain benzene as an active or inactive ingredient.

4.   Plaintiff brings this Class Action on behalf of herself and other similarly situated users of certain sunscreen products manufactured, marketed, distributed, and sold by Johnson &

2

Johnson under the brand name "Neutrogena."  Johnson & Johnson's conduct with respect to the Sunscreens caused personal injury to Plaintiff and the putative Class.  This suit is brought for compensatory damages, punitive damages, injunctive relief and medical monitoring, *inter alia*.

### FACTUAL ALLEGATIONS

*The Regulation of Sunscreen*

5.      All products that claim to provide Broad Spectrum Sun Protection Factor ("SPF") protection, including the Sunscreens, are regulated by the FDA as over-the-counter drugs, rather than as cosmetics.  21 C.F.R. § 352, *et seq.*  The FDA requires sunscreen manufacturers to subject their products to certain testing before they are made available to any consumer.  *Id.* at § 352.70, *et seq.*  The FDA has also identified those materials that qualify as acceptable active ingredients for products labeled as sunscreen.  *Id.* at § 352.10.  Benzene is not one of those acceptable ingredients. *See id.*

6.      The FDA's regulations provide that an "over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets" certain conditions.  21 C.F.R. § 352.1(a).  Among other things, the product must contain "only suitable inactive ingredients which are safe in the amounts administered," *id.* at § 330.1(e), and contain only listed active ingredients at levels "that do[] not exceed the amount reasonably required to achieve [their] intended effect," *id.* at § 330.1(h).

*The Human Carcinogen Benzene*

7.      Benzene is a simple hydrocarbon, C6H6, often found in crude oil and most easily identified by the smell associated with gasoline. It is used in industrial settings to make plastics, resins, synthetic fibers, and rubber lubricants, as well as dyes, detergents, drugs, and pesticides.

8.      Benzene is classified as a human carcinogen by the United States Department of Health and Human Services ("DHHS"). The World Health Organization ("WHO") and the

3

International Agency for Research on Cancer ("IARC") have concluded that benzene is a Group 1 compound, *i.e.* it is "carcinogenic to humans." *See* Letter from David Light, et al., Valisure, LLC, to Division of Dockets Management, FDA, at p. 1[1] (May 24, 2021), attached hereto as Exhibit A (citing *IARC Monographs on the Identification of Carcinogenic Hazards to Humans*, INT'L AGENCY FOR RESEARCH ON CANCER & WORLD HEALTH ORG., https://monographs.iarc.who.int/list-of-classifications (last visited Sept. 29, 2021).

9.      Scientific studies have established that exposure to benzene can cause leukemia (including acute myeloid leukemia ("AML")), other blood and bone marrow disorders, and a weakened immune system. In addition, benzene has been linked to multiple myeloma and non-Hodgkin's lymphoma. *See id.* at p. 6 (citing *Benzene and Cancer Risk*, AM. CANCER SOCIETY (January 5, 2016), https://www.cancer.org/cancer/cancer-causes/benzene.html).

10.      The Food and Drug Administration ("FDA") classifies benzene as a Class 1 solvent, meaning that it "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or . . . deleterious environmental effect." *Q3C – Tables and List Guidance for Industry*, FOOD & DRUG ADMIN. (June 2017), https://www.fda.gov/media/71737/download; *see also* Exhibit A at pp. 1–2. In those limited cases where use of benzene is "unavoidable in order to produce a drug product with a significant therapeutic advance," the FDA has restricted levels to 2 parts per million ("ppm"). *Id.* In all other cases, no level of benzene is acceptable. *See id.*

11.      Products with avoidable levels of benzene do not "contain[] only suitable inactive ingredients which are safe in the amounts administered" or contain only listed active ingredients at levels "that do[] not exceed the amount reasonably required to achieve [their] intended effect." 21

---

[1] Citations are to the page number listed in the Exhibit rather than the ECF docketed number.

AMENDED CLASS ACTION COMPLAINT

C.F.R. § 330.1(e),(h); *see id.* at § 352.1(a). Accordingly, per FDA guidelines, any significant detection of benzene in the Sunscreens should be deemed unacceptable.

**The Valisure Citizen Petition to the FDA**

12.     Valisure is an independent pharmacy, registered with the FDA, whose scientists analyze the safety of various consumer products. On May 25, 2021, Valisure filed a citizen petition with the FDA, detailing its findings from a study on the potential carcinogenicity of active ingredients in a variety of sunscreens and after sun products, including numerous products manufactured, marketed, and sold by Johnson & Johnson. Valisure requested that the FDA recall all batches of sunscreen products in which benzene was detected, the majority of which were Neutrogena products containing the carcinogen. *See* Exhibit A.

13.     Notably, Valisure identified benzene levels over two ppm in ten Neutrogena sunscreen batches from five separate products lines. *Id.* at p. 12. Valisure only identified fourteen products in this category with Neutrogena making up the overwhelming majority and constituting the three highest levels of benzene. *Id.* Below is "Table 2" from Valisure's report where benzene was detected at two ppm or higher. It has been highlighted to show the Neutrogena products:

| Brand Name | Type | Description | SPF | UPC | Lot | Exp. | Active Pharmaceutical Ingredient(s) | Benzene Avg ppm | % St Dev |
|---|---|---|---|---|---|---|---|---|---|
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 04820E04 | 2022-01 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 6.26 6.77* | 7% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 07020E01 | 2023-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 5.96 | 7% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 06920E01 | 2023-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 5.76 | 5% |
| Sun Bum | Gel | Cool Down Gel | N/A | 871760002005 | S0082C | -- | N/A (Cosmetic Product) | 5.33 5.49* | 3% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 02320E01 | 2022-12 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 5.30 | 2% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 04721E02 | 2023-01 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 5.20 5.59* | 5% |
| CVS Health | Spray | After-sun Aloe Vera Soothing | N/A | 050428390832 | 8140449A | -- | N/A (Cosmetic Product) | 4.71 4.55* | 1% |

5

| Brand Name | Type | Description | SPF | UPC | Lot | Exp. | Active Pharmaceutical Ingredient(s) | Benzene Avg ppm | % St Dev |
|---|---|---|---|---|---|---|---|---|---|
| | | Spray | | | | | | | |
| Neutrogena | Spray | Invisible Daily Defense Body Sunscreen Broad Spectrum SPF 60+ | 60+ | 086800111542 | 04921E01 | 2024-01 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 4.65 5.27* | 4% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 03120E02 | 2021-12 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 4.11 6.00** | 15% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 28020E01 | 2022-09 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 4.01 4.00* | 4% |
| CVS Health | Spray | After-sun Aloe Vera Soothing Spray | N/A | 050428390832 | 4111849A | -- | N/A (Cosmetic Product) | 3.58 3.93* | 4% |
| Neutrogena | Spray | Beach Defense Spray Body Sunscreen SPF 50 | 50 | 086800112549 | 25520E01 | 2023-08 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 3.52 3.71* | 3% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 31420E04 | 2022-10 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 3.08 2.64* | 2% |
| Fruit of the Earth | Gel | Aloe Vera Gel | N/A | 071661001200 | 6612940A | -- | N/A (Cosmetic Product) | 2.78 2.94* | 6% |

