## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS CHABLA, JESSICA BARTON, BRYAN CLINGER, MONICA BARBA, LISA ZAYAS, DEBORAH JEAN, and SEBE ALGOFI on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-01040 (JAM) |
| Plaintiffs, | |
| v. | June 28, 2022 |
| EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, and SUN PHARMACEUTICALS, LLC. | |
| Defendants. | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.      Plaintiffs lack Article III standing and standing to pursue injunctive relief.............. 1
    A.      Two other federal district courts have dismissed similar claims for failing to
        allege the purchased products contained benzene. .................................................. 1
    B.      Plaintiffs lack standing to pursue injunctive relief because they have alleged that
        they will not purchase any product that contains or may contain benzene............ 3

II.     Plaintiffs' claims are preempted. ....................................................................... 5
    A.      Plaintiffs' attempt to enforce the FDCA is barred. ................................................. 5
    B.      Plaintiffs' claims are impliedly preempted because they depend on the FDCA for
        existence............................................................................................................... 6
    C.      Plaintiffs attempt to impose requirements different from or in addition to FDA
        regulations. ............................................................................................................ 6
        1.      Plaintiffs' attempt to bring claims based on an incorrect interpretation of
            the FDCA is preempted. ........................................................................... 7
        2.      Plaintiffs' attempt to create and enforce a 0.0 ppm benzene standard is
            preempted................................................................................................. 8
        3.      Plaintiffs cannot use non-FDCA-compliant testing to enforce the FDCA. 9
        4.      Regardless of why trace amounts of benzene were allegedly found in
            Banana Boat® sunscreen products, there is no violation of the FDCA.... 11

III.    Plaintiffs' claims are subject to the FDA's primary jurisdiction. ............................. 11
IV.     Plaintiffs fail to satisfy the heightened Rule 9(b) pleading standard. ........................ 14
V.      Plaintiffs have not pled claims upon which relief can be granted under Rule
    12(b)(6). ...................................................................................................................... 16
    A.      Plaintiffs' breach of express warranty claim fails because they do not identify the
        terms of any express warranty. ............................................................................ 16
    B.      Plaintiffs' fraudulent nondisclosure claim fails because Defendants were under no
        duty to disclose the potential existence of trace amounts of benzene................... 18
    C.      Plaintiffs' unjust enrichment claim fails because nothing about the transactions
        was unjust and because Plaintiffs do not allege that they directly conferred a
        benefit on Defendants. ......................................................................................... 19
    D.      Plaintiffs' claims to do not meet the reasonable consumer standard. ................... 20
    E.      Plaintiffs' GBL claims fail because they do not allege facts establishing
        Defendants' knowledge of undisclosed information or establishing injury. ........ 22
    F.      Plaintiffs' state law consumer protection claims fail because they do not allege
        causation. ............................................................................................................. 23
    G.      Plaintiffs fail to allege ascertainable loss as required under the OUTPA or
        UTPCPL............................................................................................................... 24
    H.      The FDUTPA's Safe Harbor precludes Plaintiffs' FDUTPA claims. .................. 24
    I.      Plaintiffs' request for medical monitoring fails because they do not allege actual
        personal injury. .................................................................................................... 24

CONCLUSION ........................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co*.,
   2013 WL 7044866 (E.D.N.Y. July 18, 2013) .......................................................2, 5

*Axon v. Citrus World, Inc.*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat.
   Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ....................................................21

*Axon v. Florida's Nat. Growers, Inc.*,
   813 F. App'x. 701 (2d Cir. 2020) .......................................................................5, 22

*Bartone v. Robert L. Day Co.*,
   232 Conn. 527 (1995) .......................................................................................14, 15

*Bodle v. Johnson & Johnson Consumer Inc.*,
   No. 21-cv-07742-EMC, Dkt. #28 (N.D. Cal., Feb. 24, 2022) ...............................1, 2

*Buonasera v. Honest Co., Inc*.,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016).......................................................................5

*Carter v. HealthPort Technologies, Inc.*,
   822 F.3d 47 (2d Cir. 2016).......................................................................................10

*Cohen v. S.A.C. Trading Corp*.,
   711 F.3d 353 (2d Cir. 2013).....................................................................................14

*Corra v. Energizer Holdings, Inc.*,
   962 F. Supp. 2d 1207 (E.D. Cal. 2013)....................................................................12

*Dapeer v. Neutrogena Corp.*,
   95 F. Supp. 3d 1366 (S.D. Fla. 2015) ......................................................................12

*Dimuro v. Estee Lauder Companies, Inc.*,
   No. 3:12-cv-01789-AVC, 2013 WL 12080901 (D. Conn. Nov. 22, 2013)...............1

*Dougan v. Sikorsky Aircraft Corp.*,
   No. X03-HHD-CV12-6033069, 2017 WL 7806431 (Conn. Super. Mar. 28,
   2017), *aff'd on other grounds by Dougan v. Sikorsky Aircraft Corp.*, 251 A.3d
   583 (Conn. 2020) ......................................................................................................25

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 158 (2d Cir. 2004)......................................................................................16

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)................................................................................20

*Friends of the Earth v. Sanderson Farms, Inc.*,
    2018 WL 7197394 (N.D. Cal. Dec. 3 2018) .......................................................21

*Goldemberg v. Johnson & Johnson Consumer Co, Inc.*,
    317 F.R.D 374 (S.D.N.Y. 2016) ..........................................................................4

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ...............................................................12, 23

*Granito v. IBM*,
    34 Conn. L. Rptr. 485 (Conn. Supr. Ct. 2003).....................................................20

*Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*,
    231 Conn. 276 (1994) ..........................................................................................19

*Hughes v. Ester C Co.*,
    930 F. Supp.2d 439 (E.D.N.Y. 2013) ...................................................................1

*Izquierdo v. Panera Bread Co.*,
    450 F. Supp. 3d 453 (S.D.N.Y. 2020).......................................................21, 22, 23

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017)...................................................................................2

*In re Johnson & Johnson Sunscreen Marketing Sales Practices and Product
    Liability Litigation*,
    No. 0:21-md-03015-Singhal , Dkt. #55 (S.D. Fla. Dec. 17, 2021)........................21

*Landau v. Viridian Energy PA LLC*,
    223 F. Supp. 3d 401 (E.D. Pa. 2016) ..................................................................14

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
    95 F. Supp. 3d 284 (D. Conn. 2015)........................................................12, 20, 21

*Layton v. Lester*,
    No. CV085023289S, 2011 WL 522887 (Conn. Supr. Ct. 2011)............................20

*Lucas v. Subaru of America, Inc.*,
    No. CV030476082S, 2005 WL 1155009 (Conn. Supr. Ct. Apr. 20, 2005)............16

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)..................................................................................10

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)...................................................................................5

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991)...................................................................................14, 15

*O'Neill v. Standard Homeopathic Co.*,
  346 F. Supp.3d 511 (S.D.N.Y. 2018)..................................................................................2

*OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*,
  503 F. Supp. 2d 490 (D. Conn. 2007).............................................................14, 16

*Oden v. Boston Scis. Corp.*,
  330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................23

*Organic Consumers Ass'n v. Bigelow Tea Co.*,
  2018 D.C. Super. LEXIS 11 (D.C. Super. Ct. Oct. 31, 2018) ...............................21

*Parker v. Colgate-Palmolive Co.*,
  No. X08CV030193798S, 2003 WL 22205061 (Conn. Supr. Ct. 2003) ...................19

*Patane v. Nestlé Waters N. Am., Inc.*,
  314 F. Supp.3d 375 (D. Conn. 2018) ..............................................................1, 3

*Pichardo v. Only What You Need, Inc.*,
  No. 20-cv-493-VEC, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) ........................23

*Schloegel v. Edgewell Personal Care Co.*,
  No. 4:21-cv-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ...................1, 2

*Segovia v. Vitamin Shoppe, Inc.*,
  No. 14-CV-7061-NSR, 2016 WL 8650462 (S.D.N.Y. Feb. 5, 2016) ......................23

*Silva v. Hornell Brewing Co.*,
  No. 20-CV-756 (ARR) (PL), 2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020) .............5

*Tran v. Sioux Honey Assoc., Cooperative*,
  No. 8:17-cv-110-JLS, 2018 WL 10612686 (C.D. Cal. Aug. 20, 2018)....................20

