# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS CHABLA, JESSICA BARTON, BRYAN CLINGER, MONICA BARBA, LISA ZAYAS, DEBORAH JEAN, and SEBE ALGOFI, on behalf of themselves and all others similarly situated, | Case No. 3:21-cv-01040 (JAM) |
| Plaintiffs, | |
| v. | |
| EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, AND SUN PHARMACEUTICALS, LLC, | |
| Defendants. | September 8, 2022 |

**DEFENDANTS' POST-HEARING MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

I.   **RISK OF INJURY DOES NOT ESTABLISH INJURY IN FACT**. ................................ 1

   A.   Standing must be affirmatively established with plausible allegations. ............................. 1

   B.   Consistent with *John*, Plaintiffs' claims should be dismissed for failing to plausibly
allege an injury-in-fact. ...................................................................................................... 2

   C.   Three other Federal District Courts dismissed substantially similar claims........................ 4

   D.   *Barnes* does not undermine the decisions in *Bowen*, *Schloegel*, and *Bodle*. ...................... 6

   E.   Allegations that sunscreen is "worthless" are speculative and premised on
a risk…………………………………………………………………………...………7

II.   **PLAINTIFFS' CLAIMS BASED ON A ZERO BENZENE STANDARD ARE
PREEMPTED AND SUBJECT TO THE FDA'S PRIMARY JURISDICTION.** ....... 8

III.   **PLAINTIFFS FAIL TO OTHERWISE STATE A CLAIM FOR RELIEF.** ............. 10

IV.   **CONCLUSION** ................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Aqua Dots Prod. Liab. Litig.*,
    654 F.3d 748 (7th Cir. 2011) ............................................................................1, 6

*Barnes v. Unilever United States Inc.*,
    No. 21-cv-06191, 2022 WL 2915629 (N.D. Ill. July 24, 2022) ................................6

*Barnes v. Unilever United States Inc.*,
    No. 21-cv-06191, Dkt. #41(N.D. Ill. Mar. 25, 2022)................................................6

*Berger v. L.L. Bean, Inc.*,
    351 F. Supp. 3d 256 (E.D.N.Y. 2018) ....................................................................8

*Bodle v. Johnson & Johnson Consumer Inc.*,
    No. 21-cv-07742-EMC, Dkt. #28 (N.D. Cal. Feb. 24, 2022) ...........................4, 5, 6

*Bowen v. Edgewell Personal Care Co., et al.*,
    No. 2:21-cv-04356-MWF-AGR, Dkt. #71 (C.D. Cal. Aug. 29, 2022)....................4, 5

*Boysen v. Walgreen Co.*,
    No. C 11-06262, 2012 WL 2953069 (N.D. Cal. July 19, 2012)................................8

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)........................................................................................2

*Coffelt v. Kroger Co.*,
    No. 16-1471-JGB, 2018 WL 6004543 (C.D. Cal. Aug. 17, 2018)...........................5

*Dana v. Hershey Co.*,
    180 F. Supp. 3d 652 (N.D. Cal. 2016), *aff'd*, 730 Fed. App'x. 460 (9th Cir.
    2018) .......................................................................................................................4

*Debernardis v. IQ Formulations, LLC*,
    942 F.3d 1076 (11th Cir. 2019) ...............................................................................1

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)......................................................................................1

*Doss v. Gen. Mills, Inc.*,
    816 F. App'x. 312 (11th Cir. 2020) ..........................................................................8

*Dubuisson v. Stonebridge Life Ins. Co.*,
    887 F.3d 567 (2d Cir. 2018)......................................................................................1

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
    831 F. Supp. 2d 507 (D. Mass. 2011) ......................................................................8

*In re Gen. Mills Glyphosate Litig.*,
  No. 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ...................................................10

*Gonzalez v. Pepsico, Inc.*,
  489 F. Supp. 2d 1233 (D. Kan. 2007) .......................................................................................1

*Green v. PepsiCo, Inc.*,
  No. 18-62011-civ, 2019 WL 8810364 (S.D. Fla. Apr. 12, 2019)............................................8

*In re Herbal Supplements Mktg. & Sales Pracs. Litig.*,
  No. 15-CV-5070, 2017 WL 2215025 (N.D. Ill. 2017) ............................................................4

*Herlth v. Merck & Co., Inc.*,
  No. 3:21-CV-438-JAM, 2022 WL 788669 (D. Conn. Mar. 15, 2022).....................................9

