IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRYAN CLINGER, MONICA BARBA, LUIS CHABLA, JESSICA BARTON, LISA ZAYAS, DEBORAH JEAN, and SEBE ALGOFI, individually and all behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, AND SUN PHARMACEUTICALS, LLC,<br><br>       Defendants. | CASE NO. 3:21-cv-01040 (JAM)<br><br>September 8, 2022 |

**PLAINTIFFS' POST-MOTION TO DISMISS HEARING SUPPLEMENTAL
MEMORANDUM IN SUPPORT OF THEIR OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..........................................................................................................1

II.  LAW AND ARGUMENT ............................................................................................1

    A.  Plaintiffs Have Established Standing, Alleging a Plausible Likelihood of an Injury-in-Fact with Respect to Each Liability Model..................................................................1

        1.  Plaintiffs have standing for their 'non-disclosure' claims.........................................1

        2.  Plaintiffs have standing for their 'disclosure' claims................................................3

        3.  Standing for the 'state FDCA parallel' claims ..........................................................6

    B.  FDA has not 'Walked Back' its Q3C Guidance ...............................................................7

    C.  Defendants' 'Reasonable Consumer Standard' Argument is Upended by their Own Extrinsic Evidence ............................................................................................................8

    D.  Plaintiffs Have Plausibly Stated their 'Unfair Prong' FDUPTA Claim ..........................9

III. CONCLUSION............................................................................................................10

**I.     INTRODUCTION**

Pursuant to this Court's August 27, 2022 order (ECF No. 126), Plaintiffs submit this post-hearing supplemental memorandum in support of their opposition to Defendants' Motion to Dismiss. This memorandum will briefly address four topics raised at the August 25th hearing: standing, preemption, the reasonable consumer standard, and Plaintiffs' "unfairness" allegations.

**II.    LAW AND ARGUMENT**

**A.     Plaintiffs Have Established Standing, Alleging a Plausible Likelihood of an Injury-in-Fact with Respect to Each Liability Model.**

Plaintiffs have adequately alleged a plausible likelihood of an injury-in-fact, establishing standing under Second Circuit precedent.[1] This is true with respect to *each* of Plaintiffs' liability models (with their somewhat distinct injuries)—an important point given the parties' focus on the non-disclosure claims (representing just two of the thirteen causes of action) at oral argument.[2]

**1.     Plaintiffs have standing for their 'non-disclosure' claims.**

Under Plaintiffs' 'non-disclosure' (i.e., non-labeling based) theory of liability, Defendants engaged in unfair conduct by selling a product which contained or may contain benzene, and/or failing to prevent benzene contamination. Pl. Opp. at 4. Since the benzene served no therapeutic benefit, Plaintiffs were injured by purchasing the product, especially since other sunscreen products without the *risk* of benzene were available at comparative prices.

---

[1] At oral argument, Plaintiffs pointed to *Whole Foods* for the proposition that a plausibility standard does not apply to standing allegations in the Second Circuit. Aug. 25, 2022 Transcript, ECF No. 127 ("Tr.") at 39-40 (citing *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017)). While this is a straightforward reading of *Whole Foods*, the distinction between possibility and plausibility is inconsequential since Plaintiffs would meet a plausibility standard if the Second Circuit were to apply one.

[2] As explained in Plaintiffs' opposition brief, Plaintiffs' claims (i.e., theories of liability) can be grouped as (1) disclosure claims, (2) non-disclosure claims, and (3) state FDCA parallel claims. Pls. Opp. to Defs. Mot. to Dismiss, ECF No. 102 ("Pl. Opp.") at 2-5. This was restated later in Plaintiffs' brief as 'labeling based' claims, 'non-labeling based' claims, and 'state FDCA parallel' claims. *Id.* at 25, 31.

The Second Circuit has made clear that Plaintiffs have standing to bring their claims based on the risk of harm. *Whole Foods*, 858 F.3d 732, 736 (2d Cir. 2017) (describing the injury-in-fact requirement as a "low threshold," ensuring that a plaintiff has a personal stake in the controversy's outcome).[3] Oral argument focused heavily on the degree of risk necessary to establish injury-in-fact for standing to bring the 'non-disclosure' claims, and Plaintiffs will not rehash every argument here. As the Court noted, "if they've done testing, and it appears that there was testing done and they're not just making it up…that usually is…enough[.]" Tr. at 9:15-20.

