# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS CHABLA, JESSICA BARTON, BRYAN CLINGER, MONICA BARBA, LISA ZAYAS, DEBORAH JEAN, and SEBE ALGOFI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDGEWELL PERSONAL CARE BRANDS, LLC, EDGEWELL PERSONAL CARE, LLC, AND SUN PHARMACEUTICALS, LLC,<br><br>Defendants. | Case No. 3:21-cv-01040 (JAM)<br><br><br><br><br><br><br><br>September 15, 2022 |

## DEFENDANTS' POST-HEARING REPLY MEMORANDUM
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A. Plaintiffs fail to plausibly allege a concrete injury in fact and, therefore, lack standing..1

        1. Plaintiffs' "disclosure" and state law claims suffer the same fatal flaw: they fail to plausibly allege an injury in fact. ............................................................................ 3

        2. Plaintiffs' standing arguments regarding "disclosure" and state law claims highlight why Plaintiffs' claims are preempted and subject to the FDA's primary jurisdiction. ................................................................................................................................. 4

    B. Indeed, the FDA has not "walked back" its Q3C guidance; it always permitted up to 2 ppm. ............................................................................................................................. 5

    C. Reasonable consumers do not expect molecular purity. .................................................. 7

    D. Plaintiffs have not plausibly stated an unfair practice so as to support their FDUTPA claim, and even if they had, their FDUTPA claim nonetheless fails. ............................... 8

III. CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Axon v. Citrus World, Inc.*,
　354 F. Supp. 3d 170 (E.D.N.Y. 2018), *aff'd sub nom., Axon v. Florida's Nat.
　Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ...................................................................7

*Bush v. WellPet, LLC*,
　No. CV 21-10059-RGS, 2021 WL 1408118 (D. Mass. Apr. 14, 2021) ...................................7

*Centrifugal Air Pumps Australia v. TCS Obsolete*,
　LLC, No. 6:10-CV-820-ORL-31, 2011 WL 202193 (M.D. Fla. Jan. 20, 2011) .......................8

*Dolphin LLC v. WCI Cmtys., Inc.*,
　715 F.3d 1243 (11th Cir. 2013) ..............................................................................................10

*In re Gen. Mills Glyphosate Litig.*,
　No. 16-2869, 2017 WL 2983877 .............................................................................................7

*Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*,
　No. 18-CV-06664-BLF, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) .....................................7

*Hermosilla v. Octoscope Music, LLC*,
　No. 10-21990-CIV, 2010 WL 5059559 (S.D. Fla. Dec. 6, 2010) .............................................8

*John v. Whole Foods Mkt. Group, Inc.*,
　858 F.3d 732 (2d Cir. 2017) ............................................................................................2, 3, 4

*In re Johnson & Johnson Sunscreen Marketing Sales Pracs. and Product Liab. Litig.*,
　No. 0:21-md-03015-Singhal, Dkt. #55 .....................................................................................8

*Langan v. Johnson & Johnson Consumer Cos. Inc.*,
　95 F. Supp. 3d 284 (D. Conn. 2015) .....................................................................................8, 9

*Nexus Pharm. v. CAPS et al.*,
　20-56277, Dkt #38-1 (9th Cir. Sept. 13, 2022) .....................................................................6, 7

*Parks v. Ainsworth Pet Nutrition, LLC*,
　377 F. Supp. 3d 241 (S.D.N.Y. 2019) .......................................................................................7

*Thompson v. Ocwen Fin. Corp. et al.*,
　No. 3:16-cv-01606-JAM (Dkt. #86) (D. Conn. Jan. 23, 2018) .................................................2

**Statutes**

21 U.S.C. § 3652(a)  .........................................................................................................................9

21 U.S.C. § 362(a) ............................................................................................................................9

Fla. Stat. § 501.212(a) ....................................................................................................................10

**Other Authorities**

Banana Boat®, *All Products*, avail. at
  https://www.bananaboat.com/collections/all-products (last accessed Sept. 15,
  2022) ..........................................................................................................................................3

FDA, *Frequently Asked Questions on Benzene Contamination in Drugs*, June 6, 2022,
  avail. at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-
  questions-benzene-contamination-drugs (last accessed Sept. 15, 2022) ...............................5, 8

FDA, *Cosmetic Labeling Guide*, at 30, avail.
  at  https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-
  labeling-guide#top (last accessed Sept. 15, 2022) .....................................................................6

FDA, *FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*, June
  6, 2022, avail. at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-
  alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last
  accessed Sept. 15, 2022) ...........................................................................................................5

I.      INTRODUCTION

Plaintiffs' claims should be dismissed with prejudice for one or more of the following reasons.