*Id.*

14. Valisure found that twenty-six product batches had benzene in concentrations between 0.1 ppm and 2.0 ppm. *Id.* at p. 13. Of those, thirteen were Neutrogena products[2] as highlighted below:

| Brand Name | Type | Description | SPF | UPC | Lot | Exp. | Active Pharmaceutical Ingredient(s) | Benzene Avg ppm | % St Dev |
|---|---|---|---|---|---|---|---|---|---|
| Neutrogena | Spray | Invisible Daily Defense Body Sunscreen Broad Spectrum SPF 60+ | 60+ | 086800111542 | 17820E01 | 2023-05 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 1.99 1.66* | 8% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 06420E05 | 2022-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 1.44 1.06* | 6% |
| Raw Elements | Lotion | Eco Formula Sunscreen Lotion SPF 30 | 30 | 858855002003 | 58J19 | 2021-07 | Zinc Oxide 23% | 1.35 1.31* | 9% |
| CVS Health | Spray | After-sun Aloe Vera Soothing Spray | N/A | 050428390832 | 1101990A | -- | N/A (Cosmetic Product) | 0.90 1.04* | 3% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 26119E01 | 2022-08 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 0.87 | 9% |
| CVS Health | Gel | After-sun Aloe Vera Moisturizing Gel | N/A | 050428324837 | 4500231A | -- | N/A (Cosmetic Product) | 0.81 0.98* | 2% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100409 | 08119F36 | 2022-02 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.77 | 4% |
| SunBurnt | Gel | Advanced After-Sun Gel | N/A | 324330210060 | 62R20 | 2022-12 | N/A (Cosmetic Product) | 0.75 0.87* | 2% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 32619E06 | 2021-10 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.73 | 9% |

---

[2] Plaintiff reserves her right to include other sunscreen products manufactured, sold, and distributed by Johnson & Johnson should discovery identify additional products relevant to this action.

6

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Goodsense | Lotion | Sunscreen Lotion SPF 30 | 30 | 846036001143 | 070606920 | 2022-07 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10% | 0.71 | 4% |
| Neutrogena | Spray | CoolDry Sport Water-Resistant Sunscreen Spray SPF 70 | 70 | 086800100379 | 33719E01 | 2022-10 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 0.66 | 5% |
| Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 30 Spray | 30 | 086800100386 | 28219E02 | 2021-09 | Avobenzone 3%, Homosalate 8%, Octisalate 5%, Octocrylene 8% | 0.49 | 18% |
| Banana Boat | Spray | Kids Max Protect & Play Sunscreen C- Spray SPF 100 | 100 | 079656050820 | 200910346 | 2023-02 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.41 0.43* | 7% |
| Neutrogena | Spray | Beach Defense Oil-Free Body Sunscreen Spray - SPF 100 | 100 | 086800101444 | 35219E05 | 2021-11 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.41 | 8% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 100+ | 100+ | 086800100416 | 29519E02 | 2021-09 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.37 0.38* | 2% |
| Banana Boat | Spray | UltraMist Deep Tanning Dry Oil Continuous Clear Spray SPF 4 | 4 | 79656046632 | 200944022 | 2023-03 | Homosalate 3.0%, Octocrylene 1.0% | 0.36 | 18% |
| Banana Boat | Spray | Kids Max Protect & Play Sunscreen C- Spray SPF 100 | 100 | 079656050820 | 200273634 | 2022-12 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.19 | 11% |
| Neutrogena | Spray | Ultra Sheer Weightless Sunscreen Spray, SPF 70 | 70 | 086800100409 | 13019F84 | 2022-04 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 4%, Oxybenzone 6% | 0.18 | 10% |
| Neutrogena | Spray | Ultra Sheer Body Mist Sunscreen Broad Spectrum SPF 45 | 45 | 086800100393 | 15719F83 | 2022-05 | Avobenzone 3%, Homosalate 15%, Octisalate 5%, Octocrylene 2.35%, Oxybenzone 6% | 0.15 | 12% |
| Banana Boat | Spray | Ultra Sport Clear Sunscreen Spray SPF 100 | 100 | 79656050806 | 201060792 | 2023-03 | Avobenzone 3.0%, Homosalate 10.0%, Octisalate 5.0%, Octocrylene 10.0%, Oxybenzone 6.0% | 0.15 | 4% |
| Neutrogena | Lotion | Ultra Sheer Dry-Touch Water Resistant Sunscreen SPF 70 | 70 | 868006877002 | 0090L0069 | 2022-06 | Avobenzone 3.0%, Homosalate 15.0%, Octisalate 5.0%, Octocrylene 2.8%, Oxybenzone 6.0% | 0.13 | 73% |
| Neutrogena | Spray | CoolDry Sport Water-Resistant Sunscreen Spray SPF 50 | 50 | 086800100362 | 15619F25 | 2022-05 | Avobenzone 2.7%, Homosalate 9%, Octisalate 4.5%, Octocrylene 6%, Oxybenzone 4.5% | 0.13 | 4% |
| TopCare Everyday | Lotion | Ultimate Sheer Sunscreen Lotion SPF 70 | 70 | 036800459007 | 9533119A | 2021-11 | Avobenzone 3%, Homosalate 10%, Octisalate 3%, Octocrylene 7%, Oxybenzone 6% | 0.12 0.16* | 6% |
| EltaMD | Spray | UV Aero Broad-Spectrum Full-Body Sunscreen Spray, SPF 45 | 45 | 390205025879 | 67155I | 2022-11 | Zinc Oxide 9.3%, Octinoxate 7.5% | 0.11 0.17* | 18% |
| EltaMD | Spray | UV Aero Broad-Spectrum Full-Body Sunscreen Spray, SPF 45 | 45 | 390205025879 | 67155H | 2022-11 | Zinc Oxide 9.3%, Octinoxate 7.5% | 0.11 | 9% |
| Banana Boat | Spray | Kids Max Protect & Play Sunscreen C- Spray SPF 100 | 100 | 079656050820 | 200243635 | 2022-12 | Avobenzone 3%, Homosalate 10%, Octisalate 5%, Octocrylene 10%, Oxybenzone 6% | 0.11 | 19% |

*Id.*

15.     By way of reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by any worker expecting to be exposed to benzene at concentrations of 0.1 ppm. *See id.* at p. 2 (quoting *The National Institute for Occupational Safety and Health (NIOSH), Benzene,* CENTERS FOR DISEASE CONTROL & PREVENTION (October 30, 2019), https://www.cdc.gov/niosh/npg/npgd0049.html; *The National*

*Institute for Occupational Safety and Health, BENZENE: Systemic Agent*, CENTERS FOR DISEASE CONTROL & PREVENTION (2011), https://www.cdc.gov/niosh/ershdb/emergencyresponsecard_29750032.html). NIOSH lists "skin absorption" as one way a person could be exposed to dangerous levels of benzene. *See id.*

16. Valisure determined that benzene is not unavoidably present in the sunscreen products. Indeed, many of the sunscreens that Valisure tested contained no benzene. Nor is benzene's presence in the products related to any known, let alone significant, therapeutic advance. *See id.* at pp. 1–2. Benzene is not a listed active or inactive ingredient on the label of any of the Sunscreens, and Johnson & Johnson has never otherwise warned consumers that the Sunscreens may contain benzene.