*VanAlstine v. Diversified Farms, LLC*,
  No. 351993, 2021 WL 1711607 (Mich. Ct. App. Apr. 29, 2021) ............................17

*Weaver v. Chrysler Corp.*,
  172 F.R.D. 96 (E.D.N.Y. 1997)...............................................................................22

*Woods v. Maytag Co.*,
  No. 10-cv-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ..............................22

*Zito v. United Techs. Corp.*,
  No. 3:15-CV-744 (AWT), 2016 WL 2946157 (D. Conn. Mar. 11, 2016), *aff'd*
  673 Fed. Appx. 117 (2d Cir. 2016).......................................................................22

**Statutes**

Conn. Gen. Stat. § 42a-2-313.....................................................................................17

Food, Drug, and Cosmetic Act (FDCA) ................................................................ *passim*

**Regulations, Rules, and Guidance**

21 C.F.R. § 201.10(b) .............................................................................................7

21 C.F.R. § 201.66(b)(8) .........................................................................................8

21 C.F.R. 210.3(b)(8) ...........................................................................................8

21 C.F.R. 314.3 ..................................................................................................8

Fed. R. Civ. P. 8 .............................................................................................14, 16

Fed. R. Civ. P. 9(b) ......................................................................................14, 15, 16

Fed. R. Civ. P. 12(b)(1)......................................................................................3, 10, 11

Fed. R. Civ. P. 12(b)(6).........................................................................................10, 16

Food and Drug Administration, *News Release*, *"FDA alerts drug manufacturers
to the risk of benzene contamination in certain drugs,"* December 23, 2021,
available at https://www.fda.gov/drugs/pharmaceutical-quality-
resources/fdaalerts-drug-manufacturers-risk-benzene-contamination-certain-
drugs (last accessed June 22, 2022) ..................................................................9, 11, 13

Food and Drug Administration, *Warning Letter to MB Solutions*, July 22, 2021,
available at https://www.fda.gov/inspections-compliance-enforcement-and-
criminal-investigations/warning-letters/mb-solutions-llcbiospectrum-cbd-
610649-07222021 (last accessed June 22, 2022).....................................................8

Food and Drug Administration, *Frequently Asked Questions on Benzene
Contamination in Drugs*, updated June 6, 2022, available at
https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-
questions-benzene-contamination-drugs (last accessed June 22, 2022)......................9, 11, 12

**Other Authorities**

Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products,
Valisure, LLC, May 24, 2021 ........................................................................2, 3, 13

Valisure's Response to the Report of Inspection, July 27, 2021 ...................................10

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition" or "Opp.") fails to address the fatal deficiencies in Plaintiffs' Consolidated Amended Class Action Complaint ("Consolidated Complaint" or "CAC"), as identified in Defendants' Memorandum in Support of its Motion to Dismiss, ("Memorandum" or "Memo.").

## I.      Plaintiffs lack Article III standing and standing to pursue injunctive relief.

### A.      Two other federal district courts[1] have dismissed similar claims for failing to allege the purchased products contained benzene.

As in *Schloegel* and *Bodle*, Plaintiffs simply lack Article III standing.  Despite multiple opportunities, Plaintiffs Clinger, Barba, Zayas, Jean, and Algofi failed to allege the product they purchased *actually contained benzene.* Plaintiffs Barton and Chabla failed *to plausibly* allege the product that they purchased *actually contained benzene.* What a plaintiff must do, and what these Plaintiffs fail to do, is plausibly allege that their product actually contained benzene, which they allege would render it of "no value." [2] CAC ¶ 14; *see Dimuro v. Estee Lauder Companies, Inc.*, No. 3:12-cv-01789-AVC, 2013 WL 12080901, at *3 (D. Conn. Nov. 22, 2013); *Schloegel*, 2022 WL 808694, at *2; *Bodle*, No. 21-cv-07742-EMC, Dkt. #28 at 1.

Relying on *Patane*, Plaintiffs argue that they need not allege the bottle of sunscreen they purchased contained benzene because allegations of "overpayment for a consumer good that was deceptively labeled" are sufficient to establish standing. Opp. at 14; *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp.3d 375, 380 (D. Conn. 2018) (Meyer, J.). But the critical distinction between Plaintiffs' claims and the claims in *Patane* is that in *Patane* the consumers alleged that not a single bottle of Poland Spring contained "spring water." [3] The logical corollary was that every bottle of

---

[1] *See Schloegel v. Edgewell Personal Care Co.*, 4:21-cv-00631-DGK, 2022 WL 808694, at *2-3 (W.D. Mo. Mar. 16, 2022); *Bodle v. Johnson & Johnson Consumer Inc.*, 21-cv-07742-EMC, Dkt. #28 at 1 (N.D. Cal., Feb. 24, 2022).

[2]   As discussed *infra*, § II, even trace amounts of benzene would not render the product of "no value". The FDCA allows for up to 2 ppm of benzene to be present in the products.

[3] Plaintiffs cite to out-of-district cases that are all distinguished on the same basis as *Patane. See Hughes v. Ester C Co.,* 930 F. Supp.2d 439, 453-54 (E.D.N.Y. 2013) (plaintiffs allege economic harm based on deceptive statements

Poland Spring purchased by the consumers was falsely labeled. Thus, when this Court assessed the consumers' allegations of injury, there was no question that "[i]f Nestlé indeed mislabeled its water . . .", then the consumer had bought a mislabeled product. *Id.* at 380. In this case, as in *Schloegel* and *Bodle*, no equivalent corollary can be drawn. Plaintiffs neither allege that the bottles they purchased contained benzene nor allege that all bottles of sunscreen contained benzene.

Plaintiffs cannot overcome their deficient allegations by characterizing the Valisure Citizen Petition as "representative testing." *See* Opp. at 16. Plaintiffs' own cited authority does not support such conjecture. This is not a case where an investigation revealed 89 percent of the products were "systematically and routinely mislabeled and overpriced," like in *John v. Whole Foods Mkt. Grp., Inc.,* 858 F.3d 732, 737 (2d Cir. 2017). Here, Valisure tested 19 bottles of Banana Boat® sunscreen: 14 of the bottles had zero benzene or tested lower than the 0.1 ppm LLOQ and only 5 of the bottles contained trace amounts of benzene of up to 0.43 ppm. Valisure's Citizen Petition at 13-15 and Att. A.[4] Further, Plaintiffs' assertion that the "Valisure report demonstrated that many sunscreen products, including Defendants', have been routinely contaminated with benzene" is blatantly incorrect and unsupported by Valisure's report. Opp. at 17. By its own admission, Valisure disclaimed that its testing provided information about any other sunscreen product other than the specific bottles that were tested under non-cGMP conditions and "make[s] no claim or indication of the relative…suitability of…the samples as compared with other subsets, batches,

___

concerning immune support based on effectiveness of a particular ingredient that was indisputably in *every* product); *O'Neill v. Standard Homeopathic Co.,* 346 F. Supp.3d 511, 525 (S.D.N.Y. 2018) (plaintiffs allege economic harm based on the fact that the product *they purchased* was recalled by the FDA because of contamination issues); *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15 (E.D.N.Y. July 18, 2013) (plaintiffs allege economic harm based on a misrepresentation that its product was not merely "another sugary soft drink" based on nutrition facts common across *all* products). In each of these cases, it was pled that every product—and thus, necessarily, the product purchased by plaintiffs—was deceptively marketed. No similar allegation is made here.
[4] An unidentified laboratory purportedly found trace benzene in two bottles of Banana Boat® sunscreen. CAC ¶ 46. Plaintiffs fail to provide, among other things, any allegations regarding the number of bottles tested or if Plaintiffs were the actual purchasers of said products.

lots, brands, formulations, or treatments." Ex. C to the McCurdy Decl., p. 3.[5] This disclaimer belies Plaintiffs' assertion that Valisure's testing may be regarded as representative.

Simply put, Plaintiffs cannot fix their failure to allege (or plausibly allege) in their Consolidated Complaint that the products they purchased contained benzene by relying on inapposite authorities like *Patane*, mischaracterizing Valisure's Citizen Petition as "representative testing," misconstruing Defendants' arguments[6], making conclusory statements[7], or adding new allegations[8] in their Opposition. Without allegations that the sunscreen Plaintiffs purchased contained benzene, Plaintiffs have only alleged a conjectural and hypothetical *risk* of injury that relies entirely on the speculation that there is a *risk* they purchased sunscreen containing benzene because 5 out of 19 bottles tested allegedly contained trace amounts of benzene. As such, no injury-in-fact exists.