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  No. C 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ...........................................8, 10

*Huertas v. Bayer U.S., LLC*,
  No. 2:21-cv-20021-SDW-CLW, Dkt. #27 (D.N.J. Aug. 19, 2022)..........................................7

*John v. Whole Foods Mkt. Group, Inc.*,
  858 F.3d 732 (2d Cir. 2017)............................................................................................2, 3, 5

*Kimca v. Sprout Foods, Inc. d/b/a Sprout Organic Foods*,
  No. 21-cv-12977-SRC, Dkt. #52 (D.N.J. Apr. 25, 2022) ....................................................4, 8

*Koronthaly v. L'Oreal USA, Inc.*,
  No. 07-cv-5588, 2008 WL 2938045 (D.N.J. July 29, 2008), *aff'd,* 374 F.
  App'x. 257 (3d Cir. 2010)........................................................................................................8

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  95 F. Supp. 3d 284 (D. Conn. 2015)......................................................................................10

*Lanier v. Bats Exchange, Inc.*,
  838 F.3d 139 (2d Cir. 2016)....................................................................................................9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................................2

*McCoy v. Nestle USA, Inc*,
  173 F. Supp. 3d 954 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA,*
  *Inc.*, 730 Fed. App'x. 462 (9th Cir. 2018) ..............................................................................4

*Mee v. I A Nutrition, Inc.*,
  No. C-14-5006-MMC, 2015 WL 2251303 (N.D. Cal. May 13, 2015)....................................9

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d. Cir. 2008)....................................................................2

*Parks v. Ainsworth Pet Nutrition, LLC*,
   No. 18 Civ. 6936, 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020) .............................................10

*Patane v. Nestlé Waters N. Am., Inc.*,
   314 F. Supp. 3d 375 (D. Conn. 2018)..................................................................1

*In re Plum Baby Food Litig.*,
   No. 4:21-cv-00913-YGR, Dkt. #98-1 (N.D. Cal. Sept. 3, 2021).............................................4

*Rolan v. Atl. Richfield Co.*,
   No. 1:16-cv-357, 2017 WL 3191791 (N.D. Ind. July 26, 2017) ...............................................4

*Savvidis v. McQuaid*,
   No. 3:19-cv-1308, 2021 WL 1390803 (D. Conn. Apr. 13, 2021) ...........................................9

*Schloegel v. Edgewell Personal Care Co.*,
   No. 4:21-cv-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022) ...........................4, 6

*Song v. Champion Petfoods, Inc., USA, Inc.*,
   No. 18-cv-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) ...........................................5

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)................................................................................2

*Thompson v. Ocwen Financial Corporation et al*,
   No. 3:16-cv-01606-JAM, Dkt. #86 (D. Conn. Jan. 23, 2018) ...............................................2

*Tran v. Sioux Honey Ass'n*,
   No. 8:17-cv-00110, 2020 WL 3989444 (C.D. Cal. July 13, 2020) ........................................10

*In re Valsartan, Losartan, & Irbesartan Products Liab. Litig.*,
   MDL No. 2875, 2021 WL 222776 (D.N.J. Jan. 22, 2021) ......................................................7

*Yu v. Dr. Pepper Snapple Grp.*,
   No. 18-cv-06664, 2019 WL 2515919 (N.D. Cal. June 18, 2019)...........................................10

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................................................4

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(1) ....................................................................2, 9

*Edgewell Personal Care Issues Voluntary Nationwide Recall of Banana Boat
    Hair & Scalp Sunscreen Due to the Presence of Benzene,* FDA (July 29,
    2022), accessible at https://www.fda.gov/safety/recalls-market-withdrawals-
    safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-
    banana-boat-hair-scalp-sunscreen-due (last accessed Sept. 7, 2022). .......................................3

Food and Drug Administration, *Frequently Asked Questions on Benzene
    Contamination in Drugs*, updated June 6, 2022, available at
    https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-
    questions-benzenecontamination-drugs (last accessed June 22, 2022) ...................................9

Food and Drug Administration, *News Release, "FDA alerts drug manufacturers
    to the risk of benzene contamination in certain drugs,"* December 23, 2021,
    available at https://www.fda.gov/drugs/pharmaceutical-quality-
    resources/fdaalerts- drug-manufacturers-risk-benzene-contamination-certain-
    drugs (last accessed June 22, 2022) ...........................................................................9

*Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products,*
    Valisure, LLC, May 24, 2021 ...............................................................................1, 3

*Valisure's Citizen Petition on Benzene in Sunscreen and After-sun Care Products,*
    *Attachment A*, Valisure, LLC, May 24, 2021 .......................................................1, 3

## I.      RISK OF INJURY DOES NOT ESTABLISH INJURY IN FACT.

Plaintiffs make clear that their theory of "liability is it doesn't depend on plaintiffs' bottles containing benzene. It's risk of." Tr. 43:11-13. This is not a uniform contamination case where every single product contained a substance which then created a risk of harm.[1] Plaintiffs do not allege that all bottles of Banana Boat® sunscreen or even all bottles in a specific line of Banana Boat® sunscreen contain benzene.[2] Instead, as Plaintiffs repeatedly admit, this is a case about the risk that the sunscreen Plaintiffs purchased contained benzene. But a hypothetical possibility of injury is insufficient: Plaintiffs must allege a plausible likelihood of injury. As illustrated at oral argument, "[i]f a million widgets are manufactured and one day a machine goes down and 5,000 of them are defective, do the balance of the purchasers have relief?" Tr. at 22:14-17. The answer is no. The hypothetical possibility that the sunscreen Plaintiffs purchased contained trace amounts of benzene is nothing more than a risk of injury that does not establish injury in fact under Article III of the United States Constitution.

### A.      Standing must be affirmatively established with plausible allegations.

All but admitting that Plaintiffs failed to plausibly allege that the sunscreen they purchased contained benzene, Plaintiffs ask this Court to impose a lesser standard for standing by arguing that courts have different rules for standing. But – to be clear – it is the United States Supreme Court and the Second Circuit that this Court should follow. "Where, as here, a case is at the

---

[1] The uniform contamination cases cited by Plaintiffs are inapplicable to the facts here. *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375 (D. Conn. 2018) (every bottle was labeled spring water but none purportedly contained actual spring water); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1239 (D. Kan. 2007) (all products contained ingredients that could interact to form benzene above the legal limit); *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 750-51 (7th Cir. 2011) (beads uniformly contained a substance that risked poisoning kids); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019) (all products contained an ingredient that made the products adulterated); *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 571 (2d Cir. 2018) (all policies were illegal); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (all plaintiffs received negligent or fraudulent advice and thus paid excessive fees).

[2] Nor can they: 14 of the 19 bottles of various lines of Banana Boat® sunscreen that Valisure tested contained zero benzene or lower than the LLOQ of benzene. Valisure's Citizen Petition, Att. A.

pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating'" each of the elements that make up the "'irreducible constitutional minimum' of standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiffs have the burden to show an injury that is traceable to the challenged action and redressable by a ruling. *Lujan*, 504 U.S. at 560–61. The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*

The Second Circuit has held that "[w]hen the Rule 12(b)(1) motion is facial…[t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *John v. Whole Foods Mkt. Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (citing to *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d. Cir. 2008). In *Thompson v. Ocwen Financial Corporation et al*, No. 3:16-cv-01606-JAM, Dkt. #86 (D. Conn. Jan. 23, 2018), this Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable... Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Naturally enough, because the focus of 'plausibility' review is on what *facts* a complaint alleges, a court is not bound to accept as true a legal conclusion couched as a factual allegation nor to accept as true allegations that are wholly conclusory.

(emphasis in original) (quotation marks and citations omitted). Plaintiffs fail to establish standing under the standards set by the Supreme Court and Second Circuit.

**B.      Consistent with *John*, Plaintiffs' claims should be dismissed for failing to plausibly allege an injury-in-fact.**

In *John,* the Second Circuit found that plaintiff "plausibly alleged that he suffered an injury

2

in fact by pleading both the frequency of his purchases and the systematic overcharging of pre-packaged foods at the Whole Foods stores he patronized." 858 F.3d at 738. "[T]he critical basis" for plaintiff's claim was an announcement by the New York City Department of Consumer Affairs ("DCA") "that 89 percent of Whole Foods' pre-packaged products tested by the DCA were mislabeled, and the press release's conclusion that the mislabeling was 'systematic' and 'routine[].'" 858 F.3d at 736. All 80 types of pre-packaged products had mislabeled packages and plaintiff routinely purchased products during the time of the DCA investigation and from the same stores that DCA investigated. *Id*. at 734-735.