That testing (coupled with Defendants' own extrinsic evidence) shows a plausible risk that Plaintiffs purchased a product containing benzene.[4] Of the seven Banana Boat products where Valisure and/or Plaintiffs' testing detected benzene,[5] every plaintiff except for Jean purchased at least one of those products.[6] Further, of the 21 tests cited in the Complaint, 11 had benzene, and plaintiffs pled *multiple* purchases of Banana Boat sunscreen products throughout the applicable Class Period. CAC ¶¶ 126-132.

That 'plausibility' grows to 'more than likely' given the recent recall announcement Defendants submitted to the Court. Tr. at 58:10-23. After revealing that yet *another* Banana Boat

---

[3] *See Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018) ("[w]hat matters is that a plaintiff must clearly allege facts sufficient to constitute an injury in fact, but those allegations 'need not be capable of sustaining a valid cause of action.'") (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)); *see also Litowitz v. Garland*, No. 20-724, 2021 WL 3679144, at *6 (D. Conn. Aug. 19, 2021) (citing *John*, 858 F.3d at 736) ("[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" for purposes of Article III standing).

[4] Notably, Plaintiffs Chabla and Barton pled they purchased products with benzene. CAC ¶¶ 126-127.

[5] This includes the following spray products: Kids Max Protect & Play, Kids Sport, Protective Dry Oil, Simply Protect Kids, Ultra Defense, Ultra Sport, and UltraMist Deep Tanning. CAC ¶¶ 43, 46.

[6] This does not account for SPF variations within an otherwise identical product. When accounting for SPF, Plaintiffs Chabla, Barton, Clinger, Barba, and Algofi purchased at least one product whose SPF also matched the SPF of the product tested. Plaintiffs note that the product names in the CAC for certain plaintiffs did not indicate the product type. To clarify, Algofi purchased Kids Sport Sunscreen Spray, and the purchases by Barba and Zayas were both sprays.

2

sunscreen product contained benzene, the recall noted that "the review showed that unexpected levels of benzene came from the propellant that sprays the product out of the can."[7] Here, of the 21 tests of Banana Boat products, 14 were continuous spray products (as opposed to gel or lotion products). And of those 14 spray products tests, 11 of the 14 (79 percent) found benzene, just shy of the 89% in *Whole Foods*. Here, every plaintiff except for Jean[8] pled at least one purchase of a spray product (and most pled *multiple* purchases over many years).

### 2.    Plaintiffs have standing for their 'disclosure' claims.

While receiving less attention at oral argument, Plaintiffs have also established standing for their 'disclosure' (i.e., labeling-based) claims, representing the majority of their causes of action. *See* Pl. Opp. at 2-4. Under this theory of liability, Defendants failed to disclose benzene as a 'may contain' inactive ingredient on the product label. *Id.* at 2-4, 6-7, 26-30.

Important for standing, the 'may contain' disclosure was required by FDCA on every bottle,[9] regardless of whether it contained benzene, since Defendants chose to apply a uniform ingredients list to the entire product line. *Id.* at 7. Aside from violating FDCA, this omission is what creates liability under the 'disclosure' claims.

Plaintiffs alleged two distinct injuries-in-fact under the 'disclosure' claims. Since every product bottle required a 'may contain' disclosure, Plaintiffs would not have purchased the product but-for this omission, injuring Plaintiffs in the amount of the purchase price, regardless

---

[7] FDA Website, *Edgewell Personal Care Issues Voluntary Nationwide Recall of Banana Boat Hair & Scalp Sunscreen Due to the Presence of Benzene*, avail. at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/edgewell-personal-care-issues-voluntary-nationwide-recall-banana-boat-hair-scalp-sunscreen-due (July 29, 2022).

[8] Jean purchased "Banana Boat Spray Oil" – which is a pump-spray product as opposed to the continuous spray products purchased by the other plaintiffs. CAC ¶ 131.