First, Plaintiffs' entire case is premised on a hypothetical possibility of harm: they fail to plausibly allege that they purchased a product that contained benzene. Consistent with *Bowen, Huertas, and Schloegel,* this Court should find that Plaintiffs' do not have standing and dismiss their lawsuit.

Second, Plaintiffs' claims attempt to implement labeling and benzene standards different from the FDA's requirements and are, therefore, preempted.

Third, by trying to forge ahead with a novel interpretation of the FDA's 2 ppm benzene standard and related labeling standards while the FDA is actively addressing and responding to these very issues, Plaintiffs endeavor to invade the FDA's primary jurisdiction.

Fourth, consistent with the FDA's standards, reasonable consumers do not expect products to be 100% molecularly pure. For these reasons and the reasons stated in Defendants' prior briefing, this Court should dismiss all of Plaintiffs' claims with prejudice.

II.     ARGUMENT

   A.   **Plaintiffs fail to plausibly allege a concrete injury in fact and, therefore, lack standing.**

Plaintiffs now appear to abandon their theory, as articulated during oral argument, that "liability…doesn't depend on plaintiffs' bottles containing benzene. It's risk of." Tr. 43:11-13. Five plaintiffs[1] speculatively pled "risk of" benzene. As such, dismissal is warranted. Plaintiffs

---

[1] CAC ¶¶ 128-132 (Algofi, Barba, Clinger, Jean, and Zayas). Additionally, Algofi, Barba (for one product), Clinger, Jean, and Zayas do not allege that they even purchased the same kind of sunscreen as a product that was tested. CAC ¶¶ 126-132. In the Consolidated Complaint, Clinger does not allege what SPF he purchased; Zayas and Barba (for one product) do not allege what type of sunscreen they purchased, *i.e.* spray, lotion, stick, roll on, or oil; Algofi does not allege what type of kids' product she purchased, *i.e.* Sport, Mineral, or Free; Zayas purchased one product, "Sport

1

Barton and Chabla[2] now rely on "[t]hat testing" to reframe their allegations as having alleged a "plausible risk that Plaintiffs purchased a product containing benzene," *see* Supp. Opp. at p. 2. But a "risk" is insufficient: Plaintiffs must "affirmatively and plausibly suggest that [the plaintiff] has standing to sue;" a "plausible basis" must exist. *John v. Whole Foods Mkt. Group, Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).[3] That "plausible basis" does not exist here. Plaintiffs simply fail to allege that they purchased a product that was tested to contain benzene or that they purchased from the same lots that were tested, rendering their claims speculative and lacking injury in fact.

In an attempt to remedy their failure to plausibly allege that their products contain benzene, Plaintiffs turned to the alleged testing and highlight the Court's statement that: "if they've done testing, and it appears that there was testing done and they're not just making it up…that usually is…enough" Supp. Opp. at 4 (*citing* Tr. at 9:15-20). But Plaintiffs take the Court's statement related to preemption out of context.[4] Unlike *John*, the testing Plaintiffs reference is not enough to plausibly allege a concrete injury. Plaintiff in *John* relied on a comprehensive investigation that tested 80 different types of pre-packaged products. *John* at 734. But here, Plaintiffs rely on testing

---

Performance" and an unknown product. CAC ¶¶ 126-132. Plaintiffs cannot amend their Consolidated Complaint through briefing. *See* Dkt. 130, Plaintiffs' Supplemental Brief ("Supp. Opp.") at fn 6. Plaintiffs concede that Jean did not purchase a product that was the same type or kind as a product tested. *Id*. at 2.