17. Valisure states that the presence of benzene in the Sunscreens may be the result of contamination. *See, e.g.*, *id.* at pp. 2–4. Valisure does not identify how this contamination could have occurred, but its testing showed how readily detectable this dangerous contaminant is in the Sunscreens.

18. As Valisure observed, the presence of a known human carcinogen in the Sunscreens is especially troubling since they are "widely recommended for the prevention of skin cancer and regularly used by adults and children in large volumes." *Id.* at p. 2. Because "[s]unscreen products are typically used in many times higher volume than standard drug products like tablets or capsules," "even a relatively low concentration limit can result in very high total exposure." *Id.* at 16. A researcher from Yale University made a compelling comment to Valisure: "Considering that human skin has a large total surface area (~1.85 m2), and that ~28.5 g of sunscreen is needed per application to properly cover that skin surface, it follows then that there is not a safe level of benzene that can exist in sunscreen products." *See id.* at p. 17 (quoting Email from Dr. Christopher Bunick, MD, PhD, Assoc. Prof. of Dermatology at Yale University to Valisure).

8

19.     To put this figure in context, at "the FDA conditional restriction limit of 2 ppm for benzene, 28.5 g of sunscreen would contain 57,000 ng of benzene in a single application which may reasonably be used 4 times per day, therefore amounting to 228,000 ng of benzene exposure per day." *Id.* at p. 16.   Other comparable carcinogens, such as N-Nitrosodimethylamine ("NDMA"), have permissible daily intakes of around 96 ng.  *Id.*  This means a sunscreen with a benzene detection of 6.26 ppm, such as Johnson & Johnson's Ultra Sheer Weightless Sunscreen Spray, SPF 100+, equates to approximately 695,800 ng of benzene in one day or 7,248 times the limit for comparable carcinogens.  *Id.*

***Johnson & Johnson's Response to Valisure's Petition***

20.     As Valisure explained in its petition, the presence of benzene in the Sunscreens renders them adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. §§ 351 and 352, respectively. *See id.* at p. 2.  The Sunscreens are also misbranded under CAL. HEALTH & SAFETY CODE § 111330.

21.     Federal and analogous state law prohibits the manufacture, distribution, and receipt of any misbranded or adulterated drug.  *See* 21 U.S.C. § 331(a); CAL. HEALTH & SAFETY CODE § 111440.  Nonetheless and despite the Valisure petition's extensive reporting on the presence of benzene in its products, Johnson & Johnson waited nearly two months before removing some of the Sunscreens from the market or warning the public of the risks to their health and safety.

22.     In its public announcement, Johnson & Johnson stated that it was only recalling the aerosol Sunscreens "[o]ut of an abundance of caution" and suggested that the presence of benzene in its products is not dangerous.  *See Aerosol Sunscreen Voluntary Recall Statement*, NEUTROGENA, https://www.neutrogena.com/sunscreen-recall.html (last visited September 17, 2021); *Johnson & Johnson Consumer Inc. Issues Voluntary Recall of Specific NEUTROGENA® and AVEENO® Aerosol Sunscreen Products Due to the Presence of Benzene*, JOHNSON & JOHNSON (July 14, 2021),

AMENDED CLASS ACTION COMPLAINT

https://www.jnj.com/johnson-johnson-consumer-inc-issues-voluntary-recall-of-specific-neutro gena-and-aveeno-aerosol-sunscreen-products-due-to-the-presence-of-benzene.

23.     To date, however, Johnson & Johnson has not explained why or how benzene is present in the Sunscreens, or whether Johnson & Johnson conducted testing that could and should have detected benzene at the outset.

***Johnson & Johnson's Branding, Marketing, and Advertising Strategy***

24.     Neutrogena touts itself as "[l]eading the way" in product testing.  On its website, Neutrogena dedicates an entire page to its purported high-testing standards, claiming to give readers "the facts" so that they can "feel good about how" Neutrogena makes its products.  *See* Neutrogena Product Testing, Neutrogena, https://www.neutrogena.com/producttesting.html (last visited September 17, 2021).  There, it states that the company "not only follow[s] individual country regulations, but also look[s] to incorporate the best thinking and practices from top authorities for skincare products around the world." *Id.*  The webpage goes on to explain that the company "set[s] a high bar for using ingredients.  Our ingredients are screened for quality, manufacturing process, government regulations, published research, and our own ingredient safety databases." *Id.*  The company also makes specific claims about its manufacturing process, emphasizing that "[s]afety goes beyond the ingredients list," with attention also paid to "how our ingredients are used, our manufacturing safeguards, how the products are used, and testing requirements for our products." *Id.*

25.     Neutrogena's product testing webpage links to another Johnson & Johnson webpage regarding the company's safety and care commitment.  There, Johnson & Johnson purports to make its customer's safety a "priority" with a safety assessment process that is "the most rigorous in the world":

> Your safety is our priority.  That's why our safety assessment process meets or exceeds industry and regulatory standards for baby and beauty personal care

10

products. It's a process that never ends–we continually review our product ingredients against the latest research and consumer feedback. We believe our process is among the most rigorous in the world and is at the core of our Safety & Care Commitment.

Commitment, JOHNSON & JOHNSON, https://safetyandcarecommitment.com/commitment (last visited September 17, 2021).

26. Representations made on Johnson & Johnson and Neutrogena's websites remain today, despite the recall of their products, making no mention of Valisure's findings.

27. The revelation that the Sunscreens contain unacceptable levels of benzene, and are therefore adulterated and misbranded, also stands in stark contrast to Johnson & Johnson's long-standing branding, marketing, and advertising strategy for Neutrogena products. That strategy revolves around convincing consumers that the Sunscreens are safe and healthy.

28. The packaging for the Sunscreens, as well as Neutrogena's website, have long represented to consumers that the Sunscreens are "#1 Dermatologist Recommended." For example, the first page of its website states that the brand is "#1 Dermatologist Recommended." NEUTROGENA, https://www.neutrogena.com/ (last visited September 17, 2021). The basis for this representation, which clearly aims to portray the product as safe and healthy, is nowhere specified on either the Sunscreens' packaging or Neutrogena's website. And the representation remains unchanged even in the wake of Valisure's discovery and citizen's petition.