**B.  Plaintiffs lack standing to pursue injunctive relief because they have alleged that they will not purchase any product that contains or may contain benzene.**

Plaintiffs lack standing to pursue injunctive relief because they allege they would never purchase Banana Boat® products that contain or may contain trace amounts of benzene. *See* CAC ¶ 178 ("Plaintiffs and Class members would not have bought the Products if they had known the

---

[5] The Court may consider the FDA's Report of Inspection and Valisure's Response under Rule 12(b)(1), which were properly characterized by Defendants and are relevant to their standing, preemption, and primary jurisdiction arguments. *See infra*, § II.B.

[6] The idea that plaintiffs must investigate what substances are actually present in their product to state a claim is false. Plaintiffs' attempt to make a prudential argument—that this Court should find standing because if they must allege that Defendants' products actually contained trace amounts of benzene, the only way they could "be certain their Products are safe to use" would be to "spend hundreds of dollars or more for forensic testing of bottles of sunscreen that retail below ten dollars"—is unavailing and undermined by the fact that Plaintiffs' counsel purportedly had 2 bottles of sunscreen that were not even purchased by Plaintiffs tested by an unidentified laboratory. Opp. at 16; CAC ¶ 46. What Plaintiffs must do, however, is make plausible allegations establishing an injury-in-fact.

[7] To be clear, Defendants do not concede that benzene may be in the specific bottles of sunscreen purchased by Plaintiffs—a conclusory pleading unsupported by any plausible fact allegations or citation. *C.f.* Opp. at 15.

[8] Plaintiffs allege in their Consolidated Complaint that "Defendants have not recalled the Products," CAC ¶ 55, and then attempt to make new allegations regarding a recall of products recalled in a foreign country. Opp. at 18. Plaintiffs cannot remedy deficient allegations in their Consolidated Complaint with new factual allegations in their Opposition. In any event, Plaintiffs do not allege that they have purchased any products in a foreign country.

3

Products contained or may contain benzene[.]"). Plaintiffs did not ask to enjoin Defendants from manufacturing Banana Boat® products that contain or may contain trace amounts of benzene. Thus, even if Plaintiffs received their requested injunctive relief—disclosure of trace benzene— they still would not purchase Banana Boat® products and are thus not at risk of future injury. *Id.*

Rather than address the substance of this argument, Plaintiffs repeat that "they continue to have use for sunscreen products, they want to purchase the Products in the future, and absent injunctive relief in the form of accurate labeling, they would not be able to know or trust that Defendant will truthfully and legally label the Products." Opp. at 19. Again, Plaintiffs have alleged that they would never purchase Banana Boat® products that contain or may contain trace amounts of benzene yet do not request relief that would require Defendants to ensure that no amount of benzene could be present in those products. CAC ¶ 178.

Plaintiffs cite *Goldemberg v. Johnson & Johnson Consumer Co, Inc.*, 317 F.R.D 374 (S.D.N.Y. 2016) in an effort to save their request for injunctive relief. In *Goldemberg*, the district court found that allegations that plaintiffs "would continue to purchase the Products in the future if the misleading labeling is corrected…is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm." *Id.* at 397 (internal quotations omitted). Far from supporting Plaintiffs' request for injunctive relief, *Goldemberg* aptly demonstrates why such relief is unavailable here. Although Plaintiffs, similarly to those in *Goldemberg*, pled an inchoate desire to buy Banana Boat® products in the future, they also pled facts establishing that they would not buy Banana Boat® products even if they attain their requested relief. *See* CAC ¶ 178. Because the injunction they request would not enable Plaintiffs to purchase Banana Boat® products again, Plaintiffs face no threat of future harm.[9]

---

[9] *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701, 703 (2d Cir. 2020) further demonstrates the weakness of Plaintiffs' injunctive standing argument. If, as Plaintiffs acknowledged, it is "unsettled in this Circuit" whether

Plaintiffs further attempt to distinguish the facts of this case from *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), arguing that the Second Circuit only found a lack of injunctive standing there because "Nicosia failed to allege that he intends to use Amazon in the future to buy *any* products, let alone food or drug products generally or weight loss products in particular", *id.*, at 239; whereas here, "Plaintiffs have alleged a non-speculative intent to buy the challenged Products in the future," Opp. at 20. Plaintiffs mischaracterize their own Consolidated Complaint in this regard—they squarely alleged they will never buy Banana Boat® products that contain or may contain benzene yet only request that Defendants change their labeling, as opposed to their manufacturing practices. *Nicosia* supplies the rule of decision in this case, which forecloses Plaintiffs' standing to pursue injunctive relief.[10] Because Plaintiffs have pled facts foreclosing the threat of future harm, the Court should find they lack standing to pursue injunctive relief.

## II.     Plaintiffs' claims are preempted.

Plaintiffs' claims fail to fit within the narrow gap of claims that are not preempted because (1) Plaintiffs attempt to enforce the FDCA; (2) Plaintiffs' claims are based on conduct that violates the FDCA and depend on the FDCA for their existence; and (3) Plaintiffs would impose requirements different from or in addition to what is required under the FDCA. Memo. at 19-37.

### A.     Plaintiffs' attempt to enforce the FDCA is barred.

Plaintiffs' assertion that their "claims are not brought to enforce the FDCA" is

---

"Plaintiffs seeking injunctive relief for consumer deception have standing where they allege that they would buy the products in the future if not mislabeled," it is certainly settled that Plaintiffs seeking injunctive relief for consumer deception claims do *not* have standing where they allege facts establishing that they would *not* buy the products in the future even if they were accurately labeled.

[10] Plaintiffs also cite *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *15 n.15 (E.D.N.Y. July 18, 2013), where a district court observed in a footnote that "plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer" without any apparent mention of the harm of future injury.  First, the case is distinguishable because there, plaintiffs do not categorically foreclose the possibility of future harm. Second, the case has been consistently called into question by other district courts and does supply persuasive authority. *See Silva v. Hornell Brewing Co.,* No. 20-CV-756 (ARR) (PL), 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 565 (S.D.N.Y. 2016) ("the Court declines to follow the reasoning in *Ackerman* as Second Circuit precedent dictates otherwise.").

disingenuous: Plaintiffs explicitly allege at least 15 times in their Opposition that Defendants violated the FDCA and Plaintiffs' Consolidated Complaint contains more than 66 paragraphs of allegations detailing every way in which Banana Boat® sunscreen products supposedly violate federal regulations. *See generally* Opp.; CAC ¶¶ 56-122.

> **B.      Plaintiffs' claims are impliedly preempted because they depend on the FDCA for their existence.**

Plaintiffs attempt to escape preemption by arguing that their claims[11] are premised on "substantively identical" parallel state laws. But Plaintiffs fail to identify a single state law that (1) requires that sunscreen products include benzene in the ingredient list if there is a risk that the products may contain trace amounts of benzene; (2) requires manufacturers to disclose that sunscreen products may contain trace amounts of benzene; (3) states sunscreen products are not safe if they may contain trace amounts of benzene; or (4) states sunscreen products are illegally sold if they may contain trace amounts of benzene. Plaintiffs admit that "the acts and omissions creating liability under each theory similarly violated the [FDCA] and pertinent regulations." Opp. at 2.

> **C.      Plaintiffs attempt to impose requirements different from or in addition to FDA regulations.**

Plaintiffs attempt to escape preemption by offering misinterpretations of the applicable FDCA regulations[12] that are entirely incompatible with the FDA's recent statements regarding the

---

[11] Plaintiffs premise their claims on the following allegations: (1) benzene was not identified in the ingredient list on Banana Boat® sunscreen products; (2) Defendants did not disclose or warn that Banana Boat® sunscreen products may contain trace amounts of benzene; (3) Banana Boat® sunscreen products are not safe because they may contain trace amounts of benzene; (4) Banana Boat® sunscreen products were illegally sold because they may contain trace amounts of benzene. *See* Opp. at 2-5.