Unlike the plaintiff in *John*, Plaintiffs here fail to plausibly allege that their product contained benzene. Valisure tested 19 bottles of Banana Boat® sunscreen: 14 of the bottles had zero benzene or tested lower than the 0.1 ppm LLOQ and only 5 of the bottles contained trace amounts of benzene of up to 0.43 ppm. Valisure's Citizen Petition at 13-15 and Att. A. An unidentified lab tested an unknown number of products and only found benzene in 2 bottles. Not a single Plaintiff alleges that they purchased one of the 7 bottles that allegedly contained benzene. Nor do they allege they purchased a bottle of sunscreen from the same lot as one of the 7 bottles that allegedly contained benzene. Plaintiffs Clinger, Zayas, Jean, Algofi and Barba (for one product) do not even allege that they purchased a product from the same line as one of the 7 bottles that allegedly contained benzene. *Compare* Dkt. #89 ¶¶ 126-132 *with* Valisure's Citizen Petition and Dkt. #89 ¶¶ 43, 46. Defendants' July 29, 2022 voluntary recall of 3 lots of Banana Boat® Hair & Scalp SPF 30 does nothing to remedy Plaintiffs' failure to plausibly allege that the product they purchased contained benzene because not a single Plaintiff alleges that they purchased Banana Boat® Hair & Scalp SPF 30, let alone one of the lots that was recalled.[3]

---

[3] *Edgewell Personal Care Issues Voluntary Nationwide Recall of Banana Boat Hair & Scalp Sunscreen Due to the Presence of Benzene,* FDA (July 29, 2022), accessible at https://www.fda.gov/safety/recalls-market-withdrawals-

Examination of the facts and holdings in the other cases cited by Plaintiffs reveals that each of the other cases cited by Plaintiffs are distinguished on similar grounds as *John*[4] or inapplicable to the facts here*.[5]*

## C.     Three other Federal District Courts dismissed substantially similar claims.

On August 29, 2022 – just days after the hearing here – Judge Fitzgerald dismissed *Bowen v. Edgewell Personal Care Co., et al.,* a substantially similar case in the Central District of California, for failure to plausibly allege plaintiff suffered an injury-in-fact. No. 2:21-cv-04356-MWF-AGR, Dkt. #71 (C.D. Cal. Aug. 29, 2022), attached as **Exhibit A** ("*Bowen* Order"). *Bowen* is now the third case dismissed for plaintiffs' failure to plausibly allege that the sunscreen products purchased contained benzene.[6] *Bowen*, *Bodle*, and *Schloegel* support dismissal of Plaintiffs' claims

---

safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due   (last accessed Sept. 7, 2022).

[4]  *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 666 (N.D. Cal. 2021) ("'quantifiable levels of BPA' were found in 59 of the 105 tested WellPet products"); *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, No. 15-CV-5070, 2017 WL 2215025 (N.D. Ill. 2017) (New York Attorney General conducted testing and "found that 52% of the tested herbal products did not contain the ingredients they purported to contain, 59% contained species of plants that were not listed on the product labels, and 33% of the herbal products also contained contaminants and/or fillers that were not listed on the product labels"); *Kimca v. Sprout Foods, Inc. d/b/a Sprout Organic Foods*, No. 21-cv-12977-SRC, Dkt. #52 at 9-10 (D.N.J. Apr. 25, 2022) (holding "plaintiffs can establish standing using representative testing where they allege that <u>all</u> of the products sold by the defendant contain the alleged defect" when 3 different entities tested individual packages across all 10 product lines and there was "nothing in the FAC that indicates some subset of packages within each of these product lines might not contain heavy metals"); *In re Plum Baby Food Litig.*, No. 4:21-cv-00913-YGR, Dkt. #98-1, (N.D. Cal. Sept. 3, 2021) (The U.S. House of Representatives' Committee on Oversight and Reform, Subcommittee on Economic and Consumer Policy published a report describing "significant" and "concerning" levels of heavy metals in baby foods).