[9] Plaintiffs alleged plausible facts that, if true, would require the 'may contain' disclosure. To find otherwise, the Court would have to make a factual finding based on nothing more than an improper affidavit stating benzene was not on the ingredients list. *Id.* at 22-25.

of whether the bottle contained benzene. CAC ¶ 133. Alternatively, if Defendants had made the required 'may contain' disclosure, the Product would have garnered a lower market price, leading Plaintiffs to overpay for the Product, even if the bottle they purchased was benzene-free. *Id.*

At oral argument, the Court brought attention to this theory as existing separate and apart from the 'non-disclosure' claims. After Defendants argued that Plaintiffs' 'risk of purchasing a benzene product' allegations were too speculative, the Court pointed out:

> So is there a further allegation, though, that -- I think what I understand the plaintiffs to be saying is even if a particular product that they actually purchased was not benzene contaminated, they still would not have made the purchase in the first place if they had known that some proportion of the products sold by Banana Boat products of the type that they bought were contaminated.

Tr. at 20:8-15. In response, Defendants merely fell back on their 'non-disclosure' argument, that such injury was "too speculative…because they purchased a product that did not contain the defect." *Id.* at 20:16-18.

However, the 'defect' under this theory of liability was not the likelihood of a bottle to contain benzene, but the failure of *every* bottle to disclose benzene as a 'may contain' inactive ingredient. At oral argument, even Defendants suggested that their 'risk of containing benzene' analysis may be inapplicable where a 'possibility of harm' disclosure was required.

> Court: Suppose you had -- just a hypothetical here, suppose this was a case about, I don't know, baby food. And the evidence showed that 10 percent of a company's baby food containers was poisonous, botulism, whatever it would be. And somebody goes ahead later and buys a container of the baby food, but the good news is they're fine. They don't have any problem. They don't have botulism from that. Would you say, then, that they have no injury even if the company disclosed or concealed from them that 10 percent of their product was frankly poisonous?
>
> Def: So if they had a special duty to disclose, I think that's a theory that I have to think about…

*Id.* at 21:4-17. The 'may contain' disclosure *was* required *on every bottle*. Defendants' failure to disclose benzene caused Plaintiffs economic harm, even if the individual bottle lacked benzene,

4

under either a return of purchase price or diminution-in-value (overpayment) theory.[10]

In a recent Northern District of Illinois case involving benzene in an antiperspirant product, Judge Kennelly echoed these sentiments. *Barnes v. Unilever United States Inc.*, No. 21-6191, 2022 WL 2915629 (N.D. Ill. July 24, 2022). Though that case was limited to one product line, the court held that the plaintiff's allegations "that she was deprived of the benefit of her bargain, in that she would not have purchased the products, or would not have purchased them for the listed price, had she known they contained a human carcinogen" was sufficient to confer standing. *Id.* at *1. More importantly:

> This is so even if, as Unilever contends, benzene contamination applied only to some limited lots of its product. Barnes's theory of injury holds water even if based on the proposition that she would not have purchased the product had she known of ***the risk it contained benzene***.

*Id.* at *1 (n. 1) (emphasis added).

At the motion to dismiss hearing, Judge Kennelly made an astute and practical observation that applies here. The defendant in that case similarly argued that the plaintiffs lacked standing because "there's no evidence of uniform benzene in all the products that were sold, all lots of this product." *See* Exhibit A, Transcript of July 20, 2022 *Barnes* Oral Argument ("*Barnes* Tr."), at 8:ll, 18-20. Judge Kennelly swiftly rejected the defendant's argument and reasoned:

> I guess the point is that if I go to the store to buy an antiperspirant and I know that if this says, well, this might contain benzene or it might not, I'm just not going to buy the thing, or I'm certainly not going to pay 4.95 for it or whatever the price is. I might be willing to pay a lesser price, or I might not buy it at all, so I'm out money that I wouldn't otherwise buy.