[2] Plaintiff Chabla allegedly purchased a bottle of sunscreen that was the same kind of product that Valisure tested twice to contain less than the LLOQ and no benzene and that the Unidentified Lab tested once to contain 2.2 ppm. CAC ¶ 46; Valisure's Citizen Petition and Attach. A. Plaintiffs' reliance upon testing shows the product Chabla purchased also tested to contain **no benzene**. Plaintiff Barton allegedly purchased one product that was the same kind of product that Valisure tested to contain 0.15 ppm benzene per bottle and one product that was the same kind of product that Valisure tested to contain 0.36 ppm benzene per bottle. CAC ¶ 43. But Plaintiff Barton does not allege she purchased from those lots.

[3] Indeed, there is a difference between "possible" and "plausible." *See Thompson v. Ocwen Fin. Corp. et al.*, No. 3:16-cv-01606-JAM (Dkt. #86) (D. Conn. Jan. 23, 2018) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

[4] In response to Defendants' preemption argument that "if Valisure simply was not using standards imputed on my client by the FDA, those standards were different, there's a federal preemption problem," (Tr. At 7:15-18), your Honor stated: "I don't usually get into some sort of highly detailed, well, did they exactly impose—exactly what kind of testing requirements did they do and did they follow the FDA specific testing requirements there. I usually say, well, if they've done testing, and it appears that there was testing done and they're not just making it up completely saying out of the blue we think there's benzene or we think there's cyanide in some product and they're not alleging the factual basis for that, that usually is kind of enough, I have to say." (Tr. at 9:6-20). However, the Court need not look far; Valisure readily admits, multiple times, it did not use cGMP. *See* Valisure's Response to the FDA's Inspection.

conducted on 21 bottles from only 13 different types of Banana Boat sunscreen when there are more than 60 different types of Banana Boat® sunscreen products. *Compare* Banana Boat®, *All Products*, avail. at https://www.bananaboat.com/collections/all-products (last accessed Sept. 15, 2022) *with* Valisure's Citizen Petition and CAC ¶¶ 43, 46. And unlike *John*, where all 80 different types of products tested had mislabeled weight, here, only 3 out of the 13 types of sunscreen tested (of the more than 60 different types products sold) tested positive for benzene. *Compare John* at 734 *with* Valisure Citizen Petition. Further and unlike *John* where 89% of all of the products tested "did not meet the federal standard for the maximum amount that an individual package can deviate from the actual weight," Plaintiffs only allege 1 bottle of sunscreen purportedly contained benzene above the FDA's 2 ppm standard.[5] Plaintiffs' attempt to slice and dice the results[6] to claim "79% found benzene" is deceptive: only 7 bottles of sunscreen contained benzene.[7]

### 1. Plaintiffs' "disclosure" and state law claims suffer the same fatal flaw: they fail to plausibly allege an injury in fact.

In a further attempt to salvage their claims, Plaintiffs pivot away from their clear theory of "liability…doesn't depend on plaintiffs' bottles containing benzene. It's risk of." (Tr. 43:11-13.) Plaintiffs now argue that "the 'may contain' disclosure was required by FDCA on every bottle, regardless of whether it contained benzene" and "aside from violating the FDCA, this omission is what creates liability under the 'disclosure' claims." Supp. Opp. at 3. Thus, Plaintiffs argue that they were injured because they either (1) "would not have purchased the product but for

---

[5] Plaintiffs "unidentified lab" purportedly found 2.2 ppm of benzene in one bottle of sunscreen. CAC ¶ 46. Of note, no Plaintiff alleges they purchased the bottle that was tested. None of the bottles tested by Valisure contained more than 0.43 ppm of benzene, well below the FDA limit.
[6] Plaintiffs' CAC brings claims against all Banana Boat® products and as Plaintiffs admitted, Algofi didn't even purchase a spray. Supp. Opp. at 3. If Plaintiffs wish to limit their case to only "spray," they must amend their pleadings.
[7] Plaintiffs count the 4 bottles of sunscreen that tested below 0.1 ppm as containing benzene. Supp. Opp. at 3. But 0.1 is the lower limit of quantification, meaning that 0.1 is the lowest amount of an analyte in a sample that can be quantitatively determined with suitable precision and accuracy. *See* Valisure Citizen Petition.

3

the omission" or (2) overpaid for the product because "if Defendants had made the required 'may contain' disclosure the Product would have garnered a lower market price." *Id*. at 3-4.