29. For example, one of the Neutrogena products that Plaintiff used contained the following label:

AMENDED CLASS ACTION COMPLAINT



30. As shown in the above image, Neutrogena also makes a point of associating the word "clean" with its Ultra Sheer product line. *See* Ultra Sheer ® Dry-Touch Sunscreen Broad Spectrum SPF 70, NEUTROGENA, https://www.neutrogena.com/products/sun/ultra-sheer-dry-touch-sunscreen-broad-spectrum-spf-70/6868770.html?tilePosition=5#q=ultra%2Bsheer&lang=default&start=5 (last visited September 17, 2021). Ironically, in Valisure's testing, Neutrogena's Ultra Sheer products held four of the top five spots in benzene ppm. *See* Exhibit A at p. 12.

31. Johnson & Johnson's efforts to portray its sunscreens as clean and dermatologist recommended extends to its commercials as well, which prominently portray Neutrogena suncare products as being number one among dermatologists. *See, e.g.*, *Neutrogena Ultra Sheer Dry Touch TV Commercial Featuring Jennifer Garner*, ISPOT.TV, https://www.ispot.tv/ad/7ZH8/neutrogena-ultra-sheer-dry-touch-featuring-jennifer-garner (last visited September 17, 2021); *Neutrogena*

12

*Beach Defense TV Commercial, 'More Protection. More Sun.'*, ISPOT.TV, https://www.ispot.tv/ad/OBGJ/neutrogena-beach-defense-more-protection-more-sun (last visited September 17, 2021).

32.     In addition, Johnson & Johnson promotes the safety and benefits of sunscreens through various articles on its website, ironically emphasizing that they are essential to cancer prevention without mentioning the risks associated with benzene. *See, e.g.*, Krista Bennett DeMaio, *8 Things We Learned From the New Neutrogena Documentary In the Sun*, JOHNSON & JOHNSON (May 18, 2021), https://www.jnj.com/health-and-wellness/sun-safety-facts-from-neutrogena-documentary-in-the-sun; Sunny Sea Gold, *The Science of Sunscreen: 3 Experts Tackle Common Myths About Its Safety*, JOHNSON & JOHNSON (May 20, 2019), https://www.jnj.com/health-and-wellness/sunscreen-safety-myths-experts-tackle-the-science-of-sun-protection ("'Despite anecdotal reports questioning the safety of the ingredients in sunscreen, there is no data that shows there is any harm to your health by using it.'"); Krista Bennett DeMaio, *5 Things We Now Know About the Safety and Effectiveness of Sunscreen*, JOHNSON & JOHNSON (May 23, 2017), https://www.jnj.com/health-and-wellness/5-things-we-now-know-about-safety-and-effectiveness-of-sunscreen (encouraging frequent application of one ounce of sunscreen to prevent skin cancer and emphasizing that both chemical and mineral sunscreens are safe to use).

33.     Johnson & Johnson's failure to prevent the presence of benzene in the Sunscreens, and its sale of these dangerous and illegal products, caused personal injury and constitutes actionable fraud. Johnson & Johnson misled and defrauded Plaintiff, and continues to mislead and defraud consumers, by making affirmative misrepresentations that portray the Sunscreens as safe, and omitting from the Sunscreens' packaging and marketing materials information about the actual danger of the Sunscreens, including any warning to consumers that the Sunscreens may contain unacceptable levels of benzene rendering them adulterated, misbranded, and illegal.

34.     While many of Neutrogena's Sunscreens have been recalled and are not currently for sale on the company's website, Ultra Sheer Dry-Touch Water Resistant Sunscreen Lotion SPF 70 is still for sale despite being listed in Valisure's petition as containing an average of 0.13 ppm of benzene.  *See* Ultra Sheer ® Dry-Touch Sunscreen Broad Spectrum SPF 70, NEUTROGENA, https://www.neutrogena.com/products/sun/ultra-sheer-dry-touch-sunscreen-broad-spectrum-spf-70/6868770.html?tilePosition=5#q=ultra%2Bsheer&lang=default&start=5 (last visited November 4, 2021).

35.     Because benzene is not a necessary ingredient in the Sunscreens—and if it were, concentrations above 2 ppm are entirely prohibited by federal law—the Sunscreens are illegal and unfit for sale in trade or commerce.  This prohibition on any sale of the Sunscreens whatsoever renders the adulterated, misbranded, and unlawfully sold Sunscreens legally worthless.  If the Sunscreens had been truthfully and accurately labeled, no consumer would have purchased the Sunscreens.  Accordingly, Plaintiff and the Class were injured by developing AML or other forms of cancer.

36.     Plaintiff and the Class purchased suncare products that they reasonably believed were free of carcinogens.  Because Johnson & Johnson sold them products that may contain dangerous levels of benzene, Plaintiff and the Class were harmed and suffered personal injuries.

37.     Plaintiff and the Class are entitled to damages for the injuries they sustained in being exposed to high levels of acutely toxic benzene, damages related to Johnson & Johnson's conduct, and injunctive relief.

## **PARTIES**

38.     Plaintiff Elizabeth Bodle is a resident of Fairfax, California.  Neutrogena has been her preferred brand of sunscreen, and she has purchased Neutrogena sunscreens, including Ultra Sheer Dry-Touch Water Resistant Sunscreen Lotion SPF 70.  When purchasing the Sunscreen,

AMENDED CLASS ACTION COMPLAINT

Plaintiff reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer, distributor, and pharmacy that the Sunscreen was properly manufactured, free from defects, and safe for its intended use. Plaintiff relied on these representations and warranties in deciding to purchase the Sunscreen manufactured by Johnson & Johnson, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Sunscreen from Johnson & Johnson if she had known that it was not in fact properly manufactured free from defects, unadulterated, and properly labeled.

39.     Plaintiff has standing to represent members of the Class because there is sufficient similarity between the specific Sunscreen purchased by the Plaintiff and the other Sunscreens purchased by the Class. Specifically, each and every one of the Sunscreens are marketed and labeled in the same way – as "sunscreen" – and fail to indicate to consumers that the Sunscreens may contain benzene as an active or inactive ingredient; accordingly, all members of the Class were injured in substantially the same manner.

40.     Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation doing business in California. Johnson & Johnson Consumer Inc. is a subsidiary of the Johnson & Johnson conglomerate. It may be served via its registered agent, C T Corporation System, at 330 N. Brand Blvd Ste 700, Glendale, CA 91203. Defendant is the manufacturer and/or distributor of the Sunscreens. Upon information and belief, Johnson & Johnson has, and continues to, operate the Neutrogena brand from its offices in Los Angeles, California.