[12] Plaintiffs incorrectly assert that under the FDCA: (1) Banana Boat® sunscreen products are adulterated, misbranded, or a new drug; (2) benzene is an ingredient in Banana Boat® sunscreen products; (3) Defendants were required to disclose or warn on the ingredients list that Banana Boat® sunscreen products contain or may contain trace amounts of benzene; (4) any amount of benzene renders the products unsafe; and (5) the 2 ppm benzene standard does not apply to Banana Boat® sunscreen products. *See* Memo at § II.

potential presence of benzene in sunscreen. Plaintiffs offer these misinterpretations because to fit within the narrow gap of claims that are not preempted they must allege state law claims that are also violations of the FDCA, yet do not create legal obligations different than or in addition to what the FDCA requires. *See* Memo at § II. Plaintiffs' claims do not fit within this narrow gap: Plaintiffs' state law claims, if successful, would create requirements that are different from and in addition to what is required under the FDCA. *Id*.

> **1.   Plaintiffs' attempt to bring claims based on an incorrect interpretation of the FDCA is preempted.**

Plaintiffs' argument—that the sunscreen product must list benzene as an ingredient or state that it may contain benzene if it is present in any amount—is blatantly incorrect. *See* Memo at § II.A. (explaining that benzene is not an inactive ingredient because an "inactive ingredient" is any component that is not an active ingredient and "component" is "any ingredient intended for use in the manufacture of a drug product, including those that may not appear in such drug product."). First, Plaintiffs deceptively provide only an excerpt from 21 C.F.R. § 201.10(b) in support of their incorrect interpretation. *Compare* Opp. at 27 ("[t]he term ingredient applies to *any substance in the drug*[.]") *with* 21 C.F.R. § 201.10(b) ("The term ingredient applies to any substance in the drug, whether added to the formulation as a single substance or in admixture with other substances."). Read in full, this provision was not intended to define "ingredient" as "any substance in the drug" but rather intended to clarify that ingredients are any substances intentionally *added* to a formulation, alone or in admixture with other substances.

Second, Plaintiffs take out of context a recent statement by the FDA that "[d]rug products only contain 'active ingredients' or 'inactive ingredients.'" Opp. at 6-7. This statement was made in a warning letter admonishing a manufacturer of OTC CBD products for listing CBD as neither an active nor an inactive ingredient on the label, but rather in a new category ("other ingredients").

The FDA admonished the manufacturer for not properly classifying a substance *intentionally added to the product*; it was emphatically not stating that every substance that *could* be in a product in trace amounts is either an active or inactive ingredient.[13]

Third, Plaintiffs attempt to escape the correct definition of component by asserting that it applies in the manufacturing, but not the labeling, context. This nonexistent distinction is not only unsupported by case law, but belied by the FDA's own regulations and materials.[14] The FDA does not distinguish between the definition of inactive ingredient used in the FDA's labeling regulations and the definition used in its manufacturing regulations.[15] Accordingly, Plaintiffs' assertion that "Defendants *could have* complied with both state law and the FDCA had it disclosed that the Products contained or may contain the inactive ingredient benzene" is wrong because such disclosure is a different requirement than what is required under the FDCA. *Compare* Memo. at 21-27 *with* Opp. at 26.

> ## 2.      Plaintiffs' attempt to create and enforce a 0.0 ppm benzene standard is preempted.

Plaintiffs' argument—that any amount of benzene in sunscreen products renders the sunscreen unsafe, misbranded, adulterated, of bad quality, and bad integrity—is incorrect and contrary to applicable FDA standards. *Compare* Memo. at § II.  *with* Opp. at 31-35. Plaintiffs entirely ignore the FDA's recent statements, issued in response to the potential presence of benzene

---

[13]  Food and Drug Administration, *Warning Letter to MB Solutions* (July 22, 2021), available at https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/mb-solutions-llcbiospectrum-cbd-610649-07222021 (last accessed June 22, 2022).

[14]  The FDA's Center for Drug Evaluation and Research confirms that inactive ingredients are only those intentionally used. *See e.g.* "Bringing an Over-the Counter (OTC) Drug to Market" ("Training Module", available at https://www.accessdata.fda.gov/scripts/cder/training/otc/topic5/images/factor%205.pdf (last accessed June 22, 2022).

[15]  *Id.* (Current regulations (21 C.F.R. § 201.66(b)(8) and 210.3(b)(8)) define an "inactive ingredient" as any component other than an "active ingredient." Some typical inactive ingredients act as, among other things: color additives, denaturing agents, dispersing agents, etc.) Further, the FDA uses the same definition of component in rules relating to new drug product applications, demonstrating that the definition is consistent across the regulations. *See* 21 C.F.R. 314.3 defining "inactive ingredient" as "any component other than an active ingredient" and "component" as "any ingredient *intended for use in the manufacture of a drug product*, including those that may not appear in such drug product".

in some sunscreen products, which highlight the fact that the FDA allows for trace amounts of benzene to be present in sunscreen products. In FAQs updated as recently as June 6, 2022,[16] the FDA stated that "[i]n 2020, FDA identified the potential for unacceptable levels of benzene in certain carbomers (which may be used as thickening agents in drugs) based on the allowable limits in USP monographs." The FDA further stated on December 23, 2021[17] that "[d]rug manufacturers with a risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene at or above 2 ppm, consistent with the recommendations described in ICH Q3C." *Id*. The FDA's use of the phrases, "unacceptable levels of benzene," "allowable limits," and "at or above 2ppm" indicates there is an allowable amount of benzene in sunscreen products and thus confirms that Plaintiffs are misinterpreting the applicable standards and regulations to invent a 0.0 ppm benzene standard. Plaintiffs' use of state law claims to create and enforce a 0.0 ppm benzene standard for safety contradicts the FDA's recent articulations of its own regulations and is thus preempted.

> 3.    **Plaintiffs cannot use non-FDCA-compliant testing to enforce the FDCA.**

Plaintiffs attempt to use testing that is not compliant with the cGMP (the testing standard used by the FDA when assessing the safety of OTC drug products) to allege that Banana Boat® sunscreen products violate FDA regulations. Plaintiffs do not attempt to allege that Valisure or the unidentified laboratory complied with cGMP requirements. Plaintiffs dismiss this critical issue as a "red herring," Opp. at 13; but it is anything but—indeed, their entire case rests on an attempt to use non-cGMP compliant testing to allege that Banana Boat® sunscreen products do not comply

---

[16] Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed June 22, 2022).

[17] Food and Drug Administration, *News Release*, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*," December 23, 2021, available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed June 22, 2022).

with FDA regulations. Plaintiffs' claims are clearly preempted.

Plaintiffs ask the Court to ignore the FDA's "FOIA Documents," not because their validity is questioned, but because the Court supposedly cannot consider them. Plaintiffs argue that under Rule 12(b)(6) the Court may only consider facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, or matters fit for judicial notice. Plaintiffs argue that because the FOIA documents do not fall within any of those categories, they must be ignored.

This argument fails because Defendants are asking the Court to recognize these documents under Rule 12(b)(1), not 12(b)(6). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Plaintiffs cite *Carter v. HealthPort Technologies, Inc.*, 822 F.3d 47, 57 (2d Cir. 2016) to support the proposition that extrinsic evidence bearing on the Court's subject-matter jurisdiction should be ignored when the motion to dismiss is based totally in law "and not in contradiction of fact" and then state that Defendants' motion is "entirely facial." Opp. at 12. It is true that when a 12(b)(1) motion is "based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden[,]" and that any extrinsic evidence in that limited context may be safely ignored. *Carter*, 822 F.3d at 56. However, Defendants' Memorandum lodges factual attacks on this Court's subject-matter jurisdiction. The FOIA Documents attached to the Memorandum support a factual attack on the Court's subject matter jurisdiction via Defendants' 12(b)(1) standing and preemption arguments. As *Carter* makes clear, "a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Id.* at 57. Because Plaintiffs' assertion that Defendants' Rule 12(b)(1) arguments are "entirely facial" is incorrect, their argument that the FOIA Documents constitute improper extrinsic evidence fails.