[5] *Rolan v. Atl. Richfield Co.*, No. 1:16-cv-357, 2017 WL 3191791 (N.D. Ind. July 26, 2017) (Defendants contaminated land and plaintiffs were advised by the EPA to not play outside, remove shoes before walking into homes, have their children's blood levels tested, and some were even forced to relocate). Additionally, *Dana v. Hershey Co.,* 180 F. Supp. 3d 652, 660 (N.D. Cal. 2016), *aff'd,* 730 Fed. App'x. 460 (9th Cir. 2018) and *McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 962–63 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA, Inc.*, 730 Fed. App'x. 462 (9th Cir. 2018) are both distinguishable because it was impossible to trace whether or not child labor was used in the making of the products purchased. As the *Bowen* Court explained, "it is distinctly possible to know whether Plaintiff purchased a batch tested…" *Bowen* Order at 7.

[6] *Schloegel v. Edgewell Personal Care Co*., No. 4:21-cv-00631-DGK, 2022 WL 808694, at *2-3 (W.D. Mo. Mar. 16, 2022) ("*Schloegel* Order"); *Bodle v. Johnson & Johnson Consumer Inc.*, No. 21-cv-07742-EMC, Dkt. #28 at 1 (N.D. Cal. Feb. 24, 2022) ("*Bodle* Order").

here and are consistent with the Second Circuit's decision in *John* and decisions across the country.[7] 858 F.3d at 736.

In *Bowen*, plaintiff's claim was "based on the **hypothetical** possibility that the products she purchased **may** have contained benzene." *Bowen* Order at 7 (emphasis in original). The Court found that "[Bowen] has not adequately alleged a particularized injury sufficient to give her standing, as she does not allege that the sunscreen she purchased was from a batch contaminated with benzene or that her sunscreen actually contained benzene, only that there was some possibility of the sunscreen containing benzene." *Id*. at 1. The Court reasoned that "[t]aken to its logical extreme, Plaintiff's position would grant her standing to sue any manufacturer because there was some chance of a defect in the product she purchased, regardless of whether or not she actually purchased a product in the affected batch." *Id*. at 7.

Plaintiffs' attempt to dismiss *Bodle* as "a pure personal injury case" that "did not involve false [] misrepresentation claims" is wholly incorrect. Tr. 44:11-14. *Bodle* involved both personal injury and consumer protection claims.[8] Dismissing the consumer protection claims, the Court held that plaintiff failed to establish "a plausible claim that she purchased a contaminated product" without allegations that plaintiff purchased "a product with a corresponding Lot or UPC number or [an] expiration date" that could be matched to the period of her purchase. *Bodle*, No. 21-cv-07742-EMC, Dkt. #28 at 2-3.

---

[7] *See* Dkt. #110 (Reply) at § I (collecting citations)*; Coffelt v. Kroger Co*., No. 16-1471-JGB, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) (plaintiff lacked standing when he failed to show the product he purchased had in fact been adulterated or contaminated and instead only alleged that the product "*may* have been contaminated"); *Song v. Champion Petfoods, Inc., USA, Inc*., No. 18-cv-3205, 2020 WL 7624861 at *6 (D. Minn. Dec. 22, 2020) ( "plaintiffs have not alleged that they personally purchased dog food that contained BPA. Plaintiffs therefore lack standing").
[8] The Court dismissed because all claims lacked standing, including Counts: (10) Violation of Unfair Competition Law; (11) Violation of Consumer Legal Remedies Act; and (12) Violation of False Advertising Law. *See Bodle*, No. 3:21-cv-07742-EMC, Dkt. #17 (N.D. Cal. Nov. 5, 2021).

Additionally, Plaintiffs' attempt to undermine *Schloegel* as imputing an "impossibility standard" from the Eighth Circuit is unavailing in light of the dismissals in the Central District of California (*Bowen*) and Northern District of California (*Bodle*). Tr. at 44:4-6. Contrary to Plaintiffs argument, *Schloegel* stands for the proposition that although economic harm may establish an injury-in-fact, a plaintiff must allege that "she actually purchased Banana Boat Sunscreen products which were adulterated with benzene." *Schloegel* Order at 4-5.

### D.   *Barnes* does not undermine the decisions in *Bowen*, *Schloegel*, and *Bodle*.

*Barnes* is inapplicable because unlike Plaintiffs here, plaintiffs squarely alleged that "the Products contain significant concentrations of benzene" and plaintiffs purchased a product from the same line of products that were subject to a recall. *See Barnes v. Unilever United States Inc.*, No. 21-cv-06191, Dkt. #41, ¶¶ 5, 60 (N.D. Ill. Mar. 25, 2022).