*Id.* at p. 8, ll. 21-25; p. 9, ll. 1-2. Judge Kennelly found this type of economic injury sufficient to

---

[10] This is true with respect to the return of the purchase price, or alternatively, even if Plaintiffs would have purchased the product, it would have commanded a lower market price. "Any monetary loss suffered by the plaintiff satisfies [the injury-in-fact] element[.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). Here, that monetary loss was the result of the illegal conduct (the failure to disclose).

confer standing, relying on *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), which he stated is "pretty darn close to [the *Barnes* case]." *Barnes* Tr. at p. 23, l. 18. The same logic applies here to the (illegally omitted) 'may contain benzene' ingredient disclosure.

Finally, even if the Court accepted Defendants' arguments that some consumers may have received what they purchased because they got a benzene-free product (it should not), this only goes to the 'full purchase price' injury and ignores the 'diminution in value' injury (i.e., that the product still cost more). The following exchange from the hearing in this case is illustrative:

> Def: [discussing economic harm and standing]…I would submit that if plaintiffs purchased a product that didn't contain benzene, they have no harm. They have no damage.
>
> Court: Even though they never would have purchased the product if they had known there was a possibility that there's benzene in it?
>
> Def: Yes. If a million widgets are manufactured and one day a machine goes down and 5,000 of them are defective, do the balance of the purchasers have relief? No.

*Id.* at 22:8-18. While this hypothetical might apply (though incorrectly) to the non-disclosure based claims, it does *not* address Plaintiffs' allegations that the 'may contain' disclosure would have decreased the product's market price, and thus *all* the purchasers (even those of products that do not contain benzene) still *overpaid* for the Product, even assuming (*arguendo*) they received what they sought to purchase. While 5,000 faulty widgets would not cause the remaining million to be worth less in a vacuum, if all million widgets lacked a *legally mandated* disclosure that would lead consumers to pay less, then yes, all the purchasers were harmed and have relief. This overpayment is sufficient injury-in-fact for standing.

### 3. Standing for the 'state FDCA parallel' claims

The 'state FDCA parallel' claims (consumer statute violations premised on state FDCA-mirror law violations) were not a focus at oral argument, and Plaintiffs will not rehash their briefing here. *See* Pl. Opp. at 5. With respect to how this applies to standing, Plaintiffs pled

plausible allegations, which if true, would have meant *every bottle* of the product was both misbranded *and* adulterated under Florida and New York's parallel-FDCA laws, regardless of whether a particular bottle contained benzene or not. Pl. Opp. at 5-11. Since every bottle was unlawful to sell, Plaintiffs suffered losses as the result of an illegal sale; or, alternatively, the purchased products were inherently worth less than products that were neither misbranded nor adulterated.[11]

### B. FDA has not 'Walked Back' its Q3C Guidance.

Regarding preemption, the Q3C Guidance is clear: benzene "should not be employed in the manufacture of drug substances, excipients, and drug products" unless it is "unavoidable…to produce a…significant therapeutic advance[.]"[12] Tacitly admitting that they fail this standard, Defendants explain this is just guidance, and two documents—an FDA Alert to Manufacturers[13] and FDA's FAQ to Consumers[14]—show that FDA's *actual* position is that 2ppm is permitted

---

[11] For example, the Ninth and Eleventh Circuits have held that a consumer plaintiff suffered an injury in fact sufficient to confer Article III standing when she allegedly spent money to purchase a product that "should not have been sold" because it was illegal to sell the product. *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 49 (9th Cir. 2018) (unpublished); *see also Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1086 (11th Cir. 2019) ("plaintiffs established an injury in fact for standing purposes by alleging that they purchased [an illegally sold] product"). Recently, *In re Valsartan* held that a consumer plaintiff suffered an injury in fact sufficient to confer Article III standing "…because the plaintiffs were deprived of the entire benefit of their bargain, we conclude they adequately alleged that they experienced economic loss.") (citing *Aqua Dots*, 654 F.3d 748); *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK-JS), 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("[T]he *Debernardis* court determined that, at the motion to dismiss stage, an adulterated vitamin supplement was worthless and had no value because it should not have been sold in the first place.").

[12] FDA, *Guidance for Industry: Q3C Impurities: Residual Solvents* (Dec. 1997), avail. at https://www.fda.gov/media/71736/download, at 6 ("Q3C Guidance").

[13] FDA, *FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*, June 6, 2022, avail. at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs ("FDA Alert").