Plaintiffs try to distinguish these "disclosure" claims, but the same standard and logic applies:[8] there must be a "plausible basis to conclude that [Plaintiffs] overpaid." *John* at 736. Without plausible allegations that the products Plaintiffs purchased actually "may contain" benzene, Plaintiffs' alternative theory based on Plaintiffs' incorrect interpretation of the FDCA also fails. Under Plaintiffs' logic, the product they purchased should have been labeled "may contain benzene" because 3 lots of a different kind of product, that they did not purchase, were recalled. This is wrong.

Plaintiffs' reliance on statements from the *Barnes* hearing is unavailing because unlike here, the products that the plaintiffs purchased in *Barnes* were the same products subject to a recall that occurred after Valisure revealed test results above the FDA's standard. *See Barnes* Tr., Exhibit A to Supp. Opp., at 13. Accordingly, *Barnes* is inapplicable to the facts here. Supp. Opp.; Dkt. #121 (Response to Notice of Authority).

> **2. Plaintiffs' standing arguments regarding "disclosure" and state law claims highlight why Plaintiffs' claims are preempted and subject to the FDA's primary jurisdiction.**

Plaintiffs bring a claim against Defendants for failing to include "the 'may contain' disclosure" that Plaintiffs purport "was required by FDCA on every bottle." Supp. Opp. at 3. But the FDCA does not allow, let alone require, manufacturers to list benzene as a "may contain" ingredient. *See* Dkt. #99 ("Memo") at § II.A.2; Dkt. #110 ("Reply) at § II.C. Plaintiffs are bringing a claim for Defendants' failure to include language on a label that is prohibited by the FDA. This

---

[8] This same plausibility standard and standing analysis applies to Plaintiffs' state law claims.

4

is precisely why preemption exists, to prohibit the attempt to enforce standards different from or in addition to what is required under the FDCA.

The Parties' clear dispute regarding the interpretation of the patchwork of FDA regulations and guidance documents highlights the reality that Plaintiffs' claims are subject to the FDA's primary jurisdiction. It is the FDA that is currently responding to the Valisure Citizen Petition, which raises the same questions as Plaintiffs.[9] It is the FDA that has been actively addressing what products should be recalled because they do not meet CGMP standards. *Id*. It is the FDA that "continues to monitor the quality of drugs and, when appropriate, encourages retailers to remove products from store shelves and online marketplaces when issues arise." *Id*. The Court should not accept Plaintiffs' invitation to encroach on the primary jurisdiction of the FDA and issue a novel interpretation of the FDA's labeling requirements.

### B. Indeed, the FDA has not "walked back" its Q3C guidance; it always permitted up to 2 ppm.

The FDA allows up to 2 ppm of benzene in sunscreen products. First, Plaintiffs' narrow focus on the question of whether the presence of benzene in the Banana Boat® sunscreen products was unavoidable in order to achieve a significant therapeutic advance is a red herring. The FDA applies the 2 ppm stand regardless of intentional or unintentional use in the manufacturing process. Regardless of why trace amounts of benzene below 2 ppm were allegedly present in certain batches of Banana Boat® sunscreen products, the FDA has confirmed through its Alert and its FAQ that it is not recommending manufacturers recall products for benzene contamination when the amount of benzene in the products tested below 2 ppm, without regard for *why* the trace amounts of

---

[9] FDA, *FDA alerts drug manufacturers to the risk of benzene contamination in certain drugs*, June 6, 2022, avail. at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs (last accessed Sept. 15, 2022); FDA, *Frequently Asked Questions on Benzene Contamination in Drugs*, June 6, 2022, avail. at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzene-contamination-drugs (last accessed Sept. 15, 2022).

benzene may be present.[10] The FDA Alert and FAQ are totally indifferent as to *why* trace amounts of benzene may be present in certain sunscreen products, belying the importance of the distinction. Its indifference reflects the fact that the FDA implicitly, but unambiguously, rejected the zero-tolerance standard articulated by Plaintiffs.[11]

Second, for reasons explained in earlier briefing,[12] Plaintiffs' interpretation of the Q3C guidance is incorrect because benzene is not an ingredient—per the FDCA's definition—purposefully used in the manufacture of Banana Boat® sunscreen products. Plaintiffs' argument that the 2 ppm standard does not apply if benzene was "intentionally added" is simply wrong. Even if benzene was intentionally added, which it was not (*see* Massa Decl., attached as Ex. 6 to Memo), it would be an incidental ingredient, not requiring disclosure.[13] The FDA has specifically declared that "[i]ncidental ingredients need not be declared on the label." *Id*. Plaintiffs' interpretation of the Q3C guidance is in direct conflict with the FDCA and with the FDA's recommendations and guidance, and thus Plaintiffs' claims are preempted.