## JURISDICTION & VENUE

41.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d), because: (1) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," (2) the action

is pled as a class action involving more than 100 putative Class members, and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant."

42.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because substantial acts in furtherance of the alleged improper conduct, including the dissemination of deceptive information regarding the benefits of the Sunscreens occurred within this District. Venue is also proper under 18 U.S.C. § 1965(a) because Johnson & Johnson transacts substantial business in this District.

43.     This Court has jurisdiction over Johnson & Johnson because Johnson & Johnson is authorized to conduct and do business in California. Johnson & Johnson has marketed, manufactured, promoted, distributed, and sold sunscreen protection products, including the Sunscreens, from California. Johnson & Johnson has established sufficient minimum contacts with this State by having availed itself of the markets in this State through its promotion, manufacture, sale, distribution, and marketing of its sunscreen protection products, such that exercise of jurisdiction by this Court is permissible. A substantial portion of all claims alleged on behalf of Plaintiff and the Class arise out of conduct occurring in the State of California.

## CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this case as a class action on behalf of those persons who were harmed by Defendant's conduct. All of the information necessary to determine the identity of the putative Class members and the damages that those putative Class members have suffered is currently in Defendant's possession or control.

45.     The Class is defined as follows:

> All consumers who purchased any lotion or spray Sunscreen manufactured by Johnson & Johnson or its subsidiaries in the United States for personal use or consumption and suffered personal injury as a result.

16

46.     Excluded from the Class are counsel of record, judicial officers, members of the judiciary, Defendant and its related persons, agents, employees, officers, and/or directors.  Plaintiff maintains the right to create additional classes or subclasses, if necessary, and to revise the Class definition to maintain a cohesive Class that does not require individual inquiry to determine liability.

**<u>Common Questions of Law and Fact Predominate</u>**

47.     There are common questions of law and fact of general interest to the Class.  These common questions of law and fact predominate over questions affecting only individual members of the Class.  Included among the common questions are:

a.  Whether Johnson & Johnson's Sunscreens contained benzene;

b.  Whether Johnson & Johnson's Sunscreens caused personal injuries, including cancer;

c.  Whether Johnson & Johnson's representations and omissions, seen in their marketing, advertising, packaging, labeling, and other promotional materials, are true, or are misleading, or objectively reasonably likely to deceive;

d.  Whether the alleged conduct constitutes violations of the laws asserted;

e.  Whether Johnson & Johnson's alleged conduct violates public policy;

f.  Whether Johnson & Johnson engaged in false or misleading advertising;

g.  Whether Johnson & Johnson's manufacturing, marketing, distributing, and selling of the Sunscreens violates California's Sherman Food, Drug, and Cosmetics Law, CAL. HEALTH & SAFETY CODE § 111225, *et. seq.*;

h.  Whether Johnson & Johnson's business practices as alleged herein are unlawful under the Consumers Legal Remedy Act, CAL. CIV. CODE § 1750, *et seq.*;

AMENDED CLASS ACTION COMPLAINT

i.   Whether Johnson & Johnson's business practices as alleged herein were and are likely to deceive reasonable consumers in the United States by obfuscating the true nature of the Sunscreens, all in violation of CAL. BUS. & PROF. CODE § 17500;

j.   Whether Johnson & Johnson is liable to Plaintiff and the Class for unjust enrichment;

k.   Whether Plaintiff and members of the putative Class are entitled to medical monitoring;

l.   Whether Plaintiff and members of the putative Class are entitled to damages and the proper measure of that loss; and

m.  Whether Plaintiff and the members of the putative Class are entitled to declaratory and injunctive relief.

## **Typicality and Numerosity**

48.    The claims of the named Plaintiff are typical of the claims of the Class, and given the nature of the claims and Johnson & Johnson's sales of the Sunscreens across the nation, Plaintiff believes that the putative Class is so numerous that joinder of all members is impracticable.

## **Adequate Representation**

49.    The named Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interest antagonistic to those of other Class members. Plaintiff has retained Class Counsel who are competent to prosecute class actions and are financially able to represent the Class.

## **Superiority**

50.    The class action mechanism is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the Class is

18

impracticable. The class action mechanism provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court. The interests of judicial economy favor adjudicating the claims of Plaintiff and putative Class members as a Class rather than for Plaintiff and putative Class members on an individual basis.

51.     Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION
### Negligence

52.     Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

53.     Negligence is the failure to use reasonable care to prevent harm to another person.

54.     Plaintiff claims that she and members of the putative Class were harmed by Defendant's negligence. Plaintiff has been diagnosed with AML – a form of cancer known to be caused by benzene exposure. Plaintiff bought and used some or all of the Sunscreen products listed above. Upon information and belief, Plaintiff's use of the Sunscreen products was the sole cause or a substantial factor in causing her cancer.

55.     Defendant designed, manufactured, supplied, inspected, tested, distributed and/or sold the Sunscreen products.

56.     Title 21, Section 352.1 of the Code of Federal Regulations states: "over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets" certain conditions. 21 C.F.R. § 352.1(a). Among other things, the product must contain "only suitable inactive ingredients which are safe in the amounts administered," *id.* at § 330.1(e), and contain only listed active ingredients at levels "that

19

do[] not exceed the amount reasonably required to achieve [their] intended effect," *id.* at § 330.1(h).

Benzene is not one of those acceptable ingredients. *See id.* Defendant violated this law.

57. CAL. HEALTH & SAFETY CODE § 25249.6 ("Prop. 65") provides that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual . . . ." Benzene is a chemical known to the state to cause cancer and is recognized as a chemical that requires a clear and reasonable warning pursuant to Prop. 65. Defendant violated this law.

58. These violations were a substantial factor in bringing about the harm suffered by Plaintiff.

59. Defendant was negligent. Defendant was negligent in designing, manufacturing, supplying, inspecting, testing, distributing, and selling the Sunscreen products.

60. Defendant failed to use reasonable care to prevent harm to others, including Plaintiff and members of the putative Class.

61. As a result, Plaintiff and members of the putative Class were harmed.

62. Defendant's negligence was a substantial factor in causing this harm.

### SECOND CAUSE OF ACTION
### Negligent Failure to Warn

63. Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

64. Plaintiff claims that Defendant was negligent by not using reasonable care to warn or instruct about the Sunscreen products' dangerous conditions or about facts that made the products likely to be dangerous.

65. Defendant manufactured, distributed and/or sold the product.

AMENDED CLASS ACTION COMPLAINT

66.     Defendant knows or reasonably should have known that the product was dangerous or was likely to be dangerous when used or misused in a reasonably foreseeable manner.