Defendants properly characterized the Report of Inspection and Valisure's Response, both of which are relevant to its 12(b)(1) arguments. Defendants accurately summarized the Report, which stated that Valisure failed to comply with cGMP requirements, failed to properly calibrate its equipment to detect benzene, and failed to adequately validate or verify its testing methods in accordance with cGMP. Plaintiffs argue Valisure was not required to comply with cGMP requirements and was certified under a different testing standard, but the point of Defendants' briefing was to establish Valisure's non-compliance with the FDA's cGMP standard. It is Plaintiffs, not Defendants, who have "[distorted] the factual reality" by attempting to distract the Court from the simple fact that the FDA found Valisure was miscalibrating the equipment it used to detect benzene and was not complying with cGMP standards. Opp. at 13. And far from being irrelevant, the documents are evidence that Plaintiffs impermissibly seek to impose testing standards different from the FDA's through their state law claims. *See* Memo. at 7-8, 15, 32.

4.      **Regardless of why trace amounts of benzene were allegedly found in Banana Boat® sunscreen products, there is no violation of the FDCA.**

Plaintiffs attempt to distract this Court and delay a preemption ruling by making assertions that their claims hinge on fact issues and by providing alternative theories of how or why certain Banana Boat® sunscreen products allegedly contain trace amounts of benzene. *See e.g.* Opp. at 8, 22-25, 31. But it does not matter why trace amounts of benzene may or may not be in certain Banana Boat® products. The FDA clearly allows up to 2 ppm of benzene in sunscreen products.[18]

## III.    Plaintiffs' claims are subject to the FDA's primary jurisdiction.

The clear dispute between the Plaintiffs' interpretation of the FDCA and Defendants'

---

[18] Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, accessible at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed June 22, 2022); Food and Drug Administration, News Release, "FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs," December 23, 2021, available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed June 22, 2022).

interpretation of the FDCA highlights precisely why this Court should defer to the FDA's primary jurisdiction when determining whether Banana Boat® sunscreen products "were adulterated, misbranded, and/or an unapproved new drug under the [FDCA]", CAC ¶ 144(b) and were safe to market even if there was a risk that they contained trace amounts of benzene. The Court should defer to the FDA's primary jurisdiction regarding the application of the 2 ppm standard and whether the FDCA requires manufacturers to disclose that sunscreen products may contain trace amounts of benzene. Each of these determinations fall squarely within technical and policy areas in which the FDA has extensive and exclusive expertise and discretion. *See* Memo. at § II-III. The FDA is in the best position to provide answers to these questions that are consistent across jurisdictions.[19]

Plaintiffs cannot credibly characterize their claims as "hing[ing] on whether the Products' labeling is truthful and non-deceptive" when they explicitly claim the label is untruthful and deceptive because it violates the FDCA. Opp. at 40. The cases cited by Plaintiffs are inapplicable because the plaintiffs in each of those cases alleged that certain marketing phrases, such as "natural protection" or "superior sun protection" were false and misleading.[20]  In contrast, Plaintiffs' claims do not hinge on any marketing statements. Rather, Plaintiffs allege that Defendants' failure to include "benzene" on the ingredient list was false and misleading and violated the FDCA.[21] This

---

[19] In the time that Plaintiffs have collectively filed 10 iterations of their claims, the FDA has been "working with companies, when appropriate, to recall products and encourage retailers to remove products from store shelves and online marketplaces when quality issues arise." *See Frequently Asked Questions on Benzene Contamination in Drugs, FDA*, accessible at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed June 22, 2022). The Court should decline the opportunity to potentially conflict with the FDA's ongoing efforts to regulate in this area.

[20] *See e.g., Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 291 (D. Conn. 2015) (plaintiffs claimed the phrase "natural protection" was misleading)*; Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 476 (S.D.N.Y. 2014) (plaintiffs claimed the phrase "active naturals" was misleading); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1370 (S.D. Fla. 2015) (plaintiffs claimed the phrase "superior sun protection" was misleading); *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1214 (E.D. Cal. 2013) (plaintiffs claimed marketing beyond the SPF value was misleading).

[21] This distinction is highlighted by the *Corra* case cited by Plaintiffs. The claims were "*not that the SPF 85–110 ratings on [d]efendants'*" products are themselves per se false or misleading, [r]ather, [p]laintiff alleges the way

allegation depends entirely on the question of whether or not benzene should be listed on the ingredient list, which is entirely subject to the FDA's regulations and its particular expertise.

Further, Plaintiffs are hiding the ball when they refer to the FDA's "silence on benzene." Opp. at 41. The FDA has been far from silent on benzene. The FDA most recently updated its FAQ on benzene on June 6, 2022, [22] wherein it stated:

> In March 2021, FDA received a citizen petition raising concerns about the level of benzene in certain hand sanitizers and other products…. FDA evaluates and assesses the information provided in citizen petitions of this type and, if appropriate, initiates an independent testing and verification process. This process includes securing product samples and performing independent evaluation of collected samples to assess the data presented in the citizen petition. If FDA's testing raises any safety concerns, then FDA will work with manufacturers to address those concerns. We are going through that process with each of these citizen petitions. During this time, FDA has also been working with companies on multiple recalls related to the identification of unacceptable levels of benzene in drugs.

In that same FAQ, the FDA reaffirmed its continuing commitment to the issue.[23] *Id.* Consistent with the FDA's December 23, 2021 Alert,[24] the FDA also reaffirmed the application of the 2 ppm limit for benzene in drugs:

> Drug manufacturers with a risk for benzene contamination should test their drugs accordingly and should not release any drug product batch that contains benzene

---

Defendants marketed their sunscreen products *beyond* simply providing an SPF rating" misled consumers. *Corra*, 962 F. Supp. 2d at 1214.

[22] *Frequently Asked Questions on Benzene Contamination in Drugs*, FDA, accessible at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed June 22, 2022)..

[23] "FDA continues to monitor the quality of drugs and, when appropriate, encourages retailers to remove products from store shelves and online marketplaces when issues arise....FDA is committed to ensuring drugs Americans use are safe and effective. FDA continues to monitor the issue of benzene in drugs and is proactively working with companies, when appropriate, to recall products and encourage retailers to remove products from store shelves and online marketplaces when quality issues arise. FDA is evaluating the root cause of benzene contamination and has alerted companies to the risk of benzene contamination in drug products and reminded them of their obligation to ensure their products meet appropriate quality specifications. We continually gain additional knowledge about drugs which allows us to identify and quickly address previously unknown risks to consumers. FDA will communicate new information as it becomes available....FDA has ongoing assessment, surveillance, compliance and pharmaceutical quality efforts across every product area, and we will continue to work with drug manufacturers to ensure the availability of safe and effective drugs for the American public." *Id.*

[24] Memo. at § III; *See* Food and Drug Administration, *News Release*, "*FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*," December 23, 2021); Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022.

above 2 ppm, consistent with the recommendations described in ICH Q3C.

*Id.* Accordingly, this Court should dismiss or stay Plaintiffs' claims in deference to the FDA's primary jurisdiction.

## IV.    Plaintiffs fail to satisfy the heightened Rule 9(b) pleading standard.

Plaintiffs improperly accuse Defendants of mischaracterizing the 9(b) standard[25] and ignoring the allegations wherein they detail "the specific who, what, when, where and how of the alleged fraud." Opp. at 43. But Plaintiffs cannot ignore that they must "plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). *See also* Memo. at 42-43. Plaintiffs do not address *Cohen*, or the other cited authorities in their Opposition because the cases belie the notion that they "pled sufficiently that Defendants had knowledge of that information at the time they sold the Products to Plaintiffs and the Class." Opp. at 45. A careful review of Plaintiffs' Consolidated Complaint reveals they have not pled a single particularized fact creating any inference, much less a strong inference, that Defendants knew that trace amounts of benzene were potentially present in Banana Boat® products. They allege only that Defendants "had knowledge that the Products contained or may contain benzene and that the Products were not safe or healthy for use." *See, e.g.*, CAC ¶ 166. This type of pleading is facially insufficient under Second Circuit precedent.

Plaintiffs also fail to distinguish *Bartone v. Robert L. Day Co.*, 232 Conn. 527 (1995), and

---

[25] Plaintiff Zayas claims Rule 9(b) does not apply to her UTPCPL claims because they are stated under the "catch-all" provision of that statute, which prohibits not only fraudulent but also deceptive acts and practices, and that the "deceptive" claims fall outside Rule 9(b)'s heightened pleading standard. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016). First, a review of Zayas' claims establishes that she is accusing Defendants of fraudulent conduct, and, thus, her claim should be subject to Rule 9(b) regardless of what section of the UTPCPL she may invoke in her brief. Second, even if Rule 9(b) does not apply to Zayas' claims, they nonetheless fail under Rule 8 because (1) she does not meet the *Twombly* plausibility threshold for her claim that Defendants withheld information; *see OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 508 (D. Conn. 2007); and (2) she does not identify the actual name of the product she purchased, as explained *infra*.