Further, *Barnes* incorrectly interprets *In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011). The Court's footnote in *Barnes* states plaintiff would have standing "even if based on the proposition that she would not have purchased the product had she known of the risk it contained benzene." *Barnes v. Unilever United States Inc.*, No. 21-cv-06191, 2022 WL 2915629, at *1, n. 1 (N.D. Ill. July 24, 2022). But *Barnes* relies incorrectly on *Aqua Dots* for the proposition that any "risk" can establish injury in fact. *See* Resp. to Supp. Notice, Dkt. #121. In *Aqua Dots*, the beads were uniformly toxic so the Court held that plaintiffs established standing by alleging that they paid more than they would have, "had they known of the risks the beads posed to children." 654 F.3d at 749-50. The risk in *Aqua Dots* is not that the beads may or may not be toxic; it is the health risk that uniformly toxic products pose to children. *Id*. Unlike *Aqua Dots*, the risk here is not that the products uniformly contain a high enough level of benzene to potentially pose a health risk: it is the risk that the products *may* contain any benzene.

**E.  Allegations that the sunscreen is "worthless" are speculative and premised on a risk.**

Even if the sunscreen plaintiffs purchased contained benzene, Plaintiffs' entire theory is still premised on another risk – the risk that the amount of benzene in the sunscreen would render the products unsafe or adulterated and therefore worthless. Recently, a New Jersey District Court dismissed similar claims against a manufacturer of a foot spray that was recalled for presence of trace amounts of benzene, holding that the plaintiffs did "not sufficiently allege facts that support the conclusion that they suffered economic loss" because the "allegation of the 'worthless' Products amounts to speculative loss." *Huertas v. Bayer U.S., LLC*, No. 2:21-cv-20021-SDW-CLW, Dkt. #27 at 8 (D.N.J. Aug. 19, 2022), attached as **Exhibit B**.[9] The *Huertas* Court rejected the same argument that plaintiffs attempt to make here – that  under *Valsartan*[10] the allegation that a product is "worthless" because it contained trace amounts of benzene is sufficient to establish standing. *Compare* Tr. 42: 6-16 *with Huertas*, No. 2:21-cv-20021-SDW-CLW, Dkt. #27 at 9-10. In *Valsartan*, FDA testing revealed that the products had levels of "NDMA of between 15,180 and 16,300 ng, much in excess of the FDA daily limit" and NDEA "well in excess of FDA limits." 2021 WL 222776, at *4. There are no such allegations here. To the extent "Plaintiffs quote a scholarly journal article suggesting that there is *probably* no safe level of exposure to benzene, that suggestion does not demarcate the requirements that the FDA sets forth concerning levels of carcinogenic contaminants and amounts to probability and speculation." *Huertas*, No. 2:21-cv-20021-SDW-CLW, Dkt. #27, at 11 (internal citation omitted).

---

[9] The Court further explained: "Plaintiffs have not presented a particularized account of the actual harm caused, and instead present mere conjecture in asserting that they experienced some sort of loss due to the product's generally asserted worthlessness, and that some hypothetical, future physical harm may befall them from use of the product." *Id.* at 9-10 (quotations omitted).

[10] *In re Valsartan, Losartan, & Irbesartan Products Liab. Litig.*, MDL No. 2875 (RBK-JS), 2021 WL 222776, at *4 (D.N.J. Jan. 22, 2021).

Similarly, in *Kimca*, relied on by Plaintiffs (Dkt. #102 at 16), Judge Chesler in the District Court of New Jersey agreed that "even if the products purchased by Plaintiffs contained heavy metals, the FAC does not adequately allege that the amount of heavy metals in Sprouts products were unsafe or dangerous." No. 21-cv-12977, Dkt. #52 at 7. The plaintiffs in *Kimca* "assert the products were worthless precisely because they allegedly exposed their children to the risk of future harm—they do not otherwise allege that the Baby Food Products did not perform their intended purpose or that the products were worthless for any other reason." *Id*. at 18. The Court found that "without any plausible allegations of future risk, the allegation that the Baby Food Products were worthless also falls apart." *Id*. Courts across the country have held that economic injury cannot be premised on such hypothetical, speculative, or uncertain risk of harm.[11]

## II.     PLAINTIFFS' CLAIMS BASED ON A ZERO BENZENE STANDARD ARE PREEMPTED AND SUBJECT TO THE FDA'S PRIMARY JURISDICTION.