[14] FDA, *Frequently Asked Questions on Benzene Contamination in Drugs*, June 6, 2022, avail. at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs ("FDA FAQ").

even where its use is avoidable. Tr. at 60:25 – 61:8; *see also* Def. Reply, ECF No. 110, at 8-9.

This is untrue. The FDA Alert not only restates but emphasizes the Q3C Guidance:

> **Drug manufacturers should avoid using benzene in the manufacturing process**
>
> <u>Manufacturers should not use benzene in the manufacture of drugs.</u> The…*[Q3C Guidance]* provide guidance on <u>limited cases where the presence of benzene may be tolerated</u>. Specifically, the ICH Q3C guidance explains that Class 1 solvents such as benzene should <u>not be employed in the manufacture of drug substances, excipients, or drug products because of their unacceptable toxicity</u>. The guidance notes that if benzene use is <u>unavoidable to produce a drug product with a significant therapeutic</u> advance, then its levels should be restricted to 2 [ppm], unless otherwise justified.

FDA Alert at ¶¶ 4-5 (emphasis added). There are "**limited cases** where the presence of benzene may be tolerated"; namely, where benzene is "**unavoidable** to produce a drug product with a significant therapeutic advance[.]" *Id.* (emphasis added). The FDA FAQ similarly states that "[m]anufacturers should generally not use benzene in the manufacture of drugs. The…Q3C [G]uidance describes limited cases where…benzene may be tolerated." FDA FAQ at ¶ 15.

### C. Defendants' 'Reasonable Consumer Standard' Argument is Upended by their Own Extrinsic Evidence.

Since the reasonable consumer standard (regarding the 'disclosure based' claims) has been briefed and argued extensively, Plaintiffs will not repeat all those arguments here, but emphasize that Defendants continue to offer zero support for their statement that consumers do not believe ingredients lists are accurate. *See* Tr. at 60:4-5 (stating reasonable consumers do not "believe that the active and inactive ingredient list is absolute").[15]

Indeed, this contention is completely decimated by Defendants' own extrinsic evidence. In the FDA FAQ, in the wake of news coverage regarding benzene in sunscreen, FDA provided

---

[15] It should also be noted that in addition to preemption, Defendants rely on the Massa Declaration (which merely states that benzene is not on the label's ingredients list) in their reasonable consumer analysis. *See* Def. MTD at 56 (Plaintiffs approach to ingredients list does not represent reasonable consumers because, *inter alia*, "[a]s discussed above, benzene is not an active or inactive ingredient in the [Products]"). As it should do with preemption, the Court should also decline to make factual findings based on a sham affidavit with respect to the reasonable consumer standard.

8

a list of "frequently asked questions" it was receiving from consumers. These highlight the concern and surprise of consumers of the benzene revelation, and include: "What is the risk from using drugs contaminated with benzene?," "Should consumers continue using sunscreen?," and "Is benzene in drugs a new problem? Why have there been so many recent reports of drugs containing benzene?" This, along with extensive press coverage, and common-sense regarding carcinogens in a cancer-prevention product weigh heavily against Defendants' contention.

### D. Plaintiffs Have Plausibly Stated their 'Unfair Prong' FDUPTA Claim.

Plaintiffs' Thirteenth Cause of Action seeks relief under the 'unfair' prong of Florida's Deceptive and Unfair Trade Practices Act. CAC ¶¶ 319-329. As the Court noted at oral argument, each state's unfair analysis must be conducted individually and is somewhat distinct from the reasonable consumer standard (applying to Plaintiffs' 'deception based' claims). Tr. at 46:13-16. As explained below, Plaintiffs have adequately stated such a claim.[16]

Turning to FDUTPA's 'unfair' prong claim, Plaintiffs have sufficiently pled such a claim. An unfair practice is defined as "'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1022 (M.D. Fla. 2019) (*citing Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001)).[17] Here, Plaintiffs

---

[16] At oral argument, Plaintiffs suggested this 'unfair' analysis would apply to Florida, New York, Oregon, and Pennsylvania. Upon further review, only Florida and Pennsylvania have 'unfair' prongs, and Plaintiffs only bring a claim under FDUTPA's unfair prong. While the Pennsylvania claim mentions 'unfair,' its allegations are rooted in deceptive conduct.