Finally, as fully set out in earlier briefing, Plaintiffs' claims are expressly and impliedly preempted because under the FDCA, only the FDA is authorized to regulate the amount of benzene permitted in sunscreen products. Plaintiffs cannot create and enforce a 0.0 ppm benzene standard through litigation. The claims are subject to the FDA's primary jurisdiction as well. Through this

---

[10] *Id*.

[11] If the FDA believed that sunscreen products containing any amount of benzene should be recalled, it could have stated that sunscreen products containing any amount of benzene be recalled. It did not. Instead, it stated that only sunscreen product batches tested to contain more than 2 ppm of benzene should be recalled, and described this recommendation as "consistent" with the Q3C regulations. The Ninth Circuit, when affirming dismissal, raised the issue that plaintiff would need to litigate "the alleged underlying FDCA violation even though the FDA has not itself concluded there was a violation," which is the same here: the FDA has not concluded there was a violation of the FDCA for any of the sunscreen products allegedly purchased by Plaintiffs. *Nexus Pharm. v. CAPS, et al.*, 20-56277, Dkt. #38-1, at 21 (9th Cir. Sept. 13, 2022).

[12] *See* Memo at 28-29; Reply at 8-9.

[13] *See* Food and Drug Administration, *Cosmetic Labeling Guide*, at 30, avail. at https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide#top (last accessed Sept. 15, 2022).

6

litigation, Plaintiffs are effectively advocating for a 2 ppm benzene standard if the benzene is added intentionally, but a 0.0 ppm standard if it is added unintentionally. The FDA has never promulgated a regulation to this effect and, as noted above, its recent statements betray indifference toward *why* benzene may be present in trace amounts of sunscreen products. The Court should decline to forge new regulatory law by becoming the first court to step into the shoes of the FDA by deciding this important regulatory law issue—an issue that is already squarely before the agency.[14]

### C.   Reasonable consumers do not expect molecular purity.

Reasonable consumers do not expect absolute, molecular-level purity and molecular-level purity is not the standard.[15] Instead of arguing the merits of Defendants' reasonable consumer standard argument, Plaintiffs mischaracterize Defendants' statements. Defendants do not represent, and did not argue, that reasonable consumers do not believe ingredient lists to be accurate. Rather, Defendants state that reasonable consumers do not believe ingredient lists to be absolutely pure at the molecular level—they are aware that products may contain trace molecules of substances not on an ingredient list. Clear evidence that reasonable consumers do not expect sunscreen products to be 100% benzene free comes from the settlement in an MDL in which

---

[14] Recent case law from the Ninth Circuit confirms the point, where the court recognized the claims fell within the enforcement of the FDA when it affirmed dismissal of a case raising FDA regulatory law issues because "the FDCA leaves [the] determination in the first instance to the FDA's balancing of risks and concerns in its enforcement process." *Nexus*, Dkt. #38-1, at 24.

[15] *See* Memo at 55-56 (collecting cases) *See, e.g., Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018), *aff'd sub nom., Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x. 701 (2d Cir. 2020) ("[T]he court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate" because, *inter alia*, "[g]lyphosate . . . is not an 'ingredient' added to defendant's products; rather, it is a substance introduced through the growing process."); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) ("But a reasonable consumer would not be so absolutist as to require that 'natural' means there is no glyphosate, even an accidental and innocuous amount, in the Products."); *Hawyuan Yu v. Dr. Pepper Snapple Grp., Inc.*, No. 18-CV-06664-BLF, 2020 WL 5910071, at *4-7 (N.D. Cal. Oct. 6, 2020) (holding that reasonable consumer would not understand "all natural" to mean that the product did not contain trace amounts of pesticides below the limit tolerated by the FDA); *In re Gen. Mills Glyphosate Litig.*, No. 16-2869, 2017 WL 2983877, at *6 ("[I]t is not plausible to allege that the statement 'Made with 100% Natural Whole Grain Oats' means that there is no trace glyphosate in Nature Valley Products or that a reasonable consumer would so interpret the label."); *see also Bush v. WellPet, LLC*, No. CV 21-10059-RGS, 2021 WL 1408118, at *3 (D. Mass. Apr. 14, 2021) (holding that any misrepresentation was immaterial because "[a] reasonable consumer therefore would not be so 'absolutist' as to require a 'grain free' product to contain no gluten, however negligible the amount actually present").

several Plaintiffs' counsel and a former plaintiff from this action agreed to allow up to 1.0 ppm of benzene in sunscreen products on a go-forward basis.[16] Further, the FDA *encourages* Plaintiffs to continue using the Banana Boat® sunscreen products they allegedly purchased.[17]

Plaintiffs' interpretation that Banana Boat® sunscreen products' ingredient labels represent that they are free from any trace amounts of other substances or residual solvents, such as benzene, because benzene is not listed as an ingredient defies reasonableness. Banana Boat® sunscreen products are not labeled "benzene-free," "100% Pure," or "100% Natural."[18] This is not a case that alleges 100% purity. This is not a case like *Barnes* where plaintiffs alleged that they purchased a recalled product or where test results were above the level allowed by the FDA. Plaintiffs have failed to plausibly plead a reasonable consumer expects absolute molecular purity on a sunscreen label and have failed to show any conduct by Defendants that would be likely to mislead a reasonable consumer.

> **D.    Plaintiffs have not plausibly stated an unfair practice so as to support their FDUTPA claim, and even if they had, their FDUTPA claim nonetheless fails.**

Plaintiffs misrepresent to the Court that FDUTPA cases cannot be dismissed at the motion to dismiss stage. *See Hermosilla v. Octoscope Music, LLC,* No. 10-21990-CIV, 2010 WL 5059559, at *4 (S.D. Fla. Dec. 6, 2010); *Centrifugal Air Pumps Australia v. TCS Obsolete*, LLC, No. 6:10-CV-820-ORL-31, 2011 WL 202193, at *4 (M.D. Fla. Jan. 20, 2011), *on reconsideration in part*,

---

[16] *See In re Johnson & Johnson Sunscreen Marketing Sales Pracs. and Product Liab. Litig.*, No. 0:21-md-03015-Singhal, Dkt. #55, p. 6 (S.D. Fla. Dec. 17, 2021).

[17] First, information provided by the FDA in its FAQS is authority, not extrinsic evidence, and can be relied upon in a motion to dismiss. While Plaintiffs quote questions asked in the FAQs, what is important is the FDA's answers. In answering the questions highlighted by Plaintiffs, the FDA only recommends consumers refrain from using recalled products and encourages consumers to continue using sunscreen. FDA, *Frequently Asked Questions on Benzene Contamination in Drugs*, updated June 6, 2022, available at https://www.fda.gov/drugs/drug-safety-and-availability/frequently-asked-questions-benzenecontamination-drugs (last accessed Sept. 9, 2022). Notably, when asked "What should manufacturers know about benzene in drugs?" the FDA did not instruct manufacturers to list products that contain or may contain benzene as an ingredient on the product label. *Id.*

[18] Likewise, as discussed *infra*, this case is distinguishable from *Langan v. Johnson & Johnson Consumer Cos, Inc.* in that the products at issue in *Langan* represented "natural protection" and "100% naturally-sourced sunscreen ingredients."

8

No. 6:10-CV-820-ORL-31, 2011 WL 1627167 (M.D. Fla. Apr. 29, 2011). Plaintiffs' FDUTPA claim must be dismissed because (1) Valisure's testing indicates that Banana Boat® products contained trace amounts of benzene well below the FDA's 2 ppm benzene standard; and (2) because Plaintiffs have not plausibly alleged facts establishing that the Banana Boat® products were otherwise ineffective, worthless, or worth less than their sale price. Plaintiffs rely on *Langan v. Johnson & Johnson Consumer Cos. Inc.*, 95 F. Supp. 3d 284, 290 (D. Conn. 2015), to support the contention that a sale of a misbranded or adulterated product in violation of the FDCA can constitute an unfair practice. *Langan* is inapposite because the alleged misleading statements dealt with a positive representation—that the product's ingredients were "100% naturally-sourced"—that allegedly violated 21 U.S.C. § 3652(a) and 362(a) by being false or misleading. *Id.* In this case, there is no positive representation identified as false or misleading. Rather, Plaintiffs' claim relies on an omission—a failure to disclose to consumers that benzene may be present in Banana Boat® sunscreen products in trace amounts, a disclosure that would itself violate FDCA regulations. Plaintiffs cite no cases to support the proposition that such omission under these circumstances could constitute an unfair practice by violating the FDCA.

Fundamentally, Plaintiffs received exactly what they paid for: an effective and safe sunscreen product. There is no unfair practice to speak of in these circumstances—nothing immoral, nothing unethical, nothing oppressive, nothing unscrupulous, and certainly nothing injurious. Because Plaintiffs have not plausibly alleged facts establishing the unfair practice prong of their FDUTPA unfair practice claim, their FDUTPA claim should be dismissed.

Regardless of whether or not Plaintiffs alleged an unfair practice, the FDUTPA claim fails for at least three additional and independent reasons. First, for the reasons explained in earlier briefing, *see* Memo at §§ I-III, Plaintiffs have not plausibly pled an injury in fact necessary to

establish Article III standing, and the Court is expressly and impliedly preempted from finding that the Banana Boat® products violated the FDCA and should defer to the FDA's forthcoming decision on that question under the primary jurisdiction doctrine.

Second, Plaintiffs' argument does nothing to save their claim from the FDUTPA's safe harbor provision, which states that the law does not apply to acts or practices permitted by federal or state law. Fla. Stat. § 501.212(a). For the reasons explained in earlier briefing, *see* Memo at § II.B.1, Defendants could not have placed a benzene warning on their product or included benzene on the ingredient list. Thus, whether or not Plaintiffs have alleged an "unfair practice" as that term is defined by the FDUTPA, the claim would be barred under the safe harbor provision.

Finally, Plaintiffs were required to allege facts establishing actual damages. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). For reasons explained in earlier briefing, *see* Memo at 66-67, Plaintiffs emphatically do not allege facts establishing actual damages because they do not plausibly allege the difference in value between the Banana Boat® products they purchased and the value of the product they received.

Because Plaintiffs have not pled facts establishing an unfair practice as that term is defined by the FDUTPA, and because their FDUTPA claim fails for additional and independent reasons, the FDUTPA claim should be dismissed with prejudice.

### III. CONCLUSION

For each of the reasons addressed herein and in Defendant's Memo, Reply, Response to Plaintiffs' Supplemental Authority, Oral Argument, and Post-Hearing Memorandum, Plaintiffs' claims should be dismissed with prejudice.

Dated: September 15, 2022

Respectfully submitted,

By: */s/ Megan McCurdy*

**STINSON LLP**

John W. Moticka (admitted *pro hac vice*)
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105-1821
Telephone: (314) 863-0800
Facsimile: (314) 863-9388
john.moticka@stinson.com

Megan McCurdy (admitted *pro hac vice*)
megan.mccurdy@stinson.com
Ashley Crisafulli (*admitted pro hac vice*)
ashley.crisafulli@stinosn.com
Benjamin Levin (*admitted pro hac vice*)
ben.levin@stinson.com
Emily Carney (*admitted pro hac vice*)
emily.carney@stinson.com
1201 Walnut Street, Suite 2900
Kansas City, Missouri 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495

**DISERIO MARTIN O'CONNOR & CASTIGLIONI, LLP**

Jonathan P. Whitcomb (ct15014)
jwhitcomb@dmoc.com
Jonathan J. Kelson (ct26755)
jkelson@dmoc.com
Christina Volpe (ct30647)
cvolpe@dmoc.com
1010 Washington Blvd., Suite 800
Stamford, Connecticut 06901
Telephone: (203) 358-0800
Facsimile: (203) 348-2321

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2022, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Megan McCurdy*
ATTORNEY FOR DEFENDANTS