67.     Defendant knew or reasonably should have known that users would not realize the danger.

68.     Defendant failed to adequately warn of the danger or instruct on the safe use of the product.

69.     A reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product.

70.     Plaintiff and members of the putative Class were harmed.  Plaintiff has been diagnosed with AML – a form of cancer known to be caused by benzene exposure.  Plaintiff bought and used some or all of the Sunscreen products listed above.  Upon information and belief, Plaintiff's use of the Sunscreen products was the sole cause or a substantial factor in causing her cancer.

71.     Defendant's failure to warn or instruct was a substantial factor in causing Plaintiff's harm.

72.     Plaintiff also alleges that Defendant failed to provide any warning about the dangers of the Sunscreen products to consumers, including Plaintiff and members of the putative Class, after they were sold.

73.     Defendant manufactured, distributed and/or sold the Sunscreen products.

74.     Defendant knew or reasonably should have known that the products were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

75.     Defendant was aware of this danger and defect both before and after the Sunscreen products were sold.

AMENDED CLASS ACTION COMPLAINT

76.     Defendant failed to recall the products or warn of the danger of the Sunscreen products.

77.     A reasonable manufacturer, distributor, or seller under the same or similar circumstances would have recalled the products or provided a post-sale warning.

78.     As a result, Plaintiff and members of the putative Class were harmed.

79.     Defendant's failure to recall the products or provide a warning was a substantial factor in causing Plaintiff's and members of the putative Class's harm.

### THIRD CAUSE OF ACTION
### Strict Liability – Design Defect

80.     Plaintiff hereby incorporates by reference each of the paragraphs of this Complaint as if fully set forth herein.

81.     Plaintiff claims that she and members of the putative Class were harmed by a product tested, distributed, manufactured, and/or sold by Defendant that was defectively designed.

82.     Plaintiff claims the product's design was defective because the Sunscreen products did not perform as safely as an ordinary consumer would have expected them to perform.

83.     Defendant manufactured, distributed, and/or sold the Sunscreen products.

84.     The Sunscreen products did not perform as safely as an ordinary consumer would have expected them to perform when used or misused in an intended or reasonably foreseeable way.

85.     As a result, Plaintiff and members of the putative Class were harmed.

86.     The Sunscreen products' failure to perform safely was a substantial factor in causing Plaintiff's and members of the putative Class's harm.

87.     As an alternative to the consumer expectations test, Plaintiff also claims that the Sunscreen products were defectively designed under the risk-benefit test.

88.     Defendant manufactured, distributed, and/or sold the products.

22

89.     The Sunscreen products' design was a substantial factor in causing harm to Plaintiff and members of the putative Class.

## FOURTH CAUSE OF ACTION
### Strict Liability – Failure to Warn

90.     Plaintiff hereby incorporates by reference each of the paragraphs of this Complaint as if fully set forth herein.

91.     Plaintiff claims that the Sunscreen products lacked sufficient warnings of the potential risks.

92.     Defendant manufactured, distributed, and/or sold the Sunscreen products.

93.     The Sunscreen products had potential risks that were known or knowable in light of the scientific and medical knowledge at the time of the manufacture, distribution, and/or sale of the Sunscreen products.

94.     The potential risks presented a substantial danger when the Sunscreen products were used in an intended or reasonably foreseeable way.

95.     Ordinary consumers would not have recognized or known about the potential risks.

96.     Defendant failed to adequately warn Plaintiff and members of the putative Class of the potential risks.

97.     As a result, Plaintiff and members of the putative Class were harmed.

98.     The lack of sufficient warnings was a substantial factor in causing Plaintiff's and members of the putative Class's harm.

## FIFTH CAUSE OF ACTION
### Medical Monitoring

99.     Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

AMENDED CLASS ACTION COMPLAINT

100.     Plaintiff and members of the putative Class were significantly exposed to benzene, chemicals, toxins, and particulates proven hazardous to health.

101.     The exposure to these dangerous substances is such that Plaintiff and members of the putative Class have been placed at an increased risk of contracting latent illness and disease, including but not limited to cancer, and as such, require medical monitoring which Defendant is responsible for providing and paying for.

102.     Monitoring and testing procedures for cancer and other illnesses associated with exposure to benzene and other chemicals, toxins, and particulates exist which make the early detection and treatment of the disease possible and beneficial.

103.     As a result, the Court should establish a Court-supervised and administered trust fund and medical monitoring regime to compensate Plaintiff and members of the putative Class for their economic damages.

**SIXTH CAUSE OF ACTION**
**Breach of Warranty**

104.     Plaintiff hereby incorporates by reference each of the paragraphs of this Complaint as if fully set forth herein.

105.     Plaintiff claims that she and members of the putative Class were harmed by the Sunscreen products because Defendant represented, either by words or actions, that the Sunscreen products were safe, but the products were not safe and were not as they were warranted to be.

106.     The Sunscreen products did not have the quality that a buyer, consumer, or user would expect.

107.     Defendant was in the business of selling the Sunscreen products and held itself out as having special knowledge regarding Sunscreen products.

108.     The Sunscreen products failed to perform as safely as they were warranted to be.

109.     As a result, Plaintiff and members of the putative Class have been harmed.

24

110.    The failure of the Sunscreen products to be as represented and warranted and to have the expected safety was a substantial factor in causing Plaintiff's and members of the putative Class's harm.

### SEVENTH CAUSE OF ACTION
### Fraud – Intentional Misrepresentation

111.    Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

112.    Plaintiff claims that Defendant made a false representation that harmed her and members of the putative Class.

113.    Defendant represented to consumers, including Plaintiff and members of the putative Class, that the Sunscreen products were safe.

114.    Defendant's representations were false.

115.    Defendant knew that the representations were false when they were made or made the representations recklessly and without regard for their truth.

116.    Defendant intended that consumers, including Plaintiff and members of the putative Class, rely on the representations.

117.    Plaintiff and members of the putative Class reasonably relied on Defendant's representation.

118.    As a result, Plaintiff and members of the putative Class were harmed.

119.    Plaintiff's and members of the putative Class's reliance on Defendant's representations were a substantial factor in causing their harm.  Plaintiff's and members of the putative Class's use of the Sunscreen products was a substantial factor in causing their harm.

120.    Plaintiff and members of the putative Class would not have used the Sunscreen products had they known the truth about the dangers and risks posed by the Sunscreen products which Defendant misrepresented and concealed.

## EIGHTH CAUSE OF ACTION
### Fraud – Concealment

121.     Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

122.     Plaintiff claims that she and members of the putative Class were harmed because Defendant concealed certain information about the dangers and risks of the Sunscreen products.

123.     Defendant had a duty to disclose material information regarding the safety hazards, dangers, and risks posed by the Sunscreen products to consumers, including Plaintiff.

124.     Defendant intentionally failed to disclose certain facts to the public and consumers, including Plaintiff and members of the putative Class.

125.     In addition, Defendant disclosed some facts, but intentionally failed to disclose other facts, making what disclosures they did make deceptive.

126.     Defendant intentionally failed to disclose certain facts that were known only to them and their agents, and that consumers, including Plaintiff and members of the putative Class, could not have discovered.

127.     By virtue of their conduct, Defendant prevented the public and consumers, including Plaintiff and members of the putative Class, from discovering certain facts regarding the safety hazards, dangers, and risks posed by dangerous levels of benzene in the Sunscreen products which Defendant concealed.

128.     Plaintiff and members of the putative Class did not know of the concealed facts.

129.     Defendant intended to deceive consumers, including Plaintiff and members of the putative Class, by concealing the facts.

130.     Had the omitted information been disclosed, Plaintiff and members of the putative Class reasonably would have behaved differently.  They would not have used the Sunscreen products which ultimately caused the physical harm they have suffered.

26

131.    As a result, Plaintiff and members of the putative Class were harmed.

132.    Defendant's concealment was a substantial factor in causing harm to Plaintiff and members of the putative Class.

### NINTH CAUSE OF ACTION
### Negligent Misrepresentation

133.    Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

134.    Plaintiff and members of the putative Class were harmed because Defendant negligently misrepresented that the Sunscreen products were safe.

135.    Defendant represented to consumers, including Plaintiff, that the Sunscreen products were safe.

136.    Defendant's representation was not true.

137.    Defendant had no reasonable grounds for believing the representation was true when it was made.

138.    Defendant intended that consumers, including Plaintiff and members of the putative Class, believe and rely on the representation that the Sunscreen products were safe.

139.    Plaintiff and members of the putative Class reasonably relied on Defendant's representation and believed that the Sunscreen products were safe.

140.    Plaintiff and members of the putative Class would not have used Defendant's Sunscreen products had they known the truth.

141.    As a result, Plaintiff and members of the putative Class were harmed.

142.    Plaintiff's and members of the putative Class's reliance on Defendant's representation that the Sunscreen products were safe was a substantial factor in causing them harm.

AMENDED CLASS ACTION COMPLAINT

**TENTH CAUSE OF ACTION**
**Unlawful, Unfair and Fraudulent Business Practices**
(CAL. BUS. & PROF. CODE § 17200, *et seq.*)

143. Plaintiff hereby incorporates each of the paragraphs of this Complaint as if fully set forth herein.

144. Plaintiff brings this claim against Johnson & Johnson for violation of CAL. BUS. & PROF. CODE § 17200, *et seq.* on behalf of herself and members of the putative Class.

145. Johnson & Johnson's manufacturing, marketing, distributing, and selling of the Sunscreens violates California's Sherman Food, Drug, and Cosmetics Law, CAL. HEALTH & SAFETY CODE § 111225, *et seq*. ("Sherman Law").

146. The relevant part of the Sherman Law declares that a drug is misbranded if its labeling is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any drug. *See* CAL. HEALTH & SAFETY CODE §§ 111330, 111440, 111445. The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing." CAL. HEALTH & SAFETY CODE § 109995. Johnson & Johnson is a corporation and, therefore, a "person" within the meaning of the Sherman Act.

147. The business practices alleged above are unlawful under the Consumers Legal Remedy Act, CAL. CIV. CODE § 1750, *et seq.* ("CLRA"), which forbids deceptive advertising.

148. The business practices alleged above are unlawful under CAL. BUS. & PROF. CODE. § 17200, *et seq.* by virtue of violating CAL. BUS. & PROF. CODE. § 17500, *et seq.*, which forbids untrue advertising and misleading advertising.

28

149. There is no benefit to consumers or competition by deceptively marketing sunscreen products. Indeed, the harm to consumers and competition caused by Johnson & Johnson's deceptive marketing of the Sunscreens is substantial.

150. Plaintiff and other members of the putative Class had no way of knowing that the Sunscreens they bought were not actually as marketed. Thus, they could not have reasonably avoided the injury each of them suffered.

151. The gravity of the consequences of Johnson & Johnson's conduct as described above outweighs any justification, motive or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and it is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and other members of the putative Class.

152. Johnson & Johnson's deceptive marketing of the Sunscreens is likely to deceive reasonable consumers throughout the United States. Indeed, Plaintiff and other members of the putative Class were unquestionably deceived regarding the true danger of the Sunscreens, as Johnson & Johnson's marketing of the Sunscreens nowhere discloses that the Sunscreens may contain benzene, but instead portrays the Sunscreens as safe and healthy. Said acts are deceptive business acts and practices.

153. This deception caused Plaintiff and other members of the putative Class to purchase the Sunscreens. Had they known and understood the true nature and quality of the Sunscreens, Plaintiff and other members of the putative Class would not have purchased the Sunscreens.

154. As a result of the business practices described above, CAL. BUS. & PROF. CODE § 17203 entitles Plaintiff and other members of the putative Class to an order enjoining such future conduct on the part of Johnson & Johnson and such other solely injunctive or declaratory relief which may be necessary as a result of Johnson & Johnson's wrongful conduct.

155.     The above-described unlawful business acts and practices, and each of them, present a threat and reasonable likelihood of deception to Plaintiff and other members of the putative Class in that Johnson & Johnson has systematically perpetrated and continues to perpetrate such acts or practices on Plaintiff and other members of the putative Class by means of its deceptive manufacturing, marketing, distributing, and selling of the Sunscreens.

**ELEVENTH CAUSE OF ACTION**
**California Consumers Legal Remedies Act**
**(CAL. CIV. CODE § 1750, *et seq.*)**

156.     Plaintiff re-alleges and incorporates each of the paragraphs of this Complaint as if fully set forth herein.

157.     Plaintiff brings this claim against Johnson & Johnson for violation of CAL. CIV. CODE § 1750, *et seq.* ("CLRA") on behalf of herself and the members of the proposed Class.

158.     Johnson & Johnson's actions, representations, and conduct, as described above, and each of them, have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

159.     Plaintiff and others similarly situated will continue to suffer harm and are "consumers" as that term is defined by the CLRA in CAL. CIV. CODE § 1761(d).

160.     The Sunscreens that Plaintiff and members of the putative Class purchased from Johnson & Johnson were "goods" within the meaning of CAL. CIV. CODE § 1761(a).

161.     By engaging in the actions, misrepresentations, and misconduct set forth above, Johnson & Johnson has violated, and continues to violate, CAL. CIV. CODE § 1770(a)(5).

162.     Specifically, in violation of CAL. CIV. CODE § 1770(a)(5), Johnson & Johnson's acts and practices constitute deceptive methods of competition, in that it misrepresents the safety of the Sunscreens and omits that the Sunscreens contain a dangerous carcinogen.

30

163.    By engaging in the actions, misrepresentations, and misconduct set forth above, Johnson & Johnson has violated, and continues to violate, CAL. CIV. CODE § 1770(a)(7). Specifically, Johnson & Johnson's acts and practices constitute deceptive methods of competition in that Johnson & Johnson misrepresents the particular standard, quality, or grade of the Sunscreens, in violation of CAL. CIV. CODE § 1770(a)(7).

164.    By engaging in the actions, misrepresentations, and misconduct set forth above, Johnson & Johnson has violated, and continues to violate, CAL. CIV. CODE § 1770(a)(16). Specifically, in violation of CAL. CIV. CODE § 1770(a)(16), Johnson & Johnson's acts and practices constitute deceptive methods of competition, in that Johnson & Johnson represents that the Sunscreens have been supplied in accordance with a previous representation when they have not.

165.    Plaintiff requests that this Court enjoin Johnson & Johnson from continuing to employ the unlawful methods, acts, and practices alleged herein, and any other solely declaratory or injunctive relief the Court deems proper pursuant to CAL. CIV. CODE §§ 1780 and 1781.  If Johnson & Johnson is not restrained from engaging in these types of practices in the future, Plaintiff and other members of the putative Class will continue to suffer harm.

### TWELFTH CAUSE OF ACTION
### False Advertising Law
### (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

166.    Plaintiff re-alleges and incorporates each of the paragraphs of this Complaint as if fully set forth herein.

167.    Plaintiff brings this claim against Johnson & Johnson for violation of CAL. BUS. & PROF. CODE § 17500, *et seq.* on behalf of herself and the members of the proposed Class.

168.    At all material times, Johnson & Johnson engaged in a scheme of offering the Sunscreens for sale to Plaintiff and others similarly situated by way of, inter alia, commercial marketing.  These marketing materials misrepresented or omitted the safety of the Sunscreens and

31

the fact that they may contain benzene, a dangerous carcinogen. Said advertisements and inducements originated and were made from the State of California and come within the definition of advertising as contained in CAL. BUS. & PROF. CODE § 17500, *et seq.* in that such marketing materials were intended as inducements to purchase the Sunscreens and are statements disseminated by Johnson & Johnson to Plaintiff and other members of the putative Class and were intended to reach Plaintiff and other members of the putative Class. Johnson & Johnson knew, or in the exercise of reasonable care should have known, that these statements were untrue or misleading.

169. In furtherance of this plan and scheme, Johnson & Johnson has prepared and distributed from the State of California via commercial marketing, statements that deceptively represent the safety of the Sunscreens and omitted that a dangerous carcinogen may be present in the Sunscreens. Consumers, including Plaintiff and other members of the putative Class, necessarily and reasonably relied on these materials concerning the Sunscreens. Consumers, including Plaintiff and other members of the putative Class, were among the intended targets of such representations and omissions and would reasonably be deceived by such materials.

170. Johnson & Johnson's above acts, in disseminating deceptive and untrue statements from the State of California and throughout the United States to consumers, were and are likely to deceive reasonable consumers, including Plaintiff and other members of the putative Class, by obfuscating the true nature of the Sunscreens, all in violation of CAL. BUS. & PROF. CODE § 17500.

171. As a result of the above violations of CAL. BUS. & PROF. CODE § 17500, *et. seq.*, Johnson & Johnson has been unjustly enriched at the expense of Plaintiff and the members of the putative Class.

172. Pursuant to CAL. BUS. & PROF. CODE § 17535, Plaintiff and the putative Class are entitled to an order of this Court enjoining Johnson & Johnson from such future conduct, and such

32

other orders and judgments which may be necessary to disgorge Johnson & Johnson's ill-gotten gains and restore to any person in interest any money paid for the Sunscreens as a result of Johnson & Johnson's wrongful conduct.

### THIRTEENTH CAUSE OF ACTION
### Unjust Enrichment/Quasi-Contract

173.    Plaintiff re-alleges and incorporates herein each of the paragraphs of this Complaint as if fully set forth herein.

174.    Plaintiff brings this claim against Johnson & Johnson for unjust enrichment/quasi-contract on behalf of herself and the members of the proposed Class.

175.    Despite the serious risks of harm inherent in potentially exposing consumers to high levels of benzene, Johnson & Johnson has not disclosed these risks, and in fact has actively obfuscated the dangers of the Sunscreens by promising consumers the Sunscreens are safe.  Plaintiff and other members of the putative Class would not have bought the Sunscreens if they had known that the promises Johnson & Johnson made regarding the Sunscreens are false.

176.    As a result of Johnson & Johnson's deceptive marketing and labeling of its Sunscreens, Johnson & Johnson receives a benefit at the expense of Plaintiff and the putative Class, and it is unjust for Johnson & Johnson to retain that benefit.

177.    Under the circumstances, it is against equity and good conscience to permit Johnson & Johnson to retain the ill-gotten benefits that it received from Plaintiff and members of the putative Class in light of the fact that the Sunscreens they purchased were not what Johnson & Johnson represented the Sunscreens to be.  Thus, it is unjust or inequitable for Johnson & Johnson to retain the benefit without restitution to Plaintiff and other members of the putative Class.

178.    As a direct and proximate result of Johnson & Johnson's actions, Johnson & Johnson has been unjustly enriched. Plaintiff and other members of the putative Class have a right to restitution in an amount to be proven at trial.

33

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests individually and on behalf of the alleged Class, that the Court enter judgment in her favor and against Defendant as follows:

A.    An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

B.    An order enjoining Defendant from selling the Sunscreens;

C.    An order declaring the Defendant's conduct violates the causes of action referenced herein;

D.    An order finding in favor of Plaintiff and the Class on all counts asserted herein;

E.    Compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    Prejudgment interest on all amounts awarded;

G.    An order of restitution and all other forms of equitable monetary relief;

H.    Injunctive relief as pleaded or as the Court may deem proper;

I.    Creation of a trust fund for the purposes of medical monitoring; and

J.    An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff requests a trial by jury of all claims alleged herein so triable.

AMENDED CLASS ACTION COMPLAINT

Dated: November 5, 2021

/s/ James M. Terrell
METHVIN, TERRELL, YANCEY, STEPHENS &
MILLER, P.C.
James M. Terrell (*Admitted pro hac vice*)
Courtney C. Gipson (*Admitted pro hac vice*)
jterrell@mtattorneys.com
cgipson@mtattorneys.com
2201 Arlington Avenue South
Birmingham, Alabama 35205
Tel: (205) 939-0199
Fax: (205) 939-0399

LAWRENCE G. PAPALE (SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
lgpapale@papalelaw.com
1308 Main Street, Suite 117
Saint Helena, CA 94574
Tel: (707) 963-1704

*Attorneys for Plaintiff Elizabeth Bodle*

## CERTIFICATE OF SERVICE

I certify that on November 5, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and sent via U.S. Mail, first class postage prepaid, a true and correct copy of the filing to the parties listed below:

Johnson & Johnson Consumer, Inc.
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

/s/ James M. Terrell
OF COUNSEL

AMENDED CLASS ACTION COMPLAINT