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674 (2d Cir. 1991), from the facts of this case. They claim that *Bartone* is distinguishable because in that case, no "fact-based allegations suggesting the defendant was even aware of the allegedly concealed information", *Bartone*, 232 Conn. at 534; whereas here, "Plaintiffs allege actual knowledge of the concealed, material information at the pleadings stage", Opp. at 45. While Plaintiffs do allege actual knowledge of the alleged presence of benzene in their products, these allegations are as *fact*-based as the allegations in *Bartone*, which is to say they contain no facts at all. Plaintiffs attempt to distinguish *O'Brien* because there, plaintiffs "failed to plead with any reasonable particularity what information was actually concealed, when it was known, how it was known, and even if it was known." *O'Brien*, 936 F.2d at 677. While Plaintiffs here have pled what information was concealed, they have not pled a single particularized fact regarding *when* or *how* that information was concealed. In this regard, *O'Brien* provides further confirmation that Plaintiffs did not plead particularized facts creating a strong inference that Defendants had actual knowledge of the allegedly concealed information. *Id.* ("However, plaintiffs fail to allege particulars regarding Price Waterhouse's purported discovery that NPA's net worth was declining. This claim is the very type of unsubstantiated allegation that Rule 9(b) prohibits.").

Plaintiffs do not dispute that Clinger, Zayas, Jean, and Algofi failed to identify the name of the Banana Boat® products they purchased where the allegedly-fraudulent omissions were made. Rather than dispute that fact, they argue that Rule 9(b) does not require identification of the purchased products because it "is directed to allegations of *Defendant's* misconduct, not *Plaintiffs'* behavior." Opp. at 45. Plaintiffs cite no authority in support of this proposition, but it hardly matters. Even accepting the contention that the 9(b) standard may only be applied to Defendants' actions or omissions, the identified pleading deficiency may be characterized as being directed

toward either Plaintiffs' behavior (what products did Plaintiffs purchase?) or Defendants' alleged

misconduct (on what products did Defendants omit information?) in equal measure. Putting aside

the semantic question of whether the identified pleading deficiency implicates Plaintiffs' or

Defendants' actions, it is black-letter law that Plaintiffs must state "where and when the statements

(or omissions) were made." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,

375 F.3d 158, 187 (2d Cir. 2004). The fact that Clinger, Zayas, Jean, and Algofi do not allege the

names of the Banana Boat® products they purchased means they have failed to identify with

specificity where the omissions were made. This is fatal to their fraud-based claims under Rule

9(b), as well as Rule 8. *See OBG Technical Servs.*, 503 F.Supp.2d at 508.

**V.      Plaintiffs have not pled claims upon which relief can be granted under Rule 12(b)(6).**

**A.      Plaintiffs' breach of express warranty claim fails because they do not identify
          the terms of any express warranty.**

Plaintiffs' argument that an ingredient list constitutes the specific terms needed for an

express warranty fails. *See* Opp. at 46. Plaintiffs argue that because benzene was not listed as a

substance on the Banana Boat® products' ingredient list and yet may be present in those products

in trace amounts, that Defendants have breached an express warranty. The Court should decline

the invitation, implicit in Plaintiffs' argument, to create new law that an ingredient list implies that

the product is free of any unlisted substances, no matter how trace the amount.

As a matter of basic grammar, Plaintiffs confuse the difference between an *express*

warranty and an *implied* warranty. "An express warranty has been defined as a *positive*

representation of fact which induces a bargain." *Lucas v. Subaru of America, Inc*., No.

CV030476082S, 2005 WL 1155009, at *4 (Conn. Supr. Ct. Apr. 20, 2005) (emphases added)

(citing *Albrecht v. Rubinstein*, 135 Conn. 243, 246 (1948)). The word *positive* is emphasized

because it is fatal to Plaintiffs' breach of express warranty claim. The ingredients list denotes

substances in the Banana Boat® products, but Defendants have never represented the ingredient list to be exhaustive or exclusive of every other substance that may be in Banana Boat® products, no matter how trace the amount. Plaintiffs must (but do not) identify a positive, as opposed to an implied, representation that the Banana Boat® products only contained the substances listed on the ingredients list or that the products are possessed of absolute molecular purity. Plaintiffs identify no such representation because no such representation has been made. Plaintiffs' claim relies on the *implication* that an ingredient list is exhaustive of the substances in the corresponding product. This simply does not comport with Conn. Gen. Stat. § 42a-2-313, which requires Plaintiffs to identify an affirmation of fact or promise—that is, an *explicit* representation creating a warranty.

Plaintiffs rely on a single case from a Michigan state court to support the proposition that an ingredient list constitutes a positive representation that only substances on that list are in the corresponding product. *See VanAlstine v. Diversified Farms, LLC*, No. 351993, 2021 WL 1711607, at *5 (Mich. Ct. App. Apr. 29, 2021). Yet even this single case does not support Plaintiffs' argument. In *VanAlstine*, the court found in dicta that an ingredient list that did not list iodine as an ingredient "constituted an express warranty that *no significant amount* of iodine was present in the supplement." *Id.* (emphasis added). But the prior sentence (omitted by Plaintiffs) qualifies its holding: "Any reasonable person reading such a label would immediately conclude that, as a substance not listed in the ingredients, iodine would not be present, *or at least would not be present in any noteworthy amount.*" *Id.* (emphasis added). *VanAlstine*, far from supporting Plaintiffs' argument, contradicts the idea that a manufacturer, by placing an ingredient list on a product, expressly warrants that the product is possessed of absolute molecular purity, and that a product could not contain trace (as opposed to "noteworthy") amounts of an unlisted substance.[26]

---

[26] The product in *VanAlstine* also contained the words "GUARANTEED ANALYSIS" on its label, a representation by the manufacturer that its products have been analyzed and can be guaranteed to precisely conform to the listed

Plaintiffs cite no other authority for the proposition that an ingredient list constitutes an express warranty that only substances on that list are in the corresponding product. The breach of express warranty claim fails because the Banana Boat® products' ingredient list does not constitute a positive representation that it contains only those substances on that list.

### B. Plaintiffs' fraudulent nondisclosure claim fails because Defendants were under no duty to disclose the potential existence of trace amounts of benzene.

Plaintiffs' fraudulent nondisclosure claim fails because they have pled no facts establishing that Defendants had a duty to disclose the alleged potential presence of trace amounts of benzene in Banana Boat® products.

As for Plaintiffs' first basis for the existence of a duty to disclose, the FDCA simply does not require Defendants to disclose the potential existence of trace amounts of benzene in their Banana Boat® products for the reasons identified in their initial Memorandum and *supra*, § II. Benzene was not an active or inactive ingredient in the Banana Boat® products, and Defendants were under no duty to disclose its potential presence therein. Plaintiffs cite no precedent suggesting that a common law fraudulent nondisclosure claim may be premised on a drug manufacturer's failure to disclose the potential existence of trace amounts of a chemical in their products.

As for the second basis for the existence of a duty to disclose, Plaintiffs essentially argue that because Defendants disclosed the ingredients in Banana Boat® products on the ingredient list, they were obligated to disclose every substance that could potentially be in the products, no matter how trace the amount. *See* Opp. at 52. Plaintiffs cite no authority to support the contention that listing ingredients on a label obligates the manufacturer to disclose every substance that could potentially be in the corresponding product, no matter how trace the amount or remote the chance

---

ingredients. No such representation is present on the label of Banana Boat® products, providing another reason why *VanAlstine* is inapposite. *Id.* at 5.

that it is present.

There is little wonder why. Such an obligation would be wholly unreasonable and create untenable potential liability for any manufacturer that affixes an ingredient list on its product. Sunscreen products are not produced in vacuum chambers and are not possessed (or expected to be possessed) of absolute molecular purity. This is why the FDA emphatically does not impose a "zero benzene standard" on sunscreen products. *See supra*, II.C.2. Plaintiffs' theory of duty, if successful, would have the effect of imposing such a standard, not just with regard to this particular product and this particular chemical, but with regard to any OTC drug product with an ingredient list and any substance not on that products' ingredient list, no matter how trace the amount. The Court should reject the absurd and dangerous logic underlying this theory of duty, which is unsupported by any authority.

### C.   Plaintiffs' unjust enrichment claim fails because nothing about the transactions was unjust and because Plaintiffs do not allege that they directly conferred a benefit on Defendants.

There was nothing unjust about the relevant transactions because Plaintiffs received what they paid for and failed to allege facts plausibly establishing that the Banana Boat® products they purchased were not worth the purchase price. *See* Memo., § II.; *supra*, § II. Plaintiffs' unjust enrichment claim fails because nothing about the transaction was unjust.

Plaintiffs also dispute the existence of the direct conferral requirement, arguing the cases cited by Defendants establishing the requirement "are not supported by controlling authority." Opp. at 54. Yet Plaintiffs do not cite to any contravening authority. Instead, they cite to two Connecticut state trial court decisions[27] and *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 281 (1994), none of which comment on the direct conferral requirement.

---

[27] Opp. at 53-54 (citing *Zeigler v. Sony Corp. of Am.,* 48 Conn. Supp. 397, 404-05 (2004) and *Stefan v. P.J. Kids*, *LLC*, No. X01CV0401855135, at *3 n.7 (Conn. Supr. Ct. Mar. 1, 2005))

It is without question that Connecticut courts apply the direct conferral requirement to unjust enrichment claims, and that this requirement forecloses Plaintiffs' claim in this case. *See Parker v. Colgate-Palmolive Co.*, No. X08CV030193798S, 2003 WL 22205061, at *2 (Conn. Supr. Ct. 2003) (dismissing an unjust enrichment claim in a product liability case because there was no allegation that plaintiff paid money directly to defendant).[28] The Court should follow the lead of Connecticut state courts in applying the direct conferral requirement, which requires dismissal of Plaintiffs' unjust enrichment claim.

### D.    Plaintiffs' claims to do not meet the reasonable consumer standard.

This Court should not be persuaded by Plaintiffs' attempt to delay ruling on the reasonable consumer standard. "[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have mislead a reasonable consumer." *Compare Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). This is not a typical consumer protection case where the products were labeled "100% natural" and contained synthetic ingredients or "100% pure" but contained other ingredients.[29] It is implausible that a reasonable consumer would be misled in the way that Plaintiffs allege. *See* Memo. at § V.D.

The cases Plaintiffs rely on are inapposite because they hinge on affirmative phrases that were purportedly misleading. For example, in *Langan*, this Court found that "[w]hether the phrases on defendant's sunscreen packaging are deceptive is a question of fact that is not readily susceptible to resolution on a motion to dismiss." 95 F. Supp. 3d at 289. *Langan* hinged on whether a reasonable consumer would be misled to believe that the phrases "natural protection" and "100%

[28] *See also Granito v. IBM*, 34 Conn. L. Rptr. 485, at *2 (Conn. Supr. Ct. 2003) (dismissing an unjust enrichment claim because "[a]bsent the conferring of a benefit by the plaintiff directly, no action for unjust enrichment by him is valid."); *Layton v. Lester*, No. CV085023289S, 2011 WL 522887, at *2 (Conn. Supr. Ct. 2011) ("To satisfy the first element of an unjust enrichment claim, the benefit to the defendant must be conferred by the plaintiff directly.").
[29] *See e.g. Langan v. Johnson & Johnson Consumer Companies*, Inc., 95 F. Supp. 3d 284, 289 (D. Conn. 2015); *Tran v. Sioux Honey Assoc., Cooperative*, No. 8:17-cv-110-JLS, 2018 WL 10612686, at *5 (C.D. Cal. Aug. 20, 2018).

naturally-sourced sunscreen ingredients" meant the ingredients were not synthetic. *Id.* at 288. This Court declined to find as a matter of law that these phrases conveyed only "the ingredients that provide protection from the sun are naturally sourced" and "any ambiguity in the meaning of these phrases is dispelled" by the ingredient list that included synthetic ingredients. *Id* at 289. Similarly, in *Tran*, the Court found that a reasonable consumer may be misled to believe that honey labeled "100% pure" would not contain any other substance. *See Tran*, 2018 WL 10612686, at *5.[30]

The Court in *Zito v. United Techs. Corp.* said it best: "This case is not *Langan*." No. 3:15-CV-744 (AWT), 2016 WL 2946157, at *6 (D. Conn. Mar. 11, 2016), *aff'd,* 673 Fed. Appx. 117 (2d Cir. 2016). The Banana Boat® sunscreen products in question are *not* labeled "benzene free" or "100% pure." Plaintiffs do not allege any affirmative phrases to be misleading and it is implausible that a reasonable consumer would read in a "benzene free" representation.[31] And a significant portion of the general population acting reasonably under the circumstances would not interpret the list of ingredients to mean Banana Boat® sunscreen products are 100% molecularly pure and free from any trace amount of other substances or residual solvents such as benzene.[32] Accordingly, Plaintiffs' allegations fail to satisfy the reasonable consumer standard and their GBL, UTPCPL, OUTPA, and FDUTPA claims should be dismissed.[33]

---

[30] The remaining cases are distinguishable on similar grounds. *See e.g. Friends of the Earth v. Sanderson Farms, Inc.*, 2018 WL 7197394, at *3 (N.D. Cal. Dec. 3 2018) (defendant represented that their product was "100% Natural" and contained "no additives or artificial ingredients"); *Organic Consumers Ass'n v. Bigelow Tea Co.*, 2018 D.C. Super. LEXIS 11, at *11 (D.C. Super. Ct. Oct. 31, 2018) (the representation in question concerned whether the ingredients were "natural"); *Izquierdo v. Panera Bread Co*., 450 F. Supp. 3d 453, 457 (S.D.N.Y. 2020) (defendant labeled the product "blueberry" and advertised it as "Food You Can Trust," but it only contained trace amounts of blueberry).
[31] *C.f.* Opp. at 3, 47, 57.
[32] Expectations of the prototypical reasonable consumer aside, the expectations of an actual consumer—and, until January 2022, a named plaintiff in this action—supports Defendants' argument. Heather Rudy, lately of this litigation, Dkt. #67, and presumably not unreasonable herself, has consented to a settlement in an MDL action that allows for up to 1 ppm of benzene in sunscreen products. *In re Johnson & Johnson Sunscreen Marketing Sales Practices and Product Liability Litigation*, No. 0:21-md-03015-Singhal, Dkt. #55, p. 6 (S.D. Fla. Dec. 17, 2021).
[33] Plaintiffs' attempt to distinguish *Axon* and the other cases cited by Defendants is unavailing. *Axon* does not suggest that reasonable consumers must know of a specific substance that may be present, rather it suggests that a reasonable consumer would be expected to have general knowledge of herbicide use. *Compare Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701 (2d

**E.** **Plaintiffs' GBL claims fail because they do not allege facts establishing Defendants' knowledge of undisclosed information or establishing injury.**

It is untrue that Plaintiffs "have alleged circumstantial evidence giving rise to a strong inference that Defendants knew about the contamination of benzene or risk of contamination of benzene and failed to disclose it[.]" Opp. at 59. Plaintiffs alleged no facts, circumstantial or otherwise, creating a strong inference that Defendants knew of the potential presence of benzene in their products. Rather, Plaintiffs allege in conclusory terms that "Defendants had knowledge that the Products contained or may contain benzene, and that the Products were not safe or healthy for use." CAC ¶ 166. These vague allegations do not pass muster for purposes of the GBL.[34]

Plaintiffs fail to address the inadequacies of their price premium allegations. Plaintiffs failed to allege facts regarding what the price premium was, what price they paid for the products, or the price of comparable products. First, they attempt to distinguish *Colella* on the basis that plaintiff there "appeared to make a single allegation that the defendant 'charges a premium for its products' without any other support in the complaint." Opp. at 61. Yet although Plaintiffs repeatedly allege the bare existence of a price premium, CAC ¶¶ 25, 133, 169, 219, they do not plead specific facts supporting the existence or amount of a premium more than what was provided and rejected in *Colella*. Second, they try to distinguish *Izquierdo* on the basis that plaintiff there stated a slack-fill claim, whereas this is a defect claim. Yet Plaintiffs do not explain why this

_____

Cir. 2020) *with Opp.* at 57. Here, a reasonable consumer has general knowledge that OTC drug products are not possessed of absolute molecular purity and may contain trace residual solvents

[34] Plaintiffs attempt to distinguish their pleadings from those in *Woods v. Maytag Co.*, No. 10-cv-0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) and *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 100 (E.D.N.Y. 1997) by pointing out that pleadings in those cases contained the phrase "upon information and belief", whereas their pleadings "go beyond information and belief[.]" Opp. at 59. While it is true that the Consolidated Complaint does not contain that particular sequence of words, the critical point is that the pleadings do not "go beyond information and belief" in any substantive regard and that the Consolidated Complaint is thus eminently comparable to the *Woods* complaint in terms of the level of factual detail provided. *Compare Woods*, 2010 WL 4314313 at *15 (". . . upon information and belief, the defendant knowingly misrepresented material facts regarding the safety and use of said Maytag oven") *with* CAC ¶ 166 ("Defendants had knowledge that the Products contained or may contain benzene, and that the Products were not safe or healthy for use."). For the same reason the GBL claims in *Woods* were dismissed based on the paucity of plaintiffs' fact allegations, Plaintiffs' GBL claims also should be dismissed.

distinction matters—both here and in *Izquierdo*, the essence of the accusation is that purchasers did not receive what they paid for.[35] Plaintiffs have not stated GBL claims on which relief can be granted because they have not plausibly alleged facts that would permit the Court to find that Defendants knew of their purported wrongdoing or that would establish the a price premium.

### F. Plaintiffs' state law consumer protection claims fail because they do not allege causation.

Plaintiffs "do not dispute" that that they must show a causal connection between their injuries and Defendants' misrepresentations. Opp. at 61. This requirement demands that "a plaintiff . . . state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc*., 8 F. Supp.3d 467, 480 (S.D.N.Y. 2014) (citations omitted). Faced with their failure to allege that they saw the packaging before making their purchases, Plaintiffs argue that a causal connection is established by general allegations regarding the existence of alleged misrepresentations on Defendants' products and their reliance on those alleged misrepresentations. This argument is contrary to precedent that general allegations of reliance cannot substitute for specific fact allegations that a plaintiff *saw* the label containing the alleged misrepresentation or omission in question. *See Oden v. Boston Scis. Corp.,* 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018).

Unable to distinguish these controlling authorities, Plaintiffs baldly state that "[t]o purchase the Products, each Plaintiff inevitably needed to pick up the Product, review the packaging and label (even if cursory) for information written and published by Defendants (*e.g.*, brand, SPF levels, warnings, and ingredients)." Opp. at 63. This statement is facially untrue and defies

---

[35] The cases cited by Plaintiffs to undermine the clear requirements set out in *Colella* and *Izquierdo* are equally unconvincing. In *Pichardo v. Only What You Need, Inc*., No. 20-cv-493-VEC, 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020), the district court's conclusion that plaintiff's allegations were sufficient to establish injury was made in passing and was dicta—the court had already decided to grant defendant's motion on reasonable consumer grounds. *Id.* And in *Segovia v. Vitamin Shoppe, Inc.*, No. 14-CV-7061-NSR, 2016 WL 8650462, at *7 (S.D.N.Y. Feb. 5, 2016), the complaint provided substantially more detail regarding plaintiff's injury than what is provided here.

common sense. As any shopper knows, people do not "inevitably" review the warnings and ingredient list on a product label before purchase. And there is no case law to support the bizarre contention that a consumer purchasing a product can be presumed to have reviewed its labeling beforehand. Plaintiffs cannot establish causation for their state consumer protection law claims because they do not allege that they ever saw the Banana Boat® product labeling that contained the deceptive statements or omissions before purchasing their products.

G.    **Plaintiffs fail to allege ascertainable loss as required under the OUTPA or UTPCPL.**

Plaintiffs do not meaningfully respond to Defendants' observation that Plaintiffs Jean and Zayas have failed to allege a sufficient factual foundation for the claim that they suffered an ascertainable pecuniary loss due to the purchase of Banana Boat® products. *See* Memo. at 64. Plaintiffs fail to allege the value of Banana Boat® products and fail to allege any facts plausibly establishing that they were ineffective for their intended use. Without any plausible factual allegations that Banana Boat® products are worth less than what Plaintiffs paid, they cannot establish the type of ascertainable loss necessary to support their OUTPA or UTPCPL claims.

H.    **The FDUTPA's Safe Harbor precludes Plaintiffs' FDUTPA claims.**

Defendants argued they could invoke the FDUTPA safe harbor because the FDA permits up to 2 ppm of benzene to be present in the sunscreen products and prohibits them from listing benzene as an ingredient. Memo. at 65-66. Plaintiffs contend the safe harbor is inapplicable because "Defendant is wrong on both points." Opp. at 65. For the reasons in Memo. at 65-66, and *infra*, § II, Plaintiffs' arguments fail, and the FDUTPA safe harbor applies.

I.    **Plaintiffs' request for medical monitoring fails because they do not allege actual personal injury.**

No Connecticut court has ordered the remedy of medical monitoring without an allegation of physical injury. Plaintiffs claim this assertion is "erroneous," Opp. at 68; but do not cite a single

example of a Connecticut court permitting this remedy without an allegation of personal injury. Plaintiffs attempt to distinguish *Dougan v. Sikorsky Aircraft Corp.*, No. X03-HHD-CV12-6033069, 2017 WL 7806431, at *7 (Conn. Super. Mar. 28, 2017), *aff'd on other grounds by Dougan v. Sikorsky Aircraft Corp.*, 337 Conn. 27 (2020), by arguing that that court denied medical monitoring on summary judgment because there was no proof of physical injury but did not rule out medical monitoring as a remedy if proof of physical injury was adduced.[36]

The key holding of *Dougan* is that a theoretical medical monitoring remedy requires proof of physical injury that is specific to the named plaintiffs. This holding is fatal to Plaintiffs' request for this remedy, not merely because they have so far failed to adduce evidence of physical injury at this pre-discovery stage, but because *they do not allege physical injury* in their Consolidated Complaint. As Plaintiffs are quick to acknowledge in other parts of their briefing, *see* Opp. at 36 ("Plaintiffs adequately allege violations of consumer protection laws – which is the only issue before this court"), this is a consumer protection action, not a personal injury action, and any evidence concerning physical injury is irrelevant on the face of the pleadings. Given how Plaintiffs have elected to plead their claims, they will have no occasion to adduce proof of their own physical injury. Thus, they will be unable to come forward with facts that could support a medical monitoring remedy at any stage in this litigation, even assuming such a remedy is available in Connecticut. Under *Dougan*, this forecloses their request for the remedy of medical monitoring.

## CONCLUSION

For the foregoing reasons and for the reasons contained in Defendants' Memorandum in Support of their Motion to Dismiss, the Court should dismiss this action with prejudice.

---

[36] Plaintiffs also cite to a string of out-of-state cases where state courts permitted the remedy of medical monitoring claims in the absence of physical injury. Opp. at 69. These cases have no bearing on whether this type of remedy is permitted under Connecticut law in such circumstances.

Dated: June 28, 2022

Respectfully submitted,

By:  */s/ Megan McCurdy*

**STINSON LLP**

John W. Moticka (admitted *pro hac vice*)
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105-1821
Telephone: (314) 863-0800
Facsimile: (314) 863-9388
john.moticka@stinson.com

Megan McCurdy (admitted *pro hac vice*)
megan.mccurdy@stinson.com
Ashley Crisafulli (*admitted pro hac vice*)
ashley.crisafulli@stinosn.com
Benjamin Levin (*admitted pro hac vice*)
ben.levin@stinson.com
Emily Carney (*admitted pro hac vice*)
emily.carney@stinson.com
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495

**DISERIO MARTIN O'CONNOR &
CASTIGLIONI, LLP**

Jonathan P. Whitcomb (ct15014)
jwhitcomb@dmoc.com
Jonathan J. Kelson (ct26755)
jkelson@dmoc.com
Christina Volpe (ct30647)
cvolpe@dmoc.com
1010 Washington Blvd., Suite 800
Stamford, Connecticut 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2022, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

By:  _/s/ Megan McCurdy_

**ATTORNEY FOR ALL DEFENDANTS**

27