First, Plaintiffs attempt to distract this Court from the implication of enforcing a zero benzene standard that is different from the FDA's standard by arguing that this Court must make a factual termination of the source of benzene. But it does not matter where the benzene came

---

[11] *See e.g. Koronthaly v. L'Oreal USA, Inc.*, No. 07-cv-5588, 2008 WL 2938045, at *4-5 (D.N.J. July 29, 2008), *aff'd,* 374 F. App'x. 257 (3d Cir. 2010) (plaintiff lacked standing to bring suit against lipstick manufacturer where trace amounts of lead in lipstick did not exceed FDA standards); *Boysen v. Walgreen Co*., No. C 11-06262, 2012 WL 2953069, at *5, 7 (N.D. Cal. July 19, 2012) (acknowledging that the alleged level of toxins fell "within the FDA advisory guideline" and finding the alleged economic injury insufficient to establish standing when plaintiff alleged the product contained harmful toxins but failed to "expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm"); *Doss v. Gen. Mills, Inc*., 816 F. App'x. 312, 314 (11th Cir. 2020) (no economic injury where plaintiffs alleged "ultra-low levels of glyphosate . . . may be harmful to human health"); *Green v. PepsiCo, Inc.*, No. 18-62011-civ, 2019 WL 8810364, at *1, 3 (S.D. Fla. Apr. 12, 2019) (plaintiff failed to allege an injury in fact based on her purchase of Quaker Oats that allegedly contained trace amounts of residual glyphosate); *Berger v. L.L. Bean, Inc.*, 351 F. Supp. 3d 256, 262 (E.D.N.Y. 2018) (finding plaintiff had not alleged economic injury when she alleged only that the value of her product had decreased based on a speculative risk of future injury); *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig*., 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because Plaintiffs are unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance"); *Herrington v. Johnson & Johnson Consumer Companies, Inc*., No. C 09-1597, 2010 WL 3448531 at *3-5 (N.D. Cal. Sept. 1, 2010) (dismissing claims premised on allegations that products contained some amount of a substance that may be carcinogenic was "too speculative and uncertain" and failed to "establish a credible risk of harm that could suffice as a concrete, imminent injury").

from. The FDA has made clear that only sunscreen with over 2ppm of benzene requires recall.[12]
Any debate as to the applicability or interpretation of the FDA's 2ppm standard should be left to
the primary jurisdiction of the FDA.

Second, Plaintiffs' claims against Defendants for failing to list benzene as an ingredient or
failing to state that sunscreen may contain benzene at trace amounts are preempted because
Defendants cannot label the products as alleged because it would violate the FDCA. *See* Dkt. #99
(Memo) at § II.A; Dkt. #110 (Reply) at § II.C.1; *Herlth v. Merck & Co., Inc.*, No. 3:21-CV-438
(JAM), 2022 WL 788669, at *3 (D. Conn. Mar. 15, 2022) ("A state law failure-to-warn claim
against a drug manufacturer is preempted unless the drug manufacturer can simultaneously comply
with its state law duty to warn *and* with federal labeling requirements under the FDCA").

Third, Plaintiffs premised their case on testing from a laboratory that admitted half a dozen
times that it did not comply with FDA testing standards, which would implicitly establish a testing
regime different from the FDA's standards. Dkt. #99-1 (Ex. C. to the McCurdy Decl., at 1-4).[13]
*See Mee v. I A Nutrition, Inc.*, No. C-14-5006-MMC, 2015 WL 2251303, at *4 (N.D. Cal. May
13, 2015) ("[W]here, as here, an FDA regulation provides that the question of compliance must be
determined using the method specified therein, a state law claim that seeks to establish a violation
of such regulation by a different methodology is preempted").

---

[12] Food and Drug Administration, *News Release, "FDA alerts drug manufacturers to the risk of benzene
contamination in certain drugs*," December 23, 2021, available at https://www.fda.gov/drugs/pharmaceutical-quality-
resources/fdaalerts- drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed June 22, 2022);
Food and Drug Administration, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6,
2022, available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-
benzenecontamination-drugs (last accessed June 22, 2022).
[13] It is well-established that a motion to dismiss based on preemption is made pursuant to Rule 12(b)(1). *Lanier v. Bats
Exchange, Inc.*, 838 F.3d 139, 146-47 (2d Cir. 2016) (discussing whether dismissal of state law claims for lack of
subject matter jurisdiction under Rule 12(b)(1) was appropriate where SEC was arguably regulating in the area). In
the context of a challenge to a district court's subject matter jurisdiction, both the moving and non-moving parties
"may use affidavits and other materials beyond the pleadings themselves." *Savvidis v. McQuaid*, No. 3:19-cv-1308,
2021 WL 1390803, at *4 (D. Conn. Apr. 13, 2021) (internal citations omitted).

## III.   PLAINTIFFS FAIL TO OTHERWISE STATE A CLAIM FOR RELIEF.

Plaintiffs' state law claims fail for numerous reasons. *See* Dkt. #99 (Memo) §§ IV, V. But each of the claims can be dismissed for Plaintiffs' failure to satisfy the reasonable consumer standard.[14] Courts across the country have dismissed consumer protection claims because reasonable consumers are not deceived by trace amounts of a substance or by an alleged impurity that amounted to less than the amount allowed under the FDA.[15]

Further, Plaintiffs' admission - "I'm not sure exactly what they knew prior to -- even prior to that Valisure report…. Facts in discovery may reveal some of that" - is enough to dismiss Plaintiffs' fraud claims for failing to plead facts establishing Defendants' knowledge of benzene.[16] (Tr. at 48:21-24); Dkt. #99 (Memo) at §§ IV, V.E.

## IV.   CONCLUSION

For each of the reasons addressed herein and in Defendants' Memo, Reply, Response to Plaintiffs' Supplemental Authority, and at Oral Argument, Plaintiffs' claims should be dismissed, with prejudice.

---

[14] Plaintiffs' reliance on *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015) is misplaced. The sunscreen in *Langan* contained an affirmative misrepresentation that the sunscreen was "natural" while Plaintiffs here argue that they were deceived because the product they purchased were not molecularly pure.

[15] *See* Reply, Dkt. #110 at 16; *Parks v. Ainsworth Pet Nutrition, LLC*, No. 18 Civ. 6936, 2020 WL 832863, at *1 (S.D.N.Y. Feb. 20, 2020) ("The level of glyphosate in the tested Products is negligible and significantly lower than the FDA's limit, which supports a finding that the Products' glyphosate residue is not likely to affect consumer choice"); *Yu v. Dr. Pepper Snapple Grp.*, No. 18-cv-06664, 2019 WL 2515919, at *3 (N.D. Cal. June 18, 2019) (reasonable consumer would not understand "Natural" to mean the utter absence of residual pesticides, which are well below allowable tolerances); *Herrington*, 2010 WL 3448531, at *8; *In re Gen. Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *5 (D. Minn. July 12, 2017); *Tran v. Sioux Honey Ass'n*, No. 8:17-cv-00110, 2020 WL 3989444, at *4-5 (C.D. Cal. July 13, 2020).

[16] Contrary to Plaintiffs' argument (Tr. at 53:3-17), there is no ICH QC3 or USP standard that requires specific testing for the presence of benzene.

Dated: September 8, 2022          Respectfully submitted,

By:  */s/ Megan McCurdy*

**STINSON LLP**

John W. Moticka (admitted *pro hac vice*)
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105-1821
Telephone: (314) 863-0800
Facsimile: (314) 863-9388
john.moticka@stinson.com

Megan McCurdy (admitted *pro hac vice*)
megan.mccurdy@stinson.com
Ashley Crisafulli (*admitted pro hac vice*)
ashley.crisafulli@stinosn.com
Benjamin Levin (*admitted pro hac vice*)
ben.levin@stinson.com
Emily Carney (*admitted pro hac vice*)
emily.carney@stinson.com
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495

**DISERIO MARTIN O'CONNOR &
CASTIGLIONI, LLP**

Jonathan P. Whitcomb (ct15014)
jwhitcomb@dmoc.com
Jonathan J. Kelson (ct26755)
jkelson@dmoc.com
Christina Volpe (ct30647)
cvolpe@dmoc.com
1010 Washington Blvd., Suite 800
Stamford, Connecticut 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2022, a copy of the foregoing was filed

electronically and served by mail upon anyone unable to accept electronic filing. Notice of this

filing will be sent by email to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's CM/ECF System.


By: */s/ Megan McCurdy*
ATTORNEY FOR DEFENDANTS