[17] Some courts have used an alternative three-pronged test for "unfairness," which requires that the injury to the consumer (1) must be substantial; (2) must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) must be an injury that consumers themselves could not reasonably have avoided. *See Porsche Cars N. Am., Inc. v. Diamond*, 140 So. 3d 1090, 1096 (Fla. 3d DCA 2014) (holding the 1980 Federal Trade Commission Policy Statement's definition of unfair trade practice should be used when interpreting FDUTPA). The additional elements here are satisfied considering there is no countervailing benefits to consumers in the manufacture and sale

9

have plausibly alleged that Defendants' conduct offended established public policy enshrined in the FDCA and parallel state laws prohibiting the sale of misbranded and adulterated drug products. CAC ¶¶ 56-116. A jury that finds the products are misbranded and/or adulterated could also find that Defendants' sale of the products is immoral, unethical, oppressive, or unscrupulous. *See, e.g., Langan v. Johnson & Johnson Consumer Cos.*, 95 F. Supp. 3d 284, 290 (D. Conn. 2015) (jury could conclude defendant's conduct is unethical, immoral, or unscrupulous if the alleged misrepresentations are found to violate the FDCA); *see also Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009) (whether conduct is unfair under FDUTPA is a "question of fact"). Defendants' conduct was also substantially injurious to consumers, who lost the benefit of their bargain when they purchased an adulterated, misbranded product. *See Langan*, 95 F. Supp. 3d at 290 (classwide price premium damages demonstrate substantial injury). Courts have not hesitated to deny motions to dismiss analogous 'unfair' claims under similar circumstances. *See, e.g., Barnes*, 2022 WL 2915629, at *3 ("allegations that [defendant] put adulterated and therefore dangerous products into the marketplace without adequate testing or screening . . . are sufficient to state a claim for an unfair practice violative of the [Illinois Consumer Fraud and Deceptive Business Practices Act]"). Because Plaintiffs have plausibly alleged Defendants have engaged in unfair conduct that resulted in actual damages, Plaintiffs have sufficiently stated a claim under FDUTPA's 'unfair' prong.

### III. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss should be denied entirely.

---

of a sunscreen product with a known carcinogen and the injury could not reasonably been avoided because Defendants failed to disclose the presence or potential presence of benzene in the products.

Date:   September 8, 2022							Respectfully submitted,

**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

By:   */s/* Gillian L. Wade
     Gillian L. Wade (*pro hac vice*)
     gwade@mjfwlaw.com
     Marc A. Castaneda (*pro hac vice*)
     mcastaneda@mjfwlaw.com
     10990 Wilshire Blvd., 8th Floor
     Los Angeles, CA 90024
     Tel: (310) 396-9600
     Fax: (310) 396-9635

*and*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (ct27481)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel: 212-223-6444
Fax: 212-223-6334
jguglielmo@scott-scott.com

*and*

**SHUB LAW FIRM LLC**
Kevin Laukaitis
Jonathan Shub
134 Kings Highway E., 2nd Floor
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile:  (856) 210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*and*

**LEVIN SEDRAN & BERMAN LLP**
David C. Magagna Jr.
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

*and*

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.
Daniel Markowitz, Esq.
Mindy Dolgoff, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel : (845) 483-7100
Fax : (888) 749-7747
sultzerj@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

**CARNEY BATES & PULLIAM, PLLC**
Hank Bates (*pro hac vice*)
hbates@cbplaw.com
Sam Jackson (*pro hac vice*)
sjackson@cbplaw.com
519 West 7th St.
Little Rock, AR 72201
Telephone: 501.312.8500
Facsimile: 501.312.8505

*and*

**CASEY LAW FIRM, LLC**
Ryan Casey (to apply *pro hac vice*)
ryan@rcaseylaw.com
PO Box 4577
Frisco, CO 80443
Tel: (970) 372-6509
Fax: (970) 372-6482

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on September 8, 2022, this document was served on all parties of record via email through the Court's CM/ECF system.

September 8, 2022                                          By:   */s/* Gillian L